AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

53 0 SBA

| United States District Court | District EASTERN | FILED |
|---|---|---|
| Name KENNEDY Edwards | Prisoner No. E-54444 | Case No. |

Place of Confinement  
CSP- SolANO  
P.O. Box 4000  
VacaVille, CA 95696-4000

JUL - 3 2008

RICHARD W. WIEKING  
CLERK, U.S. DISTRICT COURT  
NORTHERN DISTRICT OF CALIFORNIA

Name of Petitioner (include name under which convicted)         Name of Respondent (authorized person having custody of petitioner)

KENNEDY EDWARDS          v.  D. K. SISTO, WARDEN, et al.,

CV 08 3217

The Attorney General of the State of:

EdmuNd G. BROWN, JR.

(PR)
SBA

## PETITION

1. Name and location of court which entered the judgment of conviction under attack  L.A. Superior Court
   L.A. County

2. Date of judgment of conviction  1990

3. Length of sentence  15 to life

E-filing

4. Nature of offense involved (all counts)  2Nd degree murder

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☒
   (c) Nolo contendere ☒
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐  No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☐  No ☐

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

(a) Name of court _____ N/A _____

(b) Result _____

(c) Date of result and citation, if known _____

(d) Grounds raised _____

(e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

(1) Name of court _____

(2) Result _____

_____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

_____

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

(1) Name of court _____

(2) Result _____

_____

(3) Date of result and citation, if known _____

(4) Grounds raised _____

_____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☒  No ☐

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court _L. A. Superior Court_

(2) Nature of proceeding _Writ on unconstitutional denial of parole_

_____

(3) Grounds raised _Same as this petition_

_____

(3)

AO 241 (Rev. 5/85)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐  No ☒

(5) Result ___ denied

(6) Date of result ___ DECEMBER 4, 2007

(b) As to any second petition, application or motion give the same information:

(1) Name of court ___ Court of Appeal - 2nd App. Dist

(2) Nature of proceeding ___ Writ

(3) Grounds raised ___ Same As this petition

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐  No ☒

(5) Result ___ denied

(6) Date of result ___ MARCH 13, 2008

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.        Yes ☒  No ☐   Pet. for Review - denied - June 11, 08
(2) Second petition,          Yes ☐  No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

___ N/A

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

(4)

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(I) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one:  *See Attached writ*

Supporting FACTS (state *briefly* without citing cases or law)  *See Attached*

B. Ground two:  *See Attached*

Supporting FACTS (state *briefly* without citing cases or law):  *See Attached*

AO 241 (Rev. 5/85)

    C.  Ground three: _____ *See ATTACHed* _____

    _____

    Supporting FACTS (state *briefly* without citing cases or law): _____ *See ATTACHed* _____

    _____

    _____

    _____

    _____

    _____

    D.  Ground four: _____

    _____

    Supporting FACTS (state *briefly* without citing cases or law): _____

    _____

    _____

    _____

    _____

    _____

    _____

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐  No ☒

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
(a) At preliminary hearing _____

_____

(b) At arraignment and plea _____

_____

(6)

MC-275

6. **GROUNDS FOR RELIEF**

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(if you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

PETITIONER CONTENDS THAT THE BOARD OF PAROLE HEARINGS VIOLATED HIS
RIGHT TO DUE PROCESS BY CONTINUING TO DENY HIM PAROLE BASED ON THE
CIRCUMSTANCES OF HIS CRIME. (2) PETITIONER CONTENDS THAT THE BOARD
VIOLATED HIS RIGHT TO DUE PROCESS BY REPEATEDLY BASING A PAROLE DENIAL
ON THE UNCHANGEING FACTORS OF THE PETITIONER'S CRIME & PRE-PRISON FACTOR

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at *what time (when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

Petitioner went to his fourth Subsequent Parole Consideration Hearing
on April 12th 2007,At five minutes to nine a.m.! Petitioner was
received from the Los Angeles,County on May 7th,1990.Petitioner's
eligible parole date was December 29th,1999.Petitioner's controlling
offense was count (1),Violation P.C.187,murder in the second degree.
As well there is a non-controlling case,Los Angeles number 968715
for possession of controlled substances.Petitioner received a term
of 15-years to life. On 4-12-07,at Petitioner's Hearing the Board of
Parole Hearings relied on the following circumstances in concluding
that you are not quite yet suitable for parole and would pose an
unreasonable risk of danger to society or a threat to public safety.
The Board stated that they had two things that they we're focusing
on even though you did a excellent presentation today. That we are

SEE ATTACHED SHEET OF(6) MC-275

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

(In re Rosenkrantz (2002)29 Cal.4th 616.)

(In Rosenkrantz v.Marshall (C.D.Cal.2006)--F.Supp.2d---,2006WL2327085.)

In re Dannenberg,34 Cal.4th 1061,(2005)

Biggs v.Terhune(9th Cir.2003)334 F.3d910.

## ATTACHMENT FROM PAGE (6)OF MC-275

giving you a one year denial for two specific reasons.
(1) was the commitment offense.(2) was the discrepancies between
the (2002)psychological evaluation and the (2006)psychological
evaluation. Petitioner was told that those two evaluations will
haunt you until they get them fixed,so we are requesting a new
psychological evaluation for you.The Board also stated that they
Specifically wrote,please review both the (2002) and (2006) psy-
chological reports,for any discrepancies,inconsistencies with regards
to the diagnosis and dangerousness to the community.
They stated that hopefully that will answer or resolve the differences
in those.Presiding Commissioner Linda Shelton stated that she were
kind of doing the decision backwards,but hey,secondly,we want you
to shore up your parole plans.They also stated that we are recommend-
ing that you consider living at a New Life Institute for six months.
They also stated that we believe that you have been very genuine today
and we do not have any reasons to doubt anything that you said to
us ,That I was presented well and that I were presented as intelligent
and articulate.They also stated that we are not the last stop for a
date.It goes through a review panel,it also goes to the Governor.
So we need to be able to show the Governor that you are going to be
doing what you need to do so the community is protected.It's the
biggest issue we deal with is community protection and victim's
Issues. The panel also stated with regards to that,the commitment
offense that we've reviewed and asked questions about including the
potential planned murder versus.The petitioner also pled guity to
his crimes,which shows signs of Remorse.His plans were productive
and he does not have any juvenile Record.Petitioner contends that
the Board of Parole Hearings should have found his suitable for parole
under the Some Evidence Standard,because there were no Evidence that
he would pose any kind of threat to society or the free community.

7. Ground or Ground __3__ (if applicable):

PETITIONER CONTENDS THAT THE BOARD OF PAROLE HEARINGS VIOLATED

HIS RIGHT, AND MADE AN ERROR OF JUDGEMENT LED TO A DECISION WHICH

IS UNREASONABLE IN THE VIEW OF FACTS.

a. Supporting facts:

Petitioner contends that the Board of Parole Hearings denied him

a suitability finding because of the nature of his crimes and

useing unchangeing factors of his crime. Petitioner also contends

that they said that it were some discrepancies between my (2002)

and (2006) Psychological Evaluation and that are requesting a new

psychological evaluation. The petitioner contends that the factors

of the crime will never change and that his very positive psycho-

logical evaluation and that his prison records speak for themselves.

The petitioner has no prior record of violence and the Board of

parole Hearings said that my Institutional behavior has been

excellent, and that they commended me for my disciplinary behavior.

The Board of parole Hearings also said over twice, two times that

that my disciplinary record is very, **verygood**, excellent, and I am in

low level prison.

b. Supporting cases, rules, or other authority:

§ (2051 (b) BOARD OF PRISON TERMS (GROUNDS)

In re Smith (2003) 109 Cal.App.4th 489, and In re Scott(2005)133 Cal.

App.4th 573.) [See People v.Cooper, 84 Cal.App.4th 749 (2000)

Irons v.Carey(9th Cir.2005)408 F.3d 1165

In re Lawrence (2007), Cal.App.4th Sup Ct No.A174924

See Superintendent v.Hill, 472 U.S.at 454-55, 457.

MC-275 [Rev. July 1, 2005]                    PETITION FOR WRIT OF HABEAS CORPUS                    Page four of six

## I. PARTIES

APPELLANT,    Kennedy Edwards is presently incarcerated at the
CALIFORNIA STATE PRISON-SOLANO.

RESPONDENT,    D.K.Sisto is Warden at theeCALIFORNIA STATE PRISON
SOLANO,P.O.BOX 4000,VACAVILLE,CALIFORNIA.95696-4000

RESPONDENT,    Linda Shelton,is presiding commissioner of the
Board of Parole Hearings, and as such is legally
responsible for the parole Board.

RESPONDENT,    EDMUND G. BROWN JR.is the Attorney General of the
State of California,is legal counsel for the
California Department of Corrections and Rehabilitation
and its employees.

I

## 1#
## G R O U N D

PETITIONER CONTENDS THAT THE BOARD OF PAROLE HEARINGS VIOLATED
HIS RIGHT TO DUE PROCESS BY CONTINUING TO DENY HIM PAROLE BASED
ON THE CIRCUMSTANCES OF HIS CRIME.

## 2#
## G R O U N D

PETITIONER CONTENDS THAT THE BOARD VIOLATED HIS RIGHT TO DUE
PROCESS BY REPEATEDLY BASING A PAROLE DENIAL ON THE UNCHANGEING
FACTORS OF THE PETITIONER'S CRIME & PRE-PRISON FACTORS.

## 3#

## G R O U N D

PETITIONER CONTENDS THAT (BPT) THE BOARD OF PAROLE HEARINGS VIOLATED
HIS RIGHT, AND MADE AN ERROR OF JUDGEMENT LED TO A DECISION WHICH
IS UNREASONABLE IN THE VIEW OF FACTS.

II

# T O P I C A L   I N D E X

I. PARTIES ..................................................... 1
2. ISSUES PRESENTED FOR REVIEW ..................... 2
3. VERIFICATION................................................. 3
4. POINTS OF AUTHORITIES .............................. 4
5. CONCLUSIONS ............................................. 5

6. PRAYER FOR RELIEF .................................... 6

## T A B L E   O F   A U T H O R I T I E S          PAGES

CASES

### C I T E D

Willis v.Kane(#)USDC N.D.Cal.No.05-3153                    3-of-6
In re Rosenkrantz(2002 29 Cal.4th 616.)
In re Rosenkrantz v.Marshall (C.D.Cal.2006-F.Supp.2d--2006WL2327085
In re Dannenberg,34 Cal.4th 1061,(20050
Biggs v.Terhune(9th Cir.2003)334 F. 3d 910.
In re Smith (2003)109 Cal.App.4th 489,and In re Scott(2005)133 Cal.
App.4th 573.)[See People v.Cooper,84 Cal.App.4th 749(2000).
Irons v.Carey(9th Cir.2005)408 F.3d 1165
In re Lawrence (2007),Cal.App.4th Sup Ct No.A174924
See Superintendent v.Hill,472 U.S.at 454-55,457.
In re Willis v.Kane,McCullough v.Kane(#)USDC N.D.Cal.No.05-2207
Brown v.Kane (#)9th Cir.No 07-15852 USDC N.D. Cal.No.05-5188

### A D M I N I S T R A T I V E
### C O D E S          PAGES
### 7

Board of Prison Terms 2282 Title 15,Rules-2281,
California Penal Codes3041(b) § 27706 Government Code:
California Rules of Court,
Penal Code § 1240

### PAGES

## T A B L E   O F   C O N T E N T S          PAGES

<u>CONCLUSIONS</u>

The Board of parole Hearings commissioners talked about two
Issues that they said that they could never forget,which was
personal to them.(1) The commitment offense and psychological
evaluation. The Petitioner has only (1)115,disciplinary write
up,which was (14)years ago,he also only had four(4)minor 128s,
the last in 1999. The (CDCR)California Department of Corrections
and Rehabilitation hired psychiatric Dr.Rouse diagnosis petitioner
on Axis I and II,and his (GAF)Global Assessment Functioning score
was of (90),which was positive and a hundred is highest,commissioner
stated in my book,if it was a school grade,it would be an A-minus,
that's pretty good. The Petitioner was told that It's obvious that
that you have support,it's also obvious that you have marketable
skills to take care of yourself in a variety of areas.
They also said that they were impressed that I had gotten my (GED).
Petitioner was given credits for his (12#)College credits.
They asked me about my three Vocational Trades,and said Certificates
are not easy to come by that you got! Petitioner has participated
in the Offender Employer Workshop.A/A,N/A,VORG,program.They were
complimenting him on his progress and participation in self-help.
Petitioner was also told that he is what Rehabilitation is all about.
The parole panel also stated that they relied on the following
circumstances in concluding that you are not quite yet suitable for
parole and would pose an unreasonable risk of danger to society or
a threat to public safety. Petitioner is some what confused about
some of the statements that the panel were making regarding his Psy-
chological Evaluating him as a parole risk,when his last report was
very positive and why not except the Board's forensic experts diagno-
sis over their own,when he is the expert,with qualifications.
The petitioner contends that the psychiatrist and psychologists are
also hired by the State to protect public safety and by evaluating
parole risk and recidivistic potential(the primary requisite especially
for these Commissioners who disregard and override the (Board's
forensic experts diagnosis and hard earned Qualifications.

V

## PRAYER   FOR   RELIEF

PETITIONER IS WITHOUT REMEDY SAVE BY WRIT OF
HABEAS CORPUS

WHEREFORE, PETITIONER RESPECTFULLY REQUEST COURT WILL;

#1.   Issue a order to show cause to respondents to
inquire into the legality of appellant's present
incarceration, and why appellant's is not
entitled to the relief sought;

#2.   Conduct an evidentiary hearing to determine sentencing
statutes and regulations the Dept.of Corrections and
and Rehab.,Prison Records Personnel, and the Board of
Parole Hearings are misinterpreting under (DSL)Laws
still applicable to petitioner-prisoner;

#3.   Appoint counsel and /or award reasonable attorney fees;
and

#4.Grant petitioner such other relief as is appropriate
and in the interest of justice.

Dated:  *06-14-08*

Respectfully Submitted, *Kennedy Edwards*

VI

Petitioner contends that despite the Board's action and its
repeated overwhelmingly <u>Negative Action</u> and its findings on four
occasions spread over more than a decade. Petitioner also contends
that the factors relevant to his case and his determintion are not
spelled out in statutes enacted by the Legislature,but in regulat-
ions promulgated by corrections administrators.[Court reviews title
15,suitability and unsuitability factors.]

<u>BOARD OF PRISON TERMS</u>

Title 15, §2282 states in part that these rules are to be followed
§2281 Determination of suitability.
The petitioner's factors are not unsuitability factors and this
section reads in part:(d)Circumstances Tending to show Suitability.
[5]Are Positive Psychological Factors] [6] is Institutional Behavior.
[1] No Juvenile Record. [2] Stable Social History.
[3] Signs of Remorse. Petitioner has all the right suitability findings
to make him suitable for parole.

He has done more than exspected of him and his records will show
that he is ready to be released back into free society.
The petitioner is motivated for change and has become a upright
inmate with skills and trades which will help him out once he is
found suitable for release. Petitioner's exemplary record in prison
shows rehabilitation and by him being in a low level prison setting
here at this same prison since 1997 proves that this person has changed
and not a violent inmate. Petitioner has proven to deserve his parole
date and the panel has also said in their own words that he has a
very good,exemplary record inside prison.

        QUESTION IS HOW LONG THE PETITIONER MUST
        PAY FOR A FIRST TIME MISTAKE THAT HE
        MADE WHEN HE WAS ONLY 23 YEARS OLD?

/
/
/
/
/                       VII
/
/

Petitioner contends that because no evidence supported any of the
2002,or 2006 panel's grounds for unsuitability,and the subsequent
2002 and 2006 panels continued to use those same factors to deny
parole,the Court found that it was in violation of due process and
the decision should not stand.][Importantly,the district court pointed
out that the some evidence test is not satisfied by some evidence
of a serious commitment offense,but only by some evidence "that the
inmate will be a continuing threat to society in order to deny parole.
[Citation]" The Court reasoned and found, based on analyses of Biggs,
Sass, andIrons,that after such an extensive period of reform,Brown's
commitment offense no longer reliably indicated an unsuitability for
parole,i.e.,an"unreasonable risk of danger"to public safety,the State's
parole suitability determinant.    The Court reasoned:

> The critical issue in this case is whether Brown's commitment
> offense alone can satisfy the 'some evidence" standard more than
> 25-years after he commited the offense.
> Under the circumstances of this case,the court is satisfied that
> it cannot.

The ninth Circuit's recent opinion in Irons shed some light on whether
reliance on an immutable factor such as the commitment offense violates
due process. Although the court affirmed the BPT's denial of parole
for Irons, it made clear that "indefinite detention based solely on
an inmate's commitment offense,regardless of the extent of his
rehabilitation, will at some point violate due process,given the liberty
interest in parole that flows from the relevant California statutes."
Irons,479 F.3d at 665(citation and footnote omitted).

In two earlier cases,Biggs and Sass, the court had also affirmed the
BPT's denial of parole,but made contradictory observations on the
effect of continued denial of parole based solely on unchangeing
factors such as the inmate's commitment offense and /or prior criminal
history.[Citations.] Irons limited the holdings of Biggs,Sass and
itself to inmates deemed unsuitable prior to the expiration of their
minimum sentences and held the door open for inmates deemed unsuitable
after the expiration of their minimum sentences:"All we held in [Biggs
and Sass,] and all we hold today,.is that, given the particular

circumstances of the offenses in these cases,due process was not
violated when these prisoners were deemed unsuitable for parole
prior to the expiration of their minimum terms".Id. Brown was
deemed unsuitable by the Governor more than ten years after the
expiration of his 15-year minimum sentence.
[Biggs, Sass and Irons discussed]] ...Even under the Governor's
version of facts,much distinguishes this case from Biggs,Sass and
Irons,and pushes it beyond the point at which sole reliance on the
commitment offense may be said to comport with due process. For
one,Brown's offense in of itself is objectively less probative of
future recidivism and continuing danger to society that the offenses
in Biggs,Sass and Irons. [Further comparison to Biggs, Sass,Irons.]
Another critical difference between this case and Biggs,Sass and Irons
is that Brown has served a substantial amount of time beyond his
minimum  sentence. This court must consider that at some point after
an inmate has served his minimum sentence the probative value of his
commitment offense as an indicator of "unreasonable risk of danger to
society"recedes below the "some evidence"required by due process to
support a denial of parole. See  Irons,479 F.3d at 665.
A  decision to revoke parole based solely on an inmate's  commitment
offense that can no longer be considered probative  of dangerousness
to society would be arbitrary and not comport with the "some evidence"
standard. See Hill, 472 U.S. at 545-55,457. sentence by more than ten
years ...Needless to say,Brown's Lengthy detention has diminished the
probative value of his commitment offense. In fact,not only has Brown's
incarceration eclipsed his 15-year minimum term forwsecond -degree
murder,but it also has eclipsed the 25-year minimum term he would have
received had he would have been convicted of felony first degree murder,
as the Governor suggested he should have been.

BROWN (cont'd)

Petitioner's commitment offense would be a sufficient basis to deny his
parole if it indicated a risk of re-offending and a danger to society.
It does not.What underlies petitioner's commitment offense is a series
of exercises in poor judgement: He bet $500 in a card game,lost that card
game,used the threat of force to recoup his losses,and wound up shooting
McLucas to death.Whether petitioner is currently dangerous enough to society
to preclude his parole depends on whether his judgement is likely to fail
him as gravely as it did when he embarked on the series of events that led
him to kill Mclucas in 1979.BY itself,however,Brown's excercise of poor Judge-
ment again at his nearing the age of 50.Not only did the Governor and the State
Courts fail to point to any such indicators,but Brown's ultimately positive
prison record over the past two and hafe decades indicates,as the BPT concluded,
that he is suitable for parole.

> The Attorney General has appealed the decision
> and been granted a temporary stay of the district
> court's order by the Ninth Circuit After discussing
> the some evidence standard and state parole law
> requirements,the Court focused on the ground recited
> by Conan's staff to support its reversal decision,
> alleging (as usual)an "especially heinous"second-
> degree murder. The Court explained:

This  case is one of many that turn on the critical question of the BPH's
and Governor's use of evidence about the crime that led to the conviction.
Three Ninth Circuit cases provided the guildposts for applying the
Superintendent v.Hill some evidence standard on this point:

Biggs v.Terhune,334 F.3d 910 (9th Cir.2003),Sass, 461 F.3d 1123,and Irons  v.Carey
479 F.3d  658 (9th Cir.2007). [Discussion of three cases as in previously
reported cases.]

Continue from pages (XI) 1 of Willis v.Kane

Having determined that there is a due process right,and that some evidence is the evidentiary standard for judicial review,the next step is to look to state law because that sets the criteria to which the some evidence standard applies.One must look to state law to answer the question," some evidence of what?

The BPH's consideration of the commitment offense was certainly permissible.The BPH stated that the paramount reason for the denial of parole "would be the timing and gravity of the committing offense...That this was a terrible crime is not disputed. Willis stated,"I know what I did was disgusting." His attorney stated,"There's no question it's a horrendous crime. No question whatsoever." There was sufficient evidence for the BPH to determine that Willis commited the offense in an especially cruel manner.  The facts of that  crime will be just as terrible 20-years from today as they are today and as they were 20 years ago.

Notwithstanding the terrible nature of the crime,the critical question the BPH was supposed to decide at the parole suitability hearing was whether "consideration of the public safety requires a more lengthy period of Incarceration for this individual." See Cal.Penal Code  § 3041(b).. When the totality of circumstances are not considered, Willis'1983 crime did not provide sufficient evidence to find him unsuitable for parole in 2003.Wills'case is kind of case Biggs and Irons cautioned about: the continued reliance on the immutable events of the crime to deny parole for present dangerousness despite the candidate's exemplary behavior in prison,favorable current psychological reports, and the absence of any other violence or criminal record.

In light of the extensive evidence of McCullough's in prison rehabilitation
and exemplary behavior,the reliance on the unchangeing facts of the murder
and his Juvenile criminality to deny him parole 21 years into his 15-to life
sentence violated his right to due process. The some evidence standard provides
more protection than against fabricated charges or bureaucratic mistakes-the
some evidence standard also protects against arbitrary decisions.
See _Superintendent v. Hill,472 U.S. at 454_ -55,457. The Governor's decision
was arbitrary and therefore did not comport with the some evidence standard.
Having conducted an independent review of the record,See Himes,this court
concludes that the state court's unexplained rejection of the due process claim
was an objectively unreasonable application of Superintendent v. Hill.McCullough
is entitled to  relief under the standard  of 28 U.S.C. § 2254(d).

CONTINUED ON PAGE (18)

Having decided that the petition should be granted, the next question concerns
the proper remedy. Once the BPH determined that McCullough was suitable for
parole,it calculated his term and assessed a total term of confinement of 258
months,less post -conviction credits of 75 months, for a total period of 183
months(15.25 years)...   The significance of his calculation is that,because
the Governor's decision was not supported by some evidence,this court need
not send the matter back to the BPH to set a term for McCullough because the
BPH has already done so.McCullough is entitled to release and he is past his
release date.

McCullough v. kane

## Willis v. Kane

The message of these three cases is that the BPH and Governor can look at immutable events, such as the nature of the conviction offense and pre-conviction criminality, to predict that the prisoner is not currently suitable for parole even after the initial denial (Sass), but the weight to be attributed to those immutable events should decrease over time as a predictor of future dangerousness as the years pass and the prisoner demonstrates favorable behavior (Biggs and Irons). Sass did not dispute the principle that, other things being equal, a criminal act commited 50-years ago is less probative of a prisoner's current dangerousness than one commited 10 years ago. Not only does the passage of time in prison count for something, exemplary behavior and rehabilitation in prison count for something according to Biggs and Irons. Superintendent v.Hill's standard might be quite low, but it does require that the decision not be arbitrary.

The murder and pre-offense criminality in this case are kinds of immutable table events that Biggs cautioned against relying on perpetuity to deny parole for present dangerousness. Although the Governor's decision would have wholly appropriate 10 or 20 years ago, today it does not comport with due process-not because the standards have changed but because the passage of time plus evidence of significant positive behavior now reduce the predictive value of the sole circumstances relied upon by the Governor below the point where they provide enough evidence to support the decision that McCullough would pose an unreasonable risk to of danger to society if paroled. Although the Governor thought the negative factors discussed above outweighed the positive factors for McCullough, even the Governor noted that McCullough had many factors supportive of parole and "demonstrated considerable progress and increased maturity by remaining discipline-free since 1985." McCullough had surpassed his minimum sentence of 15 years by at lease 6-calendar years, thereby making his case stronger than that in Irons, Sass, or Biggs. There also was considerable positive information about McCullough in the record as of 2004, when the Governor considered his case. He had not had a CDC-115 disciplinary offense for 19 years.

( CONTINUE )

[Court discusses Willis exemplary record and reform and favorable psychogical evaluation.] Willis ...had been in custody almost 20 years at the time of the 2003 hearing.When Willis was denied parole in 2003,it was the seventh time he was found not suitable for parole.

it appears that the commitment offense was the paramount reason at each decision, as Willis otherwise favorable profile had not changed in years: almost discipline-free in prison,no substance abuse problem a stable social history and no criminal activity other than the murder.

The some evidence standard provides protection against more than fabricated charges or bureaucratic mistakes the some evidence standard also protects against arbitrary decision.See **Superintendent v. Hill, 472 U.S. at 454-55,457,105 S.Ct.2768.** Willis'commitment offense repeatedly has been relied on to deny parole notwithstanding the extensive evidence on the other side of the scale:there was positive evidence of good behavior and rehabilitation in prison,there a complete absence of evidence of any other violent acts by Wills, there was a complete absence of any other criminal record,and there was an absence of any suggestion of a need for further therapy or self-help type programming by the mental health professionals who examined him.  Under these circumstances, the BPH's reliance on the circumstances of of the murder to find Willis'unsuitable for parole for the seventh time and at least 18 years into his 15-to-life sentence was arbitrary and therefore did not comport with the some evidence standard.  It violated due process

The state court's unexplained decision to the contrary was an unreasonable application of **Superintendent v. Hill**,Willis is entitled to relief under the standard of **28 U.S. C. § 2254(d).**

> Willis'petition for writ of habeas
> corpus is GRANTED.Having decided that
> the petition will be granted,the

(Continued on page

XIV

Continue from page of Willis'petition
for Writ of habeas Corpus Granted:

next issue concerns the proper remedy.Because Willis has never
been found suitable for parole,the BPH has never moved past the
suitability-finding function in California Penal § 3041(b) to
calculate a term and set a release date as required by § 3041(a).
It is now time to do so.Within thirty days of the date of this
order, the BPH must calculate a term for Willis and set a date
for his release in accordance with the requirements of California
Penal Code § 3041(a).This does not necessarily mean that the
release date must occur within thirty days of the date of this
order,but rather that the BPH must act within that time limit.
Within forty days of the date of this order,respondent must file a
notice with the court identifying the date set for Willis' release.

......................................................................

The Court analyzed in hostoric detail the standard of review for
California and federal due process.  After reviewing Rosenkranz,
Dannenberg,Mcquillion,Sass,Biggs,and Irons,the Court conducted:
......................................................................

Combining the California and Federal standards of review,as they
have been articulated thus far by the California Supreme Court and
the ninth Circuit,respectively,the commitment crime can lack the
power to supply "some evidence"supporting a denial of parole because
of the interplay between two factors-the nature of that crime and
the passage of time since its commission. That is,the fact there is
"some evidence" the crime was commited and commited a certain way at
a certain time does not mean that crime necessarily represents the
"some evidence" rule,the prisoner's release on parole will pose an
unreasonable risk of danger to the public safely at the present time.
Whether it possesses the necessary predictive value depends both on
the nature of crime and how long ago it happen.

XV

## IN RE LAWRENCE

The main issues before this court are whether "some evidence" supports the Governor's finding the commitment offense is properly characterized as a "shockingly vicious use of lethality and an exceptionally callous disregard for human suffering" and, if so, whether this commitment offense given its nature and the passage of time provides "some evidence" supporting a conclusion the release of Lawrence on parole would represent an "unreasonable risk" of danger to public safety.

Other than rehabilitation, imprisonment of those who are convicted of committing crimes generally serves and is justified by one or more of three societal goals:

(1)  retribution-that is, punishment of the offender  commensurate. with the seriousness of the crime;

(2)  deterrence of future offenses by the offender and other potential offenders;

incapacitation of the offender so she is not free to commit other offenses.

The Legislature has made this abundantly clear in <u>Penal Code Section 3041, subdivisions (a) and (b)</u> which provide the Board "shall normally set a parole release date...

XVI

## THERE IS NO EVIDENCE OF ANY THREAT
## TO PUBLIC SAFETY:

As discussed above, the "overarching" factor determining whether
parole should be granted or denied is whether the criminal poses
"an unreasonable risk of danger to society." [Citations.]
As also discussed above, every psycholgical evaluation in the
in the record dating back at lease to 1999 has concluded Barker
would pose little or no danger to public safety if released on
parole.
The presiding commissioner did note in her decision that Dr.Glines's
September 15,2005 psycholgical report was "not totally supportive
of release in that..her final conclusion states that [Barker] risk
for recidivism on a violent crime is the low range.However,she previ-
ously states that [Barker] is in the low end of the moderate range
of risk for future violence." This observation is,in a word,inacurate.
Dr.Glines clearly stated her overall conclusion was that Barker's
risk for recidivism on a violent crime was in the low range. In
reaching this conclusion,she used three instruments,two of which
indicated Barker was a low risk and only one of which(the "Violence
Risk Appraisal Guild'')showed results "within the low end of the
moderate range of risk." "In sum,at no point in her report did Dr.
Glines opine Barker was "in the low end of the moderate range of
risk for future violence" The Board's observation is not supported.
Last,but by no means incidentally,the Board failed to consider Barker's
age at the time he commited the crimes.[Many citations on this issue .]
In sum and in short,the record before us contains no evidence Barker
poses an unreasonable risk to public safety even under the deferential
"some evidence "standard.

AO 241 (Rev. 5/85)

(c)  At trial _____

_____

(d)  At sentencing _____

_____

(e)  On appeal _____

_____

(f)  In any post-conviction proceeding _____

_____

(g)  On appeal from any adverse ruling in a post-conviction proceeding _____

_____

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐  No ☒

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐  No ☒
(a)  If so, give name and location of court which imposed sentence to be served in the future: _____

_____

(b)  Give date and length of the above sentence: _____

_____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐  No ☒

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

x *Kennedy Edwards*
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed

*June 16, 2008*
(date)

x *Kennedy Edwards*
Signature of Petitioner



E57444

Release
5/7/90 cust
DEPT. SOUTH Clin

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

Date: APRIL 30, 1990

DRABLE: PHILLIP H HICKOK                          JUDGE

N NELSON                                    Deputy Sheriff

N FERRERO          , Deputy Clerk

C ARCHAMBEAU          , Reporter

(Parties and counsel checked if present)

NA001524

**PEOPLE OF THE STATE OF CALIFORNIA**

VS

EDWARDS KENNEDY

Counsel for Plaintiff    X G DE LONG

IRA REINER    , DISTRICT ATTY.    BY

DEPUTY

Counsel for Defendant    X E BROADY Pvt    XXXXXXXXXXXXXXXXXXXX

XXXXXXXXXXXXX

DEPUTY

(Boxes checked if order applicable)

### NATURE OF PROCEEDINGS PROBATION AND SENTENCE

Court advises defendant of his parole rights.

PROBATION DENIED, SENTENCE AS INDICATED BELOW.

Whereas the said defendant having . . . . . . . . . . . . . . . . . duly . . . . . . . pleaded . . . . . . . . . . . . . . . . . . . .
guilty in this court of the crime of    MURDER (Sec 187(a) PC), of the second degree, a felony as
charged in count 1 of the information; special allegations having been stricken.

It is Therefore Ordered, Adjudged and Decreed that the said defendant be punished by imprisonment in the
State Prison. **for the term of 15 years to LIFE.**

☒ Defendant is given credit for 280 days in custody (includes __77__ days good time/work time).
It is further Ordered that the defendant be remanded to the custody of the Sheriff of the County of Los Angeles and
delivered by him into the custody of the Director of Corrections at the California State Institution

☒ for Men at Chino, California

☐ for Women at Frontera, California

☐

☐ Remaining count(s) dismissed in interests of justice.

☐ Bail exonerated.

**E N T E R E D**
4-30-90
FRANK S ZOLIN
COUNTY CLERK
AND CLERK OF THE
SUPERIOR COURT

**JUDGMENT**

2    76J805A (REV. 7-82) 10-83
C-109

BOARD OF PRISON TERMS                                    STATE OF CALIFORNIA
LIFE PRISONER HEARING DECISION FACE SHEET

| | Records Use Only |
|---|---|
| [ ] PAROLE GRANTED – (YES)<br>CDC: Do not release prisoner before<br>Governor's review. | Parole Release Date_____<br>YR      MO      DA |
| [X] PAROLE DENIED – (NO)  *1 (one) year* | Attach Prison Calculation Sheet |

[ ] AGREED UNSUITABLE (Attach 1001A Form) FOR: ____YEAR(S)
[ ] HEARING POSTPONED/REASON:_____

## PANEL RECOMMENDATIONS AND REQUESTS

**The Board Recommends:**
[ ] No more 115's or 128'A          [X] Stay discipline free          [ ] Earn positive chronos
[ ] Work to reduce custody level    [ ] Learn a trade*                [X] Earn positive chronos
[X] Get self-help* *continue*       [ ] Get therapy*                  [ ] Get a GED*

[ ] Recommend transfer to _____
[X] Other *needs new psych to deal w/ inconsistencies between 2005 & 2006 psychs*
*These programs are recommended if they are offered at your prison and you are eligible/able to participate.

Penal Code 3042 Notice          [X] Sent    Date: **2/27/2007**

| Commitment Offense(s) | **P187****<br>Code(s) | **MURDER 2ND**<br>Crime(s) |
|---|---|---|
| | **NA001524**<br>Case(s) | **1**<br>Count(s) |

| Date Inmate Came to CDC<br>**5/7/1990** | Date Life Term Began<br>**5/7/1990** | Minimum Eligible Parole Date<br>**12/29/1999** |
|---|---|---|

☐ Initial Hearing     [X] Subsequent (Hearing No.) ___4___    Date of Last Hearing **2/2/2006**

| CDC Representative | |
|---|---|
| Attorney for Prisoner  *Morton* | Address |
| D. A. Representative  *Dahle* | County    **LOS ANGELES** |

This form and the Board's decision at the end of the hearing is only proposed and NOT FINAL. It will not
become final until it is reviewed.

Chair  *Linda Shelton*          Date  *4/12/07*

Panel Member                     Date

Panel Member                     Date

| NAME | CDC# | PRISON | CALENDAR | DATE |
|---|---|---|---|---|
| **EDWARDS, KENNEDY** | **E54444** | **CSP-SOLANO** | **4/2007** | **4/12/2007** |

BPT 1001(REV. 08/03)

INMATE
COPY

TENTATIVE

BOARD OF PRISON TERMS                                                    State of California

## LIFE PRISONER CONSIDERATION WORKSHEET

☐ INITIAL HEARING          ☒ SUBSEQUENT HEARING

| PRISONER'S NAME: | CDC NUMBER: |
|---|---|
| **EDWARDS, KENNEDY** | **E54444** |

| DATE OF HEARING: | LOCATION: |
|---|---|
| **4/12/2007** | **CSP-SOLANO BPT BOARD ROOM** |

LEGAL STATUS

| DATE RECEIVED: | DATE LIFE TERM STARTS: | | COUNTY: |
|---|---|---|---|
| **5/7/1990** | (IF DIFFERENT)      **5/7/1990** | | **LOS ANGELES** |

| OFFENSE: | CASE NUMBER: |
|---|---|
| **MURDER 2ND** | **NA001524** |

| COUNT NUMBER(S): | PENAL CODE SECTIONS (S) VIOLATED: |
|---|---|
| 1 | **P187**** |

| TERMS: | MEPD: |
|---|---|
| **15 YEARS TO LIFE** | **12/29/1999** |

OTHER COMMITMENT OFFENSES OR STAYED COUNTS

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NO |
|---|---|---|---|---|---|
| ☐ | **POSS CS SALE** | **H11351** | **LOS ANGELES** | **A968715** | 2 |
| ☐ | | | | | |
| ☐ | | | | | |

### PRESENT AT HEARING

| PANEL MEMBER | PANEL MEMBER | PANEL MEMBER |
|---|---|---|
| *Melton* | *Gillwood* | |

OTHERS
PRESENT
☒ PRISONER (IF ABSENT, WHY?)
☒ ATTORNEY            *Norton*
☒ DEPUTY D.A.         *Dahle*          COUNTY OF   **LOS ANGELES**
☐ OTHERS

### STATEMENT OF FACTS

☐ THE HEARING PANEL INCORPORATES BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON _____ , PAGES _____ THROUGH _____

☒ THE STATEMENT OF FACT IS

☒ QUOTED FROM THE BOARD REPORT, DATED __1/30/07__ , PAGE(S) __1__

☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S) _____

☐ QUOTED FROM THE COURT OPINION, PAGE(S) _____

BPT 1000 (Rev. 8/90)



INMATE
COPY

BOARD OF PRISON TERMS,                                    STATE OF CALIFORNIA

## SETTING A LIFE PRISONER TERM - PAROLE DENIED

### II.  NOTE TO CDC STAFF:  RECOMMENDATIONS AND REQUESTS

☐ 3.  the panel's belief that the prisoner's current mental health is an
important issue.  In the new full evaluation, the panel requests that the
clinician specifically address the following:

☒ a.  the prisoner's violence potential in the free community;

☒ b.  the significance of alcohol/drugs as it relates to the commitment
offense and an estimate of the prisoner's ability to refrain from
use/abuse of same when released;

☐ c.  the prisoner's psycho-sexual problems;

☐ d.  the extent to which the prisoner has explored the commitment
offense and come to terms with the underlying causes;

☐ e.  the need for further therapy programs while incarcerated.

☒ f.  other Specifically — please review both
2002 + 2006 psychs + the inconsistencies
w/ regard to diagnosis + dangerousness
to community.

☐ 4.  the panel's belief that the prisoner has deteriorated psychologically and
there appears to be a need for treatment.  The panel bases this conclusion
upon

Linda Shelton
4/10/07

☐ B.  (Other requests to CDC staff):

Edwards, Kennedy  #E-54444   CSP-Solano

BPT 1000(a) (Rev. 12/98)                    11                    INMATE
COPY

**BOARD OF PRISON TERMS**        **STATE OF CALIFORNIA**
**LIFE PRISONER: PAROLE CONSIDERATION PROPOSED DECISION:**
**DENY PAROLE**

---

[×] **PAROLE DENIED FOR:**    ①   2   3   4   5    **YEARS**

Place the prisoner on the ___4/2008___ calendar for his next subsequent hearing.

If this decision is final, you WILL NOT get paroled. The Board will send you a copy of the decision. It will indicate the reasons you did not get paroled. If this decision is not final, the Board will set up another hearing. You can read the laws about your hearing. You can find the laws at California Code of Regulations, Title 15, section 2041.

## RECOMMENDATIONS

**The Board Recommends:**

[ ] No more 115's or 128A's        [ ] Learn a trade*
[ ] Work to reduce custody level     [ ] Get therapy*
[×] Get self-help* *continued*      [×] Earn positive chronos
[×] Stay discipline free            [ ] Get a GED*

[ ] Recommend transfer to _____
[×] Other ___needs a new psych to deal w/various issues___
___between 2005 & 2006 psychs___

\* These programs are recommended if they are offered at your prison and you are eligible/able to participate.

## HEARING PANEL

Name _Linda Shelton_        Date _4/17/07_

Name _____        Date _4/17/07_

Name _____        Date _____

---

| **NAME** | **CDC#** | **PRISON** | **DATE** |
|---|---|---|---|
| Edwards, Kennedy | E-54449 | CSP-Solano | |

**BPT 1005(b)**
**(REV 04/04)**

Distribution: White-C File
Canary-BPT
Pink-Prisoner

# EXHIBIT COVER PAGE:

### Exhibit:     A

**Description of this exhibit:**

BOARD OF PRISON TERMS, LIFE PRISONER: PAROLE CONSIDERATION PROPOSED DECISION: SHEET

**Number of pages of this exhibit:**     1     **pages**

**JURISDICTION:**  (Check only one)

_____**Municipal Court**

_____**Superior Court**

__*__**Appellate Court**

_____**State Supreme Court**

__X__ **United States District Court**

_____ United States Circuit Court

_____ **United States Supreme Court**

_____**California Department of Corrections, 602 Exhibit.**

## POINTS AND AUTHORITIES IN SUPPORT
## OF MOTION FOR COUNSEL IN
## STATE HABEAS CORPUS PROCEEDING.

Penal Code section §1240 provides in relevant part:

> (a) When in a proceeding within the provisions of Section 15421 of the Government Code a person is not represented by a public defender acting pursuant to Section 27706 of the Government Code or other counsel and he is unable to afford the services of counsel, the court shall appoint the State Public Defender....
> (2) ..In unusual cases, where good cause exists, the court may appoint any other attorney.

Government Code section 15421 states in relevant part:

> Upon appointment by the court..the State Public Defender is authorized to represent any person who not financially able to employ counsel in the following matters:
> ....(b) A petition for an extraordinary writ or an action relating for injunctive or declaratory relief relating to a final judgment or treatment imposed thereunder....

I.

Where the court determines that the petition states a prima facie case and issues an order to show cause, the court is empowered to appoint counsel. See **Charlton v. Superior Court** (1979) 93 Cal.App.3d 858, 862; People v. Duvall (1995) 9 Cal.4th 464.

involved. Petitioner avers he has set forth a **prima facie**
case for relief. Petitioner is a layman of the law.

Petitioner declares under penalty of perjury that the
foregoing is true and correct. Executed this __14__ day
of __JUNE__, 200_8_ at California State Prison Solano, at
Vacaville, California.


_Kennedy Edwards_
PETITIONER          IN PRO PER

iii

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life        )        CDC Number:   E-54444
Term Parole Consideration        )
Hearing of:                      )
                                 )
KENNEDY EDWARDS                  )        **INMATE COPY**
_____)

CALIFORNIA STATE PRISON, SOLANO

VACAVILLE, CALIFORNIA

APRIL 12, 2007

8:55 A.M.

PANEL PRESENT:

LINDA SHELTON, Presiding Commissioner
JEFFREY SELLWOOD, Deputy Commissioner

OTHERS PRESENT:

KENNEDY EDWARDS, Inmate
MARC NORTON, Attorney for Inmate
DAVID DAHLE, Deputy District Attorney

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____No        See Review of Hearing
_____Yes       Transcript Memorandum

Sarah M. Collins, Capitol Electronic Reporting

# I N D E X

|  | Page |
|---|---|
| Proceedings........................................ | 3 |
| Case Factors....................................... | 9 |
| Pre-Commitment Factors............................. | 15 |
| Post-Commitment Factors............................ | 24 |
| Parole Plans....................................... | 48 |
| Closing Statements................................. | 68 |
| Recess............................................. | 79 |
| Decision........................................... | 80 |
| Adjournment........................................ | 91 |
| Transcript Certification........................... | 92 |

3

# P R O C E E D I N G S

1

2      **DEPUTY COMMISSIONER SELLWOOD:**  We are on the

3      record.

4      **PRESIDING COMMISSIONER SHELTON:**  Good morning,

5      everyone.  We are here today for the fourth Subsequent

6      Parole Consideration Hearing for Kennedy Edwards, CDC

7      number E-54444.  Today's date is April 12th, 2007.  The

8      time is five minutes to nine a.m.  And we are located at

9      CSP, Solano.  Mr. Edwards was received May 7th, 1990,

10     committed from Los Angeles County.  His life term began

11     that same date, 5/7/90.  And he has a minimum eligible

12     parole date of December 29th, 1999.

13          The controlling offense for which Mr. Edwards is

14     committed is set forth in case number NA-001524.

15     Charging in count one, violation PC 187, murder in the

16     second degree.  As well there is a non-controlling case,

17     LA number 968715 for possession of controlled

18     substances.  Mr. Edwards received a term of 15 years to

19     life.  Okay.

20          Mr. Edwards, we are going to introduce ourselves,

21     go around the table and say our first names, last names,

22     spell our last names.  And when we get to you, please

23     add your CDC number.  My name is Linda Shelton,

24     S-H-E-L-T-O-N, Commissioner.

25     **DEPUTY COMMISSIONER SELLWOOD:**  Jeff Sellwood,

1    S-E-L-L-W-O-O-D, Deputy Commissioner.

2         **PRESIDING COMMISSIONER SHELTON:**  Go ahead.

3         **INMATE EDWARDS:**  Kennedy Edwards, K-E-N-N-E-D-Y

4    E-D-W-A-R-D-S, E-54444.

5         **PRESIDING COMMISSIONER SHELTON:**  Thank you.

6·        **ATTORNEY NORTON:**  Marc Norton, N-O-R-T-O-N,

7    attorney for Mr. Kennedy Edwards.

8         **DEPUTY DISTRICT ATTORNEY DAHLE:**  David Dahle,

9    D-A-H-L-E, Deputy District Attorney, Los Angeles County.

10        **PRESIDING COMMISSIONER SHELTON:**  We also have an

11   officer in the room for security purposes who will not

12   be participating in today's hearing.  All right.  First

13   let's start with ADA issues.  You signed your BPT form

14   1073 on October 12th, 2006 indicating you had no

15   disabilities.  Has that changed any?

16        **INMATE EDWARDS:**  No, it hasn't changed any.

17        **PRESIDING COMMISSIONER SHELTON:**  Why don't you

18   move your microphone closer and that way you don't have

19   to keep bouncing up and down.  There you go.  You're

20   wearing glasses.  Are those prescription, sir?

21        **INMATE EDWARDS:**  Yes.

22        **PRESIDING COMMISSIONER SHELTON:**  Okay.  Do they

23   meet your needs for vision?

24        **INMATE EDWARDS:**  Yes, they do.

25        **PRESIDING COMMISSIONER SHELTON:**  Okay.  Is your

1  hearing okay?

2  **INMATE EDWARDS:**  Yes, it is.

3  **PRESIDING COMMISSIONER SHELTON:**  You don't have

4  to lean into the mike, yeah, he's going to check, but --

5  mobility good, sitting, standing, walking?

6  **INMATE EDWARDS:**  Yes.

7  **PRESIDING COMMISSIONER SHELTON:**  Do you take any

8  medications?

9  **INMATE EDWARDS:**  No.

10  **PRESIDING COMMISSIONER SHELTON:**  And did you

11  eventually get a GED or a high school diploma?

12  **INMATE EDWARDS:**  Yes, I did get a GED.

13  **PRESIDING COMMISSIONER SHELTON:**  Okay.  Great.

14  Counsel, it would appear that your client's needs have

15  been met.  Would you concur?

16  **ATTORNEY NORTON:**  I concur.

17  **PRESIDING COMMISSIONER SHELTON:**  Thank you.  All

18  right.  You've been here before, Mr. Edwards, but I want

19  to remind you of your rights.  You have the right to a

20  timely notice of this hearing.  You have the right to

21  review your C file.  I would note that you declined to

22  review your C file on October 12th, 2006?

23  **INMATE EDWARDS:**  Yes.

24  **PRESIDING COMMISSIONER SHELTON:**  Why is that?

25  **INMATE EDWARDS:**  I had already knew the

1   information in the C file because I've done Olson

2   reviews for the last four hearings.

3         **PRESIDING COMMISSIONER SHELTON:**  Okay.

4         **INMATE EDWARDS:**  Nothing has changed.

5         **PRESIDING COMMISSIONER SHELTON:**  All right.  I

6   would still recommend that given the opportunity, you go

7   through it.  We've had several occasions this week where

8   a gentleman thought that they had known their C file and

9   then we find things in them.  So just for your own good.

10  You also have the right to present relevant documents.

11  Counsel, have your clients rights been met so far?

12        **ATTORNEY NORTON:**  Yes.

13        **PRESIDING COMMISSIONER SHELTON:**  Thank you.

14  Also, sir, you have an additional right to an impartial

15  Panel.  And today your Panel would be Commissioner

16  Sellwood and myself.  Is that all right with you?

17        **INMATE EDWARDS:**  Yes, that's fine.

18        **PRESIDING COMMISSIONER SHELTON:**  Okay.  Thank

19  you.  And finally I wanted to let you know a couple

20  years ago the regulations changed with regards to your

21  right to appeal a hearing decision.  And I think they're

22  in the process of changing again.  So if you need

23  information there, check with your attorney.  Okay?

24        **INMATE EDWARDS:**  Okay.

25        **PRESIDING COMMISSIONER SHELTON:**  Now, sir, you

1  are not required to admit to or discuss your offense.

2  Do you know what that means?

3      **INMATE EDWARDS:**  Yes.

4      **PRESIDING COMMISSIONER SHELTON:**  Okay.  However,

5  this Panel does accept as true the findings of the

6  court.  Could you tell me what that means?

7      **INMATE EDWARDS:**  It means that if I choose to

8  talk about my crime then I can present, we can talk

9  about the crime and what was the last part you said,

10  excuse me?

11      **PRESIDING COMMISSIONER SHELTON:**  We accept as

12  true the findings of the court.

13      **INMATE EDWARDS:**  Yes.  The exception of what the

14  probation report says.

15      **PRESIDING COMMISSIONER SHELTON:**  Basically is

16  what we're looking at here is that you have a murder

17  second count against you.  We're not here to retry your

18  case.  We're here to discuss suitability.  Okay?

19      **INMATE EDWARDS:**  Okay.

20      **PRESIDING COMMISSIONER SHELTON:**  All right.

21  Commissioner, do we have any confidential information?

22      **DEPUTY COMMISSIONER SELLWOOD:**  There is

23  confidential information in your file, sir.  However, I

24  do not believe, Commissioner, that we will use it today.

25      **PRESIDING COMMISSIONER SHELTON:**  Okay.  Great.

1    Thank you.  I have already passed a hearing checklist

2    around to both attorneys who indicate by signature and

3    date that they have everything they need to move

4    forward.  Counsel, are there any additional documents to

5    be submitted?

6         **ATTORNEY NORTON:**  Yes, I have some chronos that

7    I've already indicated to the Deputy that Mr. Edwards

8    has from participation in both AA and NA for the most

9    recent four quarters, I believe, that are not included

10   in the --

11        **DEPUTY COMMISSIONER SELLWOOD:**  And I am, well, he

12   has already (indiscernible) to me.

13        **ATTORNEY NORTON:**  Okay.

14        **DEPUTY COMMISSIONER SELLWOOD:**  I've got them and

15   I will make mention of them so --

16        **ATTORNEY NORTON:**  Thank you very much.

17        **DEPUTY COMMISSIONER SELLWOOD:**  -- (indiscernible)

18   pass.

19        **ATTORNEY NORTON:**  Thank you.

20        **PRESIDING COMMISSIONER SHELTON:**  All right.

21   Anything else, sir?

22        **ATTORNEY NORTON:**  No.

23        **PRESIDING COMMISSIONER SHELTON:**  Are there any

24   preliminary objections?

25        **ATTORNEY NORTON:**  There are none.

1    **PRESIDING COMMISSIONER SHELTON:** Thank you. Will

2    your client be speaking with us today?

3    **ATTORNEY NORTON:** He will.

4    **PRESIDING COMMISSIONER SHELTON:** With regards to

5    all aspects?

6    **ATTORNEY NORTON:** Yes.

7    **PRESIDING COMMISSIONER SHELTON:** Okay. Please

8    raise your right hand, Mr. Edwards. Do you solemnly

9    swear or affirm that the testimony you give at this

10    hearing will be the truth, the whole truth and nothing

11    but the truth?

12    **INMATE EDWARDS:** Yes, I do.

13    **PRESIDING COMMISSIONER SHELTON:** Thank you. And

14    let's get started. The first thing we're going to do is

15    I'm going to enter into the record your commitment

16    offense summary. And after I do that I will ask you if

17    you would like to tell us your version. Okay. I am

18    referring to the Board report dated January 30th, 2007

19    page one, offense summary.

20         "On September 14th, 1989 at approximately

21         0150 hours Kennedy Edwards, Salvador Garcia,

22         Robert Wilson, Brandon Edwards and Deborah Scott

23         went to victim, Julio Chavez' apartment at the

24         Ship's Inn Apartments in San Pedro. Deborah

25         Scott knocked on the door and indicated that it

1   was Deborah.

2           "Julio Chavez opened the door and was shot

3   once in the chest area by Salvador Garcia.  Julio

4   Chavez fell back into the apartment to the floor.

5   Julio Chavez was taken for medical treatment, but

6   succumbed to his injuries on October 3rd, 1989.

7   The coroner's investigation attributed the death

8   to a gunshot wound to the chest and a projectile

9   was recovered from the spinal canal.

10          "Subsequent police investigation indicated

11  that Kennedy Edwards and the co-defendants

12  discussed killing Julio Chavez or getting money

13  from Chavez after Chavez reportedly had stolen

14  cocaine from Kennedy Edwards."

15      All right, sir, why don't you tell us what was

16  going on with you that day?

17      **INMATE EDWARDS:**  That version, what was going on,

18  someone had broke into a vehicle, my car.  And I was

19  dealing cocaine.

20      **PRESIDING COMMISSIONER SHELTON:**  I'm sorry.  You

21  were dealing cocaine?

22      **INMATE EDWARDS:**  Yes, I was.

23      **PRESIDING COMMISSIONER SHELTON:**  Okay.

24      **INMATE EDWARDS:**  I had been arrested for it.  And

25  they gave me a two year commitment offense for it.  And

1  I'm not denying that that's what I did.  It was wrong I

2  was out there dealing cocaine.  I understand that now.

3  But at the time, Deborah Scott was the one that had

4  bought some cocaine from Julio Chavez.

5      And I didn't know anything about Julio Chavez.  I

6  just mentioned that some drugs had been stolen out of my

7  car to Salvador Garcia.  And she mentioned to Salvador

8  Garcia that she had tried some drugs that were like the

9  drugs that I had back in 1989.  And so when he called me

10  and asked me to come over there, he explained to me that

11  someone in the complex, the Ship's Inn, too, that

12  someone had had the same kind of drugs that I had.

13      And so I asked Deborah, could she go and purchase

14  some of the drugs and bring it back and so we could take

15  a look at it.  And she did.  And I took a look at it.

16  And it was the same type of drug that I had.  And so we

17  went up to confront Mr. Julio Chavez about the drugs.

18  And Salvador Garcia had the gun on him.  So when Deborah

19  knocked on the door and he opened the door for Deborah,

20  he had the gun in his hand.  And it was a struggle over

21  the gun.  And he was, and the gun accidentally

22  discharged into the chest of Julio Chavez.

23      **PRESIDING COMMISSIONER SHELTON:**  How do you know

24  that he had the same drugs as you?

25      **INMATE EDWARDS:**  Being a drug dealer at that

1  time, I was good at analyzing what type of drugs, you

2  know, what type of the look, the textures.  And there

3  was a whole lot of things that was going on with this

4  particular type of drug that in this complex no one else

5  had.  And so after analyzing it and testing it, it came

6  out to be the same kind of drugs that I had.

7      **PRESIDING COMMISSIONER SHELTON:**  How did you

8  analyze it and test it?

9      **INMATE EDWARDS:**  Through baking soda, chemical

10  compound, taste test.  One of the guys taste tested it.

11  And it came out to be the same type.

12      **PRESIDING COMMISSIONER SHELTON:**  What if he had

13  purchased the drugs from the same person you purchased

14  the drugs from?

15      **INMATE EDWARDS:**  Well that would be kind of hard

16  because I didn't buy it in the same vicinity that it was

17  sold in.  It was bought in some other, by some other

18  place.  And so no one in that area had that particular

19  type.

20      **PRESIDING COMMISSIONER SHELTON:**  It truly makes

21  no sense to me to be honest with you.

22      **INMATE EDWARDS:**  I understand.

23      **PRESIDING COMMISSIONER SHELTON:**  So you knew

24  going there that Mr. Garcia had a weapon on him?

25      **INMATE EDWARDS:**  When I was going there?  I was

13

1  going there to find out if that was the type, if that

2  was actually the drug that was taken.

3       **PRESIDING COMMISSIONER SHELTON:** You knew when

4  you went there that Mr. Garcia had a gun on him.  He was

5  armed.

6       **INMATE EDWARDS:** To Mr. Julio's apartment?  Yes,

7  I knew he had one on him.

8       **PRESIDING COMMISSIONER SHELTON:** And why did he

9  have a gun?

10       **INMATE EDWARDS:** He had the gun only to

11  intimidate him and also for protection, so if Mr. Julio

12  Chavez had had a gun on him.

13       **PRESIDING COMMISSIONER SHELTON:** One, two, three,

14  four, five, I count five of you going to one person's

15  apartment.  And you had to arm yourself?

16       **INMATE EDWARDS:** Well it wasn't actually five

17  people.  It was only me, Deborah Scott and also Salvador

18  Garcia that went to the door.  The other two guys

19  weren't even, they weren't even in that area.  They were

20  somewhere else.

21       **PRESIDING COMMISSIONER SHELTON:** Why does it have

22  Robert Wilson and Brandon Edwards name here as all of

23  you arriving at the apartment?

24       **INMATE EDWARDS:** They happened to be in the

25  apartment, in the complex part of the apartment at that

1  particular time.  But they weren't in the vicinity of

2  that area.  They were in another vicinity of another

3  area.

4      **PRESIDING COMMISSIONER SHELTON:**  So after

5  Mr. Chavez was shot, what did you do?

6      **INMATE EDWARDS:**  Panicked, panic ran through me.

7  And my first reaction was to run, to get out of the

8  complex.

9      **PRESIDING COMMISSIONER SHELTON:**  If it was an

10 accident, why didn't you guys call 911 or stay and help

11 him?

12     **INMATE EDWARDS:**  I wasn't thinking clearly.

13     **PRESIDING COMMISSIONER SHELTON:**  Were you under

14 the influence at the time?

15     **INMATE EDWARDS:**  Yeah, I was smoking some

16 marijuana and drinking alcohol at that time.  And my

17 thought process wasn't clear enough to rationalize to

18 call the ambulance or call the police department.

19     **PRESIDING COMMISSIONER SHELTON:**  So you ran

20 where?

21     **INMATE EDWARDS:**  Out of the complex.  I jumped in

22 my car and speeded off.

23     **PRESIDING COMMISSIONER SHELTON:**  To where?

24     **INMATE EDWARDS:**  Home, I ran off and went home.

25     **PRESIDING COMMISSIONER SHELTON:**  And then what

1   happened?

2        INMATE EDWARDS:   And a couple of days later the

3   detectives of Los Angeles South, Southeast, I think it

4   is and Harbor City had called my house and they were

5   looking for me.   And so I set up a meeting to meet with

6   them at my attorney's office.   And I was arrested at the

7   attorney's office.

8        PRESIDING COMMISSIONER SHELTON:   Okay.

9   Commissioner, do you have any questions at this time?

10  Or do you want to wait?

11       DEPUTY COMMISSIONER SELLWOOD:   I think I'll wait.

12  Thank you.

13       PRESIDING COMMISSIONER SHELTON:   Okay.   All

14  right.   We're going to move forward. But there will a

15  question period.

16       INMATE EDWARDS:   Okay.

17       PRESIDING COMMISSIONER SHELTON:   Okay.   Let's

18  talk about your prior record.   It says, and I'm

19  referring to CI and I report and the Board report that

20  you did not have any juvenile record.

21       INMATE EDWARDS:   Yes.

22       PRESIDING COMMISSIONER SHELTON:   Is that true?

23       INMATE EDWARDS:   Yes, yes.

24       PRESIDING COMMISSIONER SHELTON:   No juvenile

25  record.

1    **INMATE EDWARDS:**  Yes.

2    **PRESIDING COMMISSIONER SHELTON:**  And we have you

3    arrested on January 16th, 1987, which put you at like

4    what, almost 23, for possession?

5    **INMATE EDWARDS:**  Yes, that was me.

6    **PRESIDING COMMISSIONER SHELTON:**  And it says you

7    were released for insufficient evidence?

8    **INMATE EDWARDS:**  Yes, that's correct.

9    **PRESIDING COMMISSIONER SHELTON:**  Okay.

10   **INMATE EDWARDS:**  That was for a marijuana charge.

11   **PRESIDING COMMISSIONER SHELTON:**  Okay.  And then

12   May 6th, '88 you were arrested by LAPD for another

13   possession of controlled substance for sale, 11351.  You

14   were convicted and sentenced to two years in state

15   prison.

16   **INMATE EDWARDS:**  Yes, that's true.

17   **PRESIDING COMMISSIONER SHELTON:**  Did you go to

18   state prison?

19   **INMATE EDWARDS:**  I was out on bail at this

20   particular time when I caught the 187 charge.  And I was

21   going through the process through the court system on

22   this particular charge.  And when I got arrested for the

23   187, I pled guilty to this charge, too, as well, because

24   I knew I was in the wrong.

25   **PRESIDING COMMISSIONER SHELTON:**  One would think

1   that if you were going through court, you would be on

2   you very best behavior.

3        **INMATE EDWARDS:**  That's correct.

4        **PRESIDING COMMISSIONER SHELTON:**  I'm going to

5   read what it says here in the Board report.  Arrested

6   January 20th, 1989, the Sheriff's Department in Los

7   Angeles, count one, 1202 of PC, possession,

8   manufacturing sales of dangerous weapon, etcetera.  That

9   was released lack of corpus.  You were arrested August

10   3rd, '89, count 111350, possession of narcotic

11   controlled substance.  And you were released for

12   insufficient evidence.  Arrested November 2nd, 1989,

13   count one, possession, cocaine base for sale.

14        And you were convicted on February 21, 1990,

15   sentenced to 36 month probation and 181 days of jail.

16   Arrested November 28, 1989, count one, and that would be

17   your commitment offense.  You were convicted of the

18   second degree murder and then followed with the

19   possession of the controlled substance for sale case.

20   And you received the two years for that.

21        **INMATE EDWARDS:**  Yes, I did.

22        **PRESIDING COMMISSIONER SHELTON:**  All right.  Did

23   I leave anything out?

24        **INMATE EDWARDS:**  No, that's pretty much clear.  I

25   was on the, at that time, that one year that I spent

1  going through this process here I was under the

2  addiction of drugs and selling drugs and the environment

3  that I was in.  I was caught up in the influence of

4  buying and selling drugs.  I know it was wrong what I

5  was doing.  I wasn't raised this way to do these things.

6  But it was a choice that I made going into it.  And I

7  ended up doing all these things within a one year span.

8         **PRESIDING COMMISSIONER SHELTON:**  We'll talk about

9  that in a second.  Let's talk about your social history.

10        **INMATE EDWARDS:**  Okay.

11        **PRESIDING COMMISSIONER SHELTON:**  And let's start,

12  I'm going to be referring to the Board report as well as

13  to the history, family history section of your

14  psychological evaluation.  First let me verify your

15  birth date, 1/23/64?

16        **INMATE EDWARDS:**  Yes.

17        **PRESIDING COMMISSIONER SHELTON:**  You were 25 at

18  the time of the commitment offense?

19        **INMATE EDWARDS:**  Twenty-five, going on twenty-

20  six.

21        **PRESIDING COMMISSIONER SHELTON:**  And you are

22  currently 43?

23        **INMATE EDWARDS:**  Yes, I am.

24        **PRESIDING COMMISSIONER SHELTON:**  Okay.  You were

25  born in Los Angeles.  You lived, were you living with

19

1    your parents at the time of the commitment offense?

2          **INMATE EDWARDS:**  Yes, I was.

3          **PRESIDING COMMISSIONER SHELTON:**  O.C. and Mary

4    Edwards.  You were one of seven children?

5          **INMATE EDWARDS:**  Yes.

6          **PRESIDING COMMISSIONER SHELTON:**  Are your parents

7    still alive?

8          **INMATE EDWARDS:**  My mother is still alive.  My

9    father passed away in 2002.

10         **PRESIDING COMMISSIONER SHELTON:**  Okay.  And what

11   about your brothers and sisters?

12         **INMATE EDWARDS:**  They're still alive.

13         **PRESIDING COMMISSIONER SHELTON:**  Do you have

14   contact with them?

15         **INMATE EDWARDS:**  A little contact.  I have one

16   brother that's in Texas, one is Kansas City, another

17   brother that's in Los Angeles.  He's a counselor for the

18   Salvation Army.  And I have two sisters.  They're both

19   living their lives.  I stay in contact with them.

20         **PRESIDING COMMISSIONER SHELTON:**  Does anybody

21   come visit you here?

22         **INMATE EDWARDS:**  No, not very often.

23         **PRESIDING COMMISSIONER SHELTON:**  Okay.  Anybody

24   else in your family get in trouble?

25         **INMATE EDWARDS:**  No.

1    PRESIDING COMMISSIONER SHELTON:  You graduated

2  from Locke High School in 1982?

3    INMATE EDWARDS:  Yes.

4    PRESIDING COMMISSIONER SHELTON:  You attempted

5  Compton College.  You worked as a salesman, security

6  guard, newspaper stuffer.  How old were you when you

7  started using drugs?

8    INMATE EDWARDS:  I was 24, 24, 25.

9    PRESIDING COMMISSIONER SHELTON:  And that would

10  be cocaine and marijuana and alcohol?

11    INMATE EDWARDS:  Yes.

12    PRESIDING COMMISSIONER SHELTON:  You probably

13  started alcohol sooner than that, right?

14    INMATE EDWARDS:  Did I start alcohol sooner than

15  that?  I tried it.  It was something that I really

16  wasn't into.  Marijuana, yes, I was more into marijuana

17  than alcohol.

18    PRESIDING COMMISSIONER SHELTON:  Any other drugs?

19    INMATE EDWARDS:  No.

20    PRESIDING COMMISSIONER SHELTON:  And how often

21  would you say you smoked pot?

22    INMATE EDWARDS:  On a daily basis?

23    PRESIDING COMMISSIONER SHELTON:  And what about

24  cocaine?

25    INMATE EDWARDS:  I see what it did to people and

21

1   it was never one of the things I wanted to get into.

2       **PRESIDING COMMISSIONER SHELTON:**  But you tried

3   it?

4       **INMATE EDWARDS:**  Yes.

5       **PRESIDING COMMISSIONER SHELTON:**  Have you ever,

6   you've never been married?

7       **INMATE EDWARDS:**  No.

8       **PRESIDING COMMISSIONER SHELTON:**  But you have a

9   child?

10      **INMATE EDWARDS:**  Yes.

11      **PRESIDING COMMISSIONER SHELTON:**  And how old is

12  your son?

13      **INMATE EDWARDS:**  My son is 18 years old.  And

14  he's living in Georgia.

15      **PRESIDING COMMISSIONER SHELTON:**  Do you have

16  contact with him?

17      **INMATE EDWARDS:**  Yes.

18      **PRESIDING COMMISSIONER SHELTON:**  How often?

19      **INMATE EDWARDS:**  I just talked to him on the

20  phone last Saturday.

21      **PRESIDING COMMISSIONER SHELTON:**  Is he going to

22  school?

23      **INMATE EDWARDS:**  Yes.

24      **PRESIDING COMMISSIONER SHELTON:**  It says here in

25  the Board report you had a cocaine habit for nine

1  months?

2       **INMATE EDWARDS:**  Yes, that was, I said that in

3  the beginning of the probation report.  I thought that

4  it might weigh on the fact of getting me some lesser

5  time.  I didn't understand that then as I do now, but I

6  lied in that instance.

7       **PRESIDING COMMISSIONER SHELTON:**  You lied today

8  or then?

9       **INMATE EDWARDS:**  Then.

10       **PRESIDING COMMISSIONER SHELTON:**  So you did not

11  have a cocaine habit?

12       **INMATE EDWARDS:**  No, I was a cocaine, I dealt a

13  lot of cocaine is what I was doing back in those years.

14       **PRESIDING COMMISSIONER SHELTON:**  So you learned

15  that lying didn't help you any?

16       **INMATE EDWARDS:**  Yes, I did.  That's why I'm

17  telling the truth about everything here today.

18       **PRESIDING COMMISSIONER SHELTON:**  That's good.

19  Let's take a look at the psychological family history

20  and see if there's anything.  We've talked about some of

21  your previous employments.  We've talked about your

22  family.  Any military experience?

23       **INMATE EDWARDS:**  No, no military experience.

24       **PRESIDING COMMISSIONER SHELTON:**  Said you grew up

25  in a stable family.  Is your mom still in LA?

1    **INMATE EDWARDS:**  Yes, she is.

2    **PRESIDING COMMISSIONER SHELTON:**  Okay.  Okay.  Is

3    there anything you can think of that we need to put on

4    the record for your social history that we haven't

5    talked about?

6    **INMATE EDWARDS:**  No, that's pretty much it.

7    Family --

8    **PRESIDING COMMISSIONER SHELTON:**  Well I have a

9    question for you.  Most people start messing around with

10   drugs when they're in their teens.  You never had a

11   record at all as a juvenile.  You had a responsible

12   family life.  You were employed in respectable jobs.  So

13   what in the heck happened?

14   **INMATE EDWARDS:**  I was asked that question

15   numerous times on my previous hearings, what had

16   happened to me.  I don't like blaming it on the

17   environment because it was a choice that I made.  But

18   there were a lot of things that were going on in the

19   environment.  And I guess I was trying to fit in because

20   I had been sheltered all my life from a lot of things,

21   going to private schools and then going to public school

22   and the transition from that and fitting in with certain

23   crowds of people, I began to try different things.  And

24   drugs happened to be one of them.  Thank you.

25   **PRESIDING COMMISSIONER SHELTON:**  Before you

1  started into drugs, did you have a particular goal in

2  life?  You were going to college.  Did you have --

3      **INMATE EDWARDS:**  Yes.  I was going to college for

4  data processing and electronic.  It was something I

5  wanted to further myself in.  I had a part-time job at

6  that time working for the Los Angeles times as a

7  stuffer.  And I became a stuffing supervisor there.

8      And it was something that I wanted to further

9  myself in.  But I strayed away and lost focus on what I

10 was supposed to be doing.  And it was my choice that I

11 made, which I made some very bad choices and because of

12 my own distorted thinking.  But yeah, those were my

13 goals.

14     **PRESIDING COMMISSIONER SHELTON:**  Thank you.

15 We're going to go to Commissioner Sellwood and talk

16 about your post-conviction factors.

17     **DEPUTY COMMISSIONER SELLWOOD:**  Good morning, sir.

18     **INMATE EDWARDS:**  Good morning.

19     **DEPUTY COMMISSIONER SELLWOOD:**  Your last hearing

20 was on February 2nd of 2006.  So that's just a little

21 bit more than a year ago.  What we're going to do today

22 here is I'm going to put some information on the record

23 as to what's been happening for you the last year.  The

24 information up to the last hearing all got recorded at

25 least on that or prior hearings.  So we'll just be

25

1   talking about the one year period of time.  If I leave

2   anything out, if I make a mistake, please let me know.

3   And I want to make sure the record is correct.  All

4   right.

5        Your current classification score is 19 and your

6   custody level is medium A.  As I noted your last hearing

7   is February 2nd of 2006.  That was your third subsequent

8   hearing.  And you were denied for one year.  You were

9   received here at Solano on June 2nd of 1997.  You have a

10  very good discipline record overall.  This is the one

11  thing I'll talk about that goes throughout your entire

12  history.  And that is that you have had only one 115.

13       Now, I struggled a little bit to figure it out.

14  But at one point it looked like there was a second 115.

15  But the second one was diminished to a 128.  So in the

16  end run, there has only been one 115.  And that was back

17  in 1993 for over-familiarization with staff.  So an

18  excellent disciplinary history, sir.  A lot of people

19  with 10 or 15 115s say you just, you know, you can't do

20  any better.  Well you've shown that you can do better,

21  only having one.

22       You've only had four 128s, the most interestingly

23  in '99.  And then you go back to '94 and '93.  But for

24  theft of four pencils, which you had sequestered in your

25  clothing, I guess.  And they were afraid of it being

1   weapons.  And I didn't learn much more about what you

2   intended to do with them.  But theft of four pencils

3   back in '99.  Okay.

4         I'm going to go ahead and read from the report.

5   It says that you remained during this, well this is for

6   10 of '05 through 5 of '06, so quite a bit before your

7   last hearing, but a little bit after.  So we'll take the

8   whole period in.  Okay.  And this says that you remained

9   at medium A custody.  That in terms of vocational

10  training, and again, this is a little bit dated, but on

11  10/8 of '05, you were assigned to be a fender employment

12  continuum workshop, which you completed on 11/1 of '05.

13        Then you were reassigned to the prison industry

14  authority, PIA, optical lens lab, earning exceptional

15  work supervisor reports.  On 12/12 of '05 you finished

16  the requirements necessary to renew your American Board

17  of Opticianary National Contact Lens Examiner, ABO

18  certification.  That's a whole lot of words.  What does

19  that mean?

20        **INMATE EDWARDS:**  American Board of Opticianary.

21        **PRESIDING COMMISSIONER SHELTON:**  Okay.

22        **INMATE EDWARDS:**  It's a nationally known --

23        **DEPUTY COMMISSIONER SELLWOOD:**  Well it's not

24  that, I mean, what are the skills that you got certified

25  for?

1          **INMATE EDWARDS:**  As a dispenser for making out,

2     putting the, that's the term for making glasses.

3          **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  So if I

4     came in to get glasses, what part, and we do all the

5     tests.  And we decide I need glasses that do something.

6     What part of that do you have?

7          **INMATE EDWARDS:**  The part that we actually do is

8     we take your prescription.  And according to what your

9     prescription is, we make the lenses --

10          **DEPUTY COMMISSIONER SELLWOOD:**  Okay.

11          **INMATE EDWARDS:**  -- according to that.

12          **DEPUTY COMMISSIONER SELLWOOD:**  You literally

13     grind, do you grind the lens to that?

14          **INMATE EDWARDS:**  We grind the lenses.  First we

15     take your prescription.  We go into the stock room.  We

16     get the material that is needed to make the lenses.  And

17     then we go out and we have generators.  We have

18     blockers.  We have reclaim tanks.  We have edgers.  We

19     have lensometers that actually fit the prescription

20     according to the lens.

21          **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  So you,

22     okay.  That makes sense to me.  I understand that.  And

23     it sounds to me, let me ask you the direct question, is

24     that then a salable skill in the world today?

25          **INMATE EDWARDS:**  Sure.  It's a marketable skill

1   that all over the world, that people who are wearing

2   prescription glasses that this is a very marketable

3   skill.

4           **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  And does

5   that go for both plastic and glass lenses?  Do you do

6   both?

7           **INMATE EDWARDS:**  We do plastic, glass and

8   actually polycarbonate.

9           **DEPUTY COMMISSIONER SELLWOOD:**  Okay.

10          **INMATE EDWARDS:**  You know, we get our material.

11  We do retail, wholesales.  And it's a very lucrative

12  business.

13          **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  All right.

14  Thank you.  And so the certification said that you

15  finished the requirements necessary to renew.  That

16  doesn't say you did renew, finished requirements

17  necessary.  Does the requirements itself get the renewal

18  or do you have to take a test to continue to renew your

19  skills?

20          **INMATE EDWARDS:**  Okay.  Actually, I have renewed

21  my skill for --

22          **DEPUTY COMMISSIONER SELLWOOD:**  Okay.

23          **INMATE EDWARDS:**  It will last, it won't expire

24  until 2008.

25          **DEPUTY COMMISSIONER SELLWOOD:**  Okay.

1        **INMATE EDWARDS:**  What it is, you do a continuing

2   education as far as to update your skills in that are in

3   the field that I'm in.

4        **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  All right.

5   And then do you actually take a test every couple of

6   years to renew your certification?

7        **INMATE EDWARDS:**  Yes.

8        **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  And you've

9   taken that one through '08?

10       **INMATE EDWARDS:**  Through to, yes.

11       **DEPUTY COMMISSIONER SELLWOOD:**  Through '08.

12  Okay.  Very good.  Now the next question would be if you

13  were to receive a parole date and find yourself in the

14  community, would this be your chosen way to earn a

15  living?

16       **INMATE EDWARDS:**  Yes, yes.  This is a field that

17  I enjoy.  I like people.  I also have customer service

18  specialist that is also in the file.  And it --

19       **PRESIDING COMMISSIONER SHELTON:**  You've actually

20  worked a lot of jobs.

21       **INMATE EDWARDS:**  Yeah.  So it helps as far as

22  being a trouble shooter, to work at a help desk and

23  support the customer and finding out exactly what the

24  issues may be with the person wearing glasses.  I can do

25  that as well, which puts me at a different branch of pay

1    grade.  So it would be something that I would look into,

2    yes.

3         **DEPUTY COMMISSIONER SELLWOOD:**  Okay.

4         **INMATE EDWARDS:**  But I also have other marketable

5    skills as well as you go through the file we can talk

6    about.

7         **DEPUTY COMMISSIONER SELLWOOD:**  Well go ahead and

8    just tell me.  What do you think those are?

9         **INMATE EDWARDS:**  Also as a carpenter.  I've taken

10   that trade for three years.  And I was also a TA.  So I

11   helped other people to learn the trade of framework as

12   well.  And also auto body and fender, that I've learned

13   how to restore, restoration work on cars.

14        **DEPUTY COMMISSIONER SELLWOOD:**  Yes, there was

15   note about air framework.  I thought what the heck is

16   air framework.

17        **INMATE EDWARDS:**  That's framing airplanes.

18        **DEPUTY COMMISSIONER SELLWOOD:**  Airplanes.

19        **INMATE EDWARDS:**  Yes.

20        **DEPUTY COMMISSIONER SELLWOOD:**  Okay.

21        **INMATE EDWARDS:**  That's what it is, framing

22   airplanes, working in the aviation department.

23        **DEPUTY COMMISSIONER SELLWOOD:**  Okay.

24        **INMATE EDWARDS:**  Reframing airplanes, structural,

25   for structural damages and --

1    **DEPUTY COMMISSIONER SELLWOOD:** But your choice,

2    if you could secure a job, would be in the lens field?

3    **INMATE EDWARDS:** Yes, that would be my choice.

4    **DEPUTY COMMISSIONER SELLWOOD:** It would be your,

5    okay.

6    **INMATE EDWARDS:** And also FEMA would be also be a

7    choice as a volunteer.

8    **DEPUTY COMMISSIONER SELLWOOD:** Well I saw the

9    FEMA stuff, but FEMA is usually classes that help you

10   and you know, you learn in the classes.  And so, what

11   about FEMA besides having taken classes?

12   **INMATE EDWARDS:** Well, if in my community in my

13   area that we may have a certain type of emergency, I'm

14   equipped with certain information --

15   **DEPUTY COMMISSIONER SELLWOOD:** Okay.

16   **INMATE EDWARDS:** -- to go in and assist in an

17   area that may be a disaster.

18   **DEPUTY COMMISSIONER SELLWOOD:** Okay.  Understood.

19   So that might actually like a volunteer fireman.

20   **INMATE EDWARDS:** Sure.

21   **DEPUTY COMMISSIONER SELLWOOD:** Something you

22   might have one, you would let people know I'm a capable

23   person in this field and --

24   **INMATE EDWARDS:** Yes.

25   **DEPUTY COMMISSIONER SELLWOOD:** Okay.  Very good.

1   Well that's always nice for the community to have people

2   who are able to do that.  Okay.  It was interesting that

3   it said no academics and no work during this period of

4   time and then, let me get back to that in a minute.

5   Then under group activities, participation in AA and NA

6   for each of the quarters throughout the time period.

7   You remained disciplinary free.

8        And then from 5, from May of '06 through 1 of

9   '07, now it says vocational training, continues his

10  assignment in the PIA optical lens lab.  And I guess I

11  always get confused between vocational training, which

12  actually is work to a great degree when you work in the

13  lens lab, but somehow it's not considered to be a work

14  assignment.  It's a vocational assignment.  But it is

15  like a work assignment, isn't it?

16       **INMATE EDWARDS:**  It's both because in the

17  vocational part, you're learning a skill.

18       **DEPUTY COMMISSIONER SELLWOOD:**  Right.

19       **INMATE EDWARDS:**  But you also have the hands on

20  experience of going out and doing the production part of

21  it, too.

22       **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  So I guess

23  it's just the way it's cut up, it's called vocational

24  instead of job.  But you are working the whole time?

25       **INMATE EDWARDS:**  Exactly.

1      **DEPUTY COMMISSIONER SELLWOOD:**  Okay.

2      **INMATE EDWARDS:**  But I'm no longer in the

3  vocational because I've passed my certification skills

4  and manufacturing eyewear.  And I also passed my

5  American Board of Opticianary certification in that

6  area.  So --

7      **DEPUTY COMMISSIONER SELLWOOD:**  So now it would be

8  work for you as opposed to vocational?

9      **INMATE EDWARDS:**  Right.  I was hired on as a PIA

10  employee.

11      **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  And that

12  transition is not noted here.  But thank you for that

13  information.  All right.  Group activities, none noted.

14  Prisoner states that chronos are forthcoming.  Your

15  Counsel has informed me and shown us some chronos that

16  indicate that you have simply continued your AA and NA

17  participation on a monthly basis and, excuse me,

18  quarterly basis, all the way up through the present

19  time.

20      And there is a specific laudatory chrono written

21  by J. Thang, vocational landscaping instructor.  And it

22  says,

23      "During the last seven years I have been

24      watching the program of AA work in the life of

25      inmate, K. Edwards.  I have seen how he applies

1          the principles of AA in all of his affairs from

2          actively participating in running meetings, to

3          reaching out to new members who want to help in

4          learning how to live sober, to his involvement in

5          the prison victim offender reconciliation group

6          program, the BORG program."

7      It's a very positive chrono.  And that is dated

8  on 1/3 of '07.  So Counsel, along with the chronos that

9  you provided for the participation and that one that I

10 have read, there are no others that I am missing?

11     **ATTORNEY NORTON:**  There are none.  With the chair

12 or the Deputy's permission, may I read the rest of that

13 chrono into the record?  I was going to do it later, but

14 since we're on it --

15     **DEPUTY COMMISSIONER SELLWOOD:**  Sure.

16     **ATTORNEY NORTON:**  Thank you very much.

17 Continuing on where the Deputy Commissioner left off it

18 says,

19          "By his actions Edwards shows that he

20          understands what AA is really all about, that it

21          is a design for living that really works, whether

22          free on the streets or locked up in prison.  He

23          does not go to the meetings just to get the,

24          quote, chrono, end quote that may look good for

25          the Board.  He goes because he wants to have a

35

1        better life irrespective of his present

2        circumstances.

3               "Edwards, it seems to me, has had a

4        spiritual awakening as the result of the work he

5        has done and gone from being a taker to being a

6        giver.  He has acquired the necessary tools and

7        skills, I believe, to parole successfully.  He

8        will have, excuse me, he will have a strong

9        community of support on the streets because of

10        his lifetime commitment to stay involved with

11        Alcoholics Anonymous.  I strongly recommend that

12        you find Inmate Edwards suitable for parole.  He

13        is an excellent example of what the quote, R, end

14        quote, looks like in our new name, CDCR."

15        And again, that is written by J. Thang, who has

16  known Mr. Edwards and seen him over the past seven

17  years.  Thank you for allowing me to read that in the

18  record.

19        **DEPUTY COMMISSIONER SELLWOOD**:  Sure.  Thank you.

20  I'm going to move on now to the psychiatric reports.

21  And there are two reports here, the most recent one,

22  authored by John T. Rouse, PhD, on January 16th of 2006,

23  and the one prior to that authored by Steven Walker,

24  PhD, January 22nd, 2002.  Let me start off with the more

25  recent one.  The Commissioner already covered the fact

1    that you did, you got the GED.  And I guess because it

2    says you couldn't find your transcripts, so you wanted

3    to make sure.

4         **INMATE EDWARDS:**  Yes.

5         **DEPUTY COMMISSIONER SELLWOOD:**  So you got the

6    GED, although, per your own recollection graduate from

7    Locke High School?

8         **INMATE EDWARDS:**  Yes, I did.

9         **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  And then it

10   says you attended a couple of college classes at Compton

11   College.

12        **INMATE EDWARDS:**  Yes, yes, Sir.

13        **DEPUTY COMMISSIONER SELLWOOD:**  How many semesters

14   did you go to Compton?

15        **INMATE EDWARDS:**  I took three semesters.

16        **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  How many

17   units total?

18        **INMATE EDWARDS:**  I have at least, I think about

19   12.  I don't have the transcript for it.  I never

20   wrote --

21        **DEPUTY COMMISSIONER SELLWOOD:**  Was it a full-time

22   attendance during that time or just one or two classes

23   each semester?

24        **INMATE EDWARDS:**  It was full-time --

25        **DEPUTY COMMISSIONER SELLWOOD:**  Full-time

1    attendance.

2         **INMATE EDWARDS:**  -- attendance, yes.

3         **DEPUTY COMMISSIONER SELLWOOD:**  Normally full-time

4    is 12 to 15 units.  So you might have more units than

5    you think if you went three semesters.  Okay.  As noted

6    before, you worked at Thrifty, for the Los Angeles times

7    as a paper stuffer, and you noted became a paper stuffer

8    supervisor, a paper stuffer supervisor, that's a hard

9    one to say, and at Wells Fargo Bank as a security guard.

10        **INMATE EDWARDS:**  Yes.

11        **DEPUTY COMMISSIONER SELLWOOD:**  You have to have a

12   clearance?

13        **INMATE EDWARDS:**  Yes, you do have to have a

14   clearance.  You can't have any felony on your record.

15        **DEPUTY COMMISSIONER SELLWOOD:**  Were you dealing

16   drugs at the time?

17        **INMATE EDWARDS:**  No, I had changed jobs,

18   actually, went to Thrifty's.

19        **DEPUTY COMMISSIONER SELLWOOD:**  Wait a minute,

20   when you were working at Wells Fargo, are you involved

21   in the narcotics world?

22        **INMATE EDWARDS:**  No.

23        **DEPUTY COMMISSIONER SELLWOOD:**  Not in any way?

24        **INMATE EDWARDS:**  I wasn't selling any drugs when

25   I was working for Wells Fargo.

1    **DEPUTY COMMISSIONER SELLWOOD:**    Okay.    I want to

2    go back to the prior report for just a moment.    I want

3    to show the change in the diagnosis.    Diagnostic

4    impression of the early report from '02, it says Axis I,

5    poly-substance abuse, cannabis, alcohol and cocaine by

6    history.    Adult antisocial behavior, by history.    And

7    then Axis II, antisocial personality features.    Axis V,

8    GAF score of 88.

9        Then if you move to the more recent one from '06,

10    Axis I, no diagnosis.    All right.    Now that's a

11    significant shift.    Axis II, no diagnosis, again a

12    significant shift, which is still interesting because

13    you don't necessarily see that shift on II as much as

14    you can on I, but that's an interesting, down to

15    nothing.    And then Axis II a GAF score of '90.    And

16    that's pretty much realistic from 88 to 90, that makes

17    sense.

18        I do want to go to the older report for just a

19    moment because I want to read from it.    It has a much

20    more in depth substance abuse history discussion.    Now I

21    know that you already discussed this.    The Commissioner

22    asked you a couple of questions and went over it.    But

23    it does bring up some things that you said you had lied

24    about your nine month cocaine use.    But it talks about

25    it again.    It talks about getting the information from

1  the probation officer's report, which is what you said
2  you told them.   So it makes sense in terms of a linear
3  reasoning.

4          "But Mr. Edwards reported that he
5          primarily used alcohol and marijuana, but the POR
6          noted that he acknowledged a nine month cocaine
7          habit just prior to involvement in this offense.
8          He noted that he started using alcohol and
9          marijuana during his junior high school and high
10         school years, about age 15 and that his use of
11         these substances continued on up through his
12         arrest for the instant offense.

13         "As an adult, the inmate has had three
14         arrests for possession of controlled substances,
15         one of which resulted in a prison sentence of two
16         years and is non-controlling in this case.   The
17         inmate used to consider himself to have a problem
18         with substance abuse, but quote, not anymore, I
19         am a recovered alcoholic and addict, end quote.
20         He later, after questioning, amended his
21         explanation to being a quote, unquote, recovering
22         alcoholic and addict.

23         "He noted that he had been in AA and NA
24         for about 10 years, while incarcerated.   And
25         while he indicated he was working the steps, he

1    was doing so without a sponsor or a sequentially

2    planned course of study.  Right now I am working

3    on the step four, but I also work on my

4    attitudes, any emotions, my behaviors, my whole

5    lifestyle."

6        Okay.  I thought it was interesting how he went

7    into or maybe this is she, oh well, whichever, how this

8    doctor went into the differences between recovered and

9    recovering, which would be a basic crux of the program

10    to understand that you're always recovering.

11        **INMATE EDWARDS:**  Sure.  Yes, Sir.

12        **PRESIDING COMMISSIONER SHELTON:**  And also that

13    you were not, did not have a sponsor and not working a

14    sequentially planned course of action.  Now does that

15    make sense to you that this person said this?

16        **INMATE EDWARDS:**  Well this is Mr. Steven Walker,

17    PhD?

18        **DEPUTY COMMISSIONER SELLWOOD:**  Yes.

19        **INMATE EDWARDS:**  He's from the healthcare service

20    division from California Department of Corrections out

21    of Sacramento.  And he came in at that particular time

22    to do an evaluation on me.  And if you go back to some

23    of the more recent reports that I got like from a

24    Dr. Waggoner, I don't know if you saw that one in there,

25    Dr. --

1    DEPUTY COMMISSIONER SELLWOOD:  That's more recent

2  than the '02?

3    INMATE EDWARDS:  It's more recent than that, in

4  '98.

5    ATTORNEY NORTON:  Actually it would be prior to.

6    INMATE EDWARDS:  Prior to --

7    DEPUTY COMMISSIONER SELLWOOD:  Okay.  I'm sorry.

8    ATTORNEY NORTON:  (Indiscernible) talking about,

9  yeah.

10    INMATE EDWARDS:  Prior to Mr. Walker --

11    DEPUTY COMMISSIONER SELLWOOD:  Okay.

12    INMATE EDWARDS:  -- a Robert Waggoner, his report

13  was totally different the way he wrote it up compared to

14  the way Mr. Walker wrote it up.

15    DEPUTY COMMISSIONER SELLWOOD:  Okay.  Well let me

16  just ask you the direct question then from Mr. Walker's

17  report.

18    INMATE EDWARDS:  Yes.

19    DEPUTY COMMISSIONER SELLWOOD:  He almost writes

20  it that you don't have a sponsor and you're not working

21  a sequential program as a bad, that he's not doing it

22  right.  Okay.

23    INMATE EDWARDS:  Sure.

24    DEPUTY COMMISSIONER SELLWOOD:  So that's not

25  mentioned again in '06.  Do you have the ability, while

1  here at Solano, to have a sponsor?

2      **INMATE EDWARDS:**  Yes, I actually have a sponsor.

3  And I'll give you a letter that you can read here.

4      **DEPUTY COMMISSIONER SELLWOOD:**  So you do

5  currently have a sponsor?

6      **INMATE EDWARDS:**  Yes.

7      **DEPUTY COMMISSIONER SELLWOOD:**  All right.

8      **INMATE EDWARDS:**  Okay.

9      **DEPUTY COMMISSIONER SELLWOOD:**  And in terms of

10  the sequential program, in other words he's talking

11  about going through the steps, have you worked through

12  all of the steps and taken your inventories and done

13  your things?

14      **INMATE EDWARDS:**  I've worked the steps of

15  alcoholics anonymous.  I'm continuing to work the steps.

16  I've actually gained a lot of insight on my addictions

17  to alcohol and drugs.  I am aware of my behavior when,

18  and it's not just about alcohol and drugs, it's also my

19  character defects that I've dealt with and my behavior

20  while on the alcohol and drugs as well as the character

21  defects outside of using alcohol and drugs.

22      **DEPUTY COMMISSIONER SELLWOOD:**  And Mr. Thang

23  certainly thinks that you have learned how to apply the

24  principles of AA in your life.

25      **INMATE EDWARDS:**  Yes.

45

1     **DEPUTY COMMISSIONER SELLWOOD:**  And across the

2     Board.  So that's a very positive, it kind of

3     counteracts this thing from '02.  But I was interested

4     at least in kind of having that discussion with you

5     about what that person said.  Thank you.  Let's go back

6     to the more recent, the report from '06.

7              Assessment of dangerousness, it's somewhat long.

8     But it's interesting because the '02 report throws a lot

9     of words around, but never assesses dangerousness.  And

10    so I was hoping that this person would.  I'm going to

11    read the whole paragraph because it kind of contextually

12    puts things in place.

13              "Mr. Edwards' life crime was not related

14              to any mental disorder.  Though there was an

15              indication that substance abuse may have played a

16              marginal part or may have been an aggravating

17              factor in his life crime.  However, Mr. Edwards'

18              life crime was likely the result of his

19              lifestyle, personality characteristics and or

20              poor impulse control.

21              "Subsequent to his incarceration he

22              appears to have matured, has been discipline free

23              for over six years.  And during the course of his

24              incarceration has never committed a violent act

25              or attempt towards staff or other inmates.  He

1    has participated in a number of pro-social

2    activities.

3         "He seems to have benefited from these

4    pro-social activities in terms of acknowledgement

5    of his substance abuse and an understanding of

6    the factors leading up to his commitment offense.

7    He has expressed what appears to be a genuine

8    sense of remorse for the victim and the victim's

9    family.  He accepts culpability and

10   responsibility for the commitment offense.

11        "Clearly he has developed a sustained

12   level of impulse control.  He has, in effect,

13   demonstrated appropriate personal, social and

14   behavioral adjustments in this institutional

15   setting.  As such, there is a high, reasonable

16   probability that Mr. Edwards' risk of

17   dangerousness is lower than that of the average

18   inmate incarcerated here at CSP, Solano and

19   consistent with the average inmate who has been

20   paroled in the community with a similar

21   commitment offense.

22        "If Mr. Edwards is to be offered a parole

23   date, a factor of his parole should include

24   continued self-help programming for substance

25   abuse.  Mental health issues do not appear to be

45

1    an issue."

2    So let me ask you a question about that second to

3    the last sentence.  If you were to find yourself in the

4    community now, would you be interested in AA or NA?

5    **INMATE EDWARDS:**  Yeah, sure.  That's --

6    **DEPUTY COMMISSIONER SELLWOOD:**  And what would you

7    do about that?

8    **INMATE EDWARDS:**  I'm going to find a home, I have

9    a home group that's waiting on me.  And I'm going to be

10    a participant in that home group.

11    **DEPUTY COMMISSIONER SELLWOOD:**  And tell me what

12    you mean by home group.

13    **INMATE EDWARDS:**  An AA home group, you know,

14    where, a chapter where alcoholics --

15    **DEPUTY COMMISSIONER SELLWOOD:**  So a chapter.

16    **INMATE EDWARDS:**  Yeah, recovering alcoholics --

17    **DEPUTY COMMISSIONER SELLWOOD:**  I understand

18    chapter more than home group.  Okay.

19    **INMATE EDWARDS:**  -- right, where recovering

20    alcoholics meet and support --

21    **DEPUTY COMMISSIONER SELLWOOD:**  All right.  And

22    so --

23    **INMATE EDWARDS:**  -- and help one another.

24    **DEPUTY COMMISSIONER SELLWOOD:**  -- you've

25    identified this group?

1        **INMATE EDWARDS:**  Yes.

2        **DEPUTY COMMISSIONER SELLWOOD:**  In the area that

3    you want to be paroled back to?

4        **INMATE EDWARDS:**  Yes, I have.

5        **DEPUTY COMMISSIONER SELLWOOD:**  All right.  Have

6    you identified a sponsor?

7        **INMATE EDWARDS:**  Yes, I have.  I have also, I

8    wanted to share that letter with you.  A Timothy

9    Williams, he works at the Los Angeles Harbor Light

10   Center and for the Salvation Army.  And he's a counselor

11   there.

12       **DEPUTY COMMISSIONER SELLWOOD:**  Did you get to

13   know him through your brother, did you say who works at

14   the Salvation Army?

15       **INMATE EDWARDS:**  Yes, yes.

16       **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  And your

17   brother is a counselor at Salvation Army?

18       **INMATE EDWARDS:**  My brother is a counselor at the

19   Salvation Army.

20       **DEPUTY COMMISSIONER SELLWOOD:**  This is not your

21   brother, though?

22       **INMATE EDWARDS:**  This is my brother.

23       **DEPUTY COMMISSIONER SELLWOOD:**  That is your

24   brother.

25       **INMATE EDWARDS:**  Yeah, he's a counselor that

1  works at, for --

2         **DEPUTY COMMISSIONER SELLWOOD:**  So he would be

3  your sponsor?

4         **INMATE EDWARDS:**  He's sponsoring me.

5         **DEPUTY COMMISSIONER SELLWOOD:**  Your brother would

6  be your sponsor?

7         **INMATE EDWARDS:**  Yes, he is.

8         **DEPUTY COMMISSIONER SELLWOOD:**  Okay.  Okay.  And

9  you've identified the group.  Okay.  Very good.  All

10 right.  I do have a little bit of trouble with

11 Mr. Rouse's litany of words and how he says it.  But

12 basically, I see that as a positive risk assessment.

13 Thank you, Commissioner.

14        **ATTORNEY NORTON:**  Commissioner, if I may, because

15 Dr. Walker in his 2002 psych did not address the issue

16 of dangerousness --

17        **DEPUTY COMMISSIONER SELLWOOD:**  He sure didn't.

18        **ATTORNEY NORTON:**  -- I went back to the 1998

19 authored by Robert Waggoner.  And I would like to read

20 that, his dealing with the risk assessment into the

21 record at this point, if I may.  It says,

22             "Mr. Edwards has programmed well and made

23         some obvious changes in his life from the nine

24         month to a year period in 1988 and 1989 when his

25         crime spree began and ended with the instant

1  offense.  He posed an escalating degree of threat

2  at that time, I'm sorry, at the time of the

3  crime.  But that is greatly reduced.

4  "It is likely that the gains made,

5  parenthetical, example, given better self

6  control, drug free, violence free, end

7  parenthetical, would hold if returned to the

8  community.  As such, he is estimated to pose a

9  minimal degree of threat based upon his

10  performance of the last nine years.  He does not

11  exhibit psychological problems, which would pose

12  a threat to a successful parole."

13  And that's by Robert Waggoner, PhD, authored

14  September 29th of 1998.  Thank you.

15  **PRESIDING COMMISSIONER SHELTON:**  Thank you.

16  Mr. Edwards, let's talk about parole plans.  It says

17  down here that you would like to live with your mom.

18  **INMATE EDWARDS:**  Correct.

19  **PRESIDING COMMISSIONER SHELTON:**  Is that still

20  correct?

21  **INMATE EDWARDS:**  Yes, it is.

22  **PRESIDING COMMISSIONER SHELTON:**  Who lives in the

23  house with your mom?

24  **INMATE EDWARDS:**  I have a sister, Nicole Edwards,

25  that lives my mother.  And she has three daughters.

1    **PRESIDING COMMISSIONER SHELTON:** And how big a

2    house is this?

3    **INMATE EDWARDS:** This house, it has my father's

4    room, which nobody stays in. And then my sister has her

5    own room. And her daughters have a room. And my mother

6    also has a room.

7    **PRESIDING COMMISSIONER SHELTON:** So you would

8    stay in your father's room?

9    **INMATE EDWARDS:** Yes.

10   **PRESIDING COMMISSIONER SHELTON:** And I know we

11   have a letter from your mom. And I'll get into that in

12   a minute. Now we've talked about what you would like to

13   do for employment. This says that you have some job

14   offers. I have no letters in my file.

15   **INMATE EDWARDS:** Okay.

16   **PRESIDING COMMISSIONER SHELTON:** Do you have any?

17   **INMATE EDWARDS:** No, not at present. Last year

18   when I went to the Board, Frederick McCoy had offered me

19   a job at his antique shop. And you might see something

20   documented according to that. But there's nothing

21   there. He filled the position. He couldn't hold it for

22   me. But if I get released, I could always go to him and

23   ask him if that employment vacancy is still open. And

24   I'm sure he would hire me because he is also a member of

25   Alcoholic Anonymous and that's what they do. They help

1    and support one another.

2        **PRESIDING COMMISSIONER SHELTON:**  Sure.

3        **INMATE EDWARDS:**  I also have other marketable

4    skills that will assist me into finding a job.

5        **PRESIDING COMMISSIONER SHELTON:**  What have you

6    done for yourself to find a job?

7        **INMATE EDWARDS:**  I have written letters.  And I

8    have gotten responses back from the EDD for upon my

9    release come to their agency and they will assist me in

10   the area that I need.  I have resumes already made up.

11       **PRESIDING COMMISSIONER SHELTON:**  Good.

12       **INMATE EDWARDS:**  And they'll set me up for

13   interviews to go and basically sell myself for a job.

14       **PRESIDING COMMISSIONER SHELTON:**  Now you

15   indicated that you were, your number one choice would be

16   optical.  Have you written to like Lens Crafters or some

17   of those kinds of places?

18       **INMATE EDWARDS:**  No, I haven't written to any

19   Lens Crafters directly.  But the OEC, the Offenders

20   Employment Continuum program have my file.  And once I'm

21   released from prison, I can give them a call and tell

22   them what field I would like to go in.  Because of my

23   skill, they have the file already.  And they would set

24   up an interview so I can go to a place like Lens

25   Crafter, Sight for Sore Eyes, Vision Eye, Inc. and

1  different places they can direct me to.

2      **PRESIDING COMMISSIONER SHELTON:** So let me ask

3  you this.  How would you support yourself until you got

4  a job?

5      **INMATE EDWARDS:** I have a little money saved

6  already from my PIA lens lab craft.

7      **PRESIDING COMMISSIONER SHELTON:** How much money

8  do you have saved, sir?

9      **INMATE EDWARDS:** I have about 600 dollars.

10      **PRESIDING COMMISSIONER SHELTON:** Okay.

11      **INMATE EDWARDS:** And going to see my PO and then

12  going down to the EDD and going to check with the

13  antique shop, I'm sure I wouldn't have a problem finding

14  any work soon, soon upon my release, very soon, matter

15  of days I should be employed.

16      **PRESIDING COMMISSIONER SHELTON:** I enjoy your

17  optimism.  That's half the battle.  Let's take a look at

18  your support letters, all right.  I know you have one

19  from your mom dated January 20th, 2007.  And she's

20  offering you a place to stay and of course support in

21  any way.  Then you have a letter from Lashelle

22  Moorehead, brother or sister?

23      **INMATE EDWARDS:** Lashelle Moorehead, no, sister.

24      **PRESIDING COMMISSIONER SHELTON:** Okay.  And this

25  sister is where?

1    **INMATE EDWARDS:**  She's in Los Angeles.

2    **PRESIDING COMMISSIONER SHELTON:**  Okay.  And she

3    writes a support letter.  She said she will do anything

4    she could to help you.  Then we have a letters from

5    Pastors Tom and Dottie Hooper from the Christian Twelve

6    Step Recovering Ministries.  And they talk about,

7    actually what they do is they explain about how well

8    you're doing in the 12 step process.  And they also

9    indicate a suggestion that you might want to consider

10   staying at the Bible Tabernacle.

11   **INMATE EDWARDS:**  Yes.

12   **PRESIDING COMMISSIONER SHELTON:**  New Life

13   Institute.

14   **INMATE EDWARDS:**  Yes.

15   **PRESIDING COMMISSIONER SHELTON:**  Have they talked

16   to you about that?

17   **INMATE EDWARDS:**  Yes.

18   **PRESIDING COMMISSIONER SHELTON:**  What does that

19   program offer you?

20   **INMATE EDWARDS:**  That program offers me recovery,

21   continuing my recovery.  And also they help with job

22   skills and job placement according to your skill level

23   and experiences and just a place to stay until I'm

24   actually transitioned back out into society.

25   **PRESIDING COMMISSIONER SHELTON:**  What do you

1  think about that?

2       INMATE EDWARDS:  It's a wonderful idea.

3       PRESIDING COMMISSIONER SHELTON:  Have you talked

4  to them about it?

5       INMATE EDWARDS:  I've talked to them about it.

6  I've talked to my mother about it because she's a big

7  part of my parole plan.  And I want to be there to

8  support and help her.  And if it takes for me to go to

9  the Bible Tabernacle to transition back out into society

10 then that's a great thing for me to do.  But one of my

11 first choices is to go back and be a caregiver for my

12 mother.

13      PRESIDING COMMISSIONER SHELTON:  How far is the

14 program away from where your mom lives?

15      INMATE EDWARDS:  It's, I don't have the mileage

16 on that.  But it's in a different city.

17      PRESIDING COMMISSIONER SHELTON:  This program is

18 in Canyon Country.

19      INMATE EDWARDS:  Correct.

20      PRESIDING COMMISSIONER SHELTON:  And your mom

21 lives where?

22      INMATE EDWARDS:  In Los Angeles.  I don't know.

23      PRESIDING COMMISSIONER SHELTON:  Mr. Dahle, do

24 you have any idea how far apart those places are?

25      DEPUTY DISTRICT ATTORNEY DAHLE:  Santa Clarita is

1   Canyon Country.  My guess would be somewhere in the

2   vicinity of 35 miles.

3          ATTORNEY NORTON:  Thirty-five, yeah, I would

4   agree, traffic laden miles.

5          PRESIDING COMMISSIONER SHELTON:  Would that kind

6   of program offer you an opportunity to visit your

7   mother?

8          INMATE EDWARDS:  Yes.

9          PRESIDING COMMISSIONER SHELTON:  I mean, I notice

10  there is no charge for it, too.  Then we have a letter

11  from Brenden Chapman.  Who is he?

12         INMATE EDWARDS:  It's a friend of mine that's,

13  he's a minister, a guy that I met that took a liking to

14  me.  And we've been corresponding.

15         PRESIDING COMMISSIONER SHELTON:  You met him

16  inside when he came to minister or was he an inmate

17  or --

18         INMATE EDWARDS:  He was an inmate.  And his

19  father is a reverend.  He's the chaplain.  His mother is

20  also a chaplain.  And so his parents continue to

21  correspond with me after he was released.

22         PRESIDING COMMISSIONER SHELTON:  Okay.

23         INMATE EDWARDS:  And he finally got off of

24  parole.  And he's doing real well as a designer, graphic

25  designer.

1    **PRESIDING COMMISSIONER SHELTON:**  Graphic design?

2    **INMATE EDWARDS:**  Yes.

3    **PRESIDING COMMISSIONER SHELTON:**  Terrific.  Have

4    we left anything out of your parole plans?

5    **INMATE EDWARDS:**  No, no, you haven't.

6    **PRESIDING COMMISSIONER SHELTON:**  I know you

7    mentioned a sponsor.  Would we be able to look at that

8    book that you have there?

9    **INMATE EDWARDS:**  Sure.

10   **PRESIDING COMMISSIONER SHELTON:**  We'll get it

11   when we recess.  Okay.  Because one of the things I was

12   going to ask you about was a sponsor, getting that

13   prepared for part of your parole plans.

14   **INMATE EDWARDS:**  I've already prepared for

15   sponsorships.

16   **PRESIDING COMMISSIONER SHELTON:**  I see that.

17   **INMATE EDWARDS:**  Jobs search, place to stay.  I'm

18   well equipped with the information that I have today to

19   go out and live a successful life in a community.

20   **PRESIDING COMMISSIONER SHELTON:**  Okay.  We're

21   going to move into questions.  And that means the

22   Commissioner and I can ask you questions as can both

23   attorneys.  And I have a few because I reviewed the last

24   couple of decisions.  And I know there was some concern,

25   which I am struggling with, too, over the issues of the

1  commitment offense.  So I want to ask you a couple

2  questions.

3      **INMATE EDWARDS:**  Okay.

4      **PRESIDING COMMISSIONER SHELTON:**  You indicated

5  that drugs were stolen from your vehicle, right?

6      **INMATE EDWARDS:**  That's correct.

7      **PRESIDING COMMISSIONER SHELTON:**  Do you remember

8  what date you noticed those drugs stolen from your

9  vehicle?

10     **INMATE EDWARDS:**  It was the day before the

11 shooting.

12     **PRESIDING COMMISSIONER SHELTON:**  That's when you

13 first noticed it?

14     **INMATE EDWARDS:**  Yes.

15     **PRESIDING COMMISSIONER SHELTON:**  Why is there an

16 indication that there was a few weeks of planning --

17     **INMATE EDWARDS:**  Right.

18     **PRESIDING COMMISSIONER SHELTON:**  -- in play here

19 prior to the shooting?

20     **INMATE EDWARDS:**  Correct.  Reno Williams, I had

21 no documentation on him.  I found out about this guy

22 later, that he accused me of actually discussing killing

23 Mr. Julio Chavez a week prior to the incident happening.

24 I never met Mr. Reno.  I never talked to a Mr. Reno.

25 This was one of those things that came up.

1        And it was brought to my attention by Mr. Garcia
2   through Deborah Scott who informed him and he called me
3   on the phone and said I need to come over because he
4   believed that he found out who stole the drugs from me.
5   And so when I went over there, it was Deborah Scott had
6   told me that she had had some drugs that were just like
7   the drugs that I had.  So I asked here to purchase it.
8   It was no planning.  It was discussed at that particular
9   time.  But it was no week planning about doing anything
10  about any drugs.  I had got the same information that.

11       **PRESIDING COMMISSIONER SHELTON:**  Where does Reno
12  Williams fit into this?

13       **INMATE EDWARDS:**  I found out later on through
14  talking to different people that he stayed inside the
15  Ship's Inn Two, at that hotel.

16       **PRESIDING COMMISSIONER SHELTON:**  So how would he
17  know if you were planning or not planning this offense?

18       **INMATE EDWARDS:**  I have no idea of that.  All I
19  found out --

20       **PRESIDING COMMISSIONER SHELTON:**  Is he friends
21  with any of your codefendants?

22       **INMATE EDWARDS:**  Well Salvador Garcia actually
23  lived in the Ship's Inn Two.  Also, William Reno lived
24  in the Ship's Inn Two.  William Reno was a heroin
25  addict, drug addict, someone who lived in the Ship's Inn

1  Two.

2          **PRESIDING COMMISSIONER SHELTON:**  Sounds like a

3  lovely complex.

4          **INMATE EDWARDS:**  Yeah, well --

5          **PRESIDING COMMISSIONER SHELTON:**  So why would he

6  say that you planned this if you didn't?

7          **INMATE EDWARDS:**  Well when the officers were, the

8  investigating officers had talked to some of the

9  witnesses that were around there, his belief was that

10  there were a reward out for my arrest.  I never met the

11  guy.  But he had knew of me.  And a lot of people in

12  that vicinity had knew of me.

13          **PRESIDING COMMISSIONER SHELTON:**  As a dealer.

14          **INMATE EDWARDS:**  As a dealer.  But didn't know me

15  because I never dealt with them.  So I was known in the

16  area.  But I didn't know a lot of people in the area.

17  But I was a well known person in that area.

18          **PRESIDING COMMISSIONER SHELTON:**  So you say that

19  you discovered the theft of your vehicle the day before

20  the shooting.  At what point did Deborah go over to buy

21  the drugs?

22          **INMATE EDWARDS:**  The next following night about

23  1:50 in the morning.

24          **PRESIDING COMMISSIONER SHELTON:**  The day that you

25  discovered the drugs were missing?

1    **INMATE EDWARDS:**  The day that I discovered the

2    drugs were missing, the following day.  She had

3    purchased some drugs that were just like that.  And then

4    when I was called, it was maybe 12.  And it took me from

5    where I came from to get to San Pedro was about 1:50,

6    1:30, somewhere around there when I got there.

7    **PRESIDING COMMISSIONER SHELTON:**  Okay.  All

8    right.  I don't have any other questions at this time.

9    So I'm going to defer to my partner here.

10    **DEPUTY COMMISSIONER SELLWOOD:**  Let me just make

11    sure I understand.  The reason that you became

12    suspicious of the victim was because the lady involved

13    in this bought drugs from the victim and notified you,

14    hey, same kind of drugs that you had stolen.  So that

15    kind of says maybe he stole my drugs.

16    **INMATE EDWARDS:**  Well Deborah Scott talked to

17    Salvador Garcia.

18    **DEPUTY COMMISSIONER SELLWOOD:**  Okay.

19    **INMATE EDWARDS:**  Because they all stayed in the

20    Ship's Inn Two.

21    **DEPUTY COMMISSIONER SELLWOOD:**  Right.

22    **INMATE EDWARDS:**  Salvador --

23    **DEPUTY COMMISSIONER SELLWOOD:**  But she bought the

24    drugs from the victim?

25    **INMATE EDWARDS:**  Yes, she did.

1    **DEPUTY COMMISSIONER SELLWOOD:** And it's that act

2 of buying the drugs and saying, oh, similar drugs to

3 what you had stolen that gets you involved with okay,

4 this guys probably stole my drugs.

5    **INMATE EDWARDS:** Yes.

6    **DEPUTY COMMISSIONER SELLWOOD:** Now he's out

7 selling my drugs?

8    **INMATE EDWARDS:** Yes. That's --

9    **PRESIDING COMMISSIONER SHELTON:** Or using them.

10    **DEPUTY COMMISSIONER SELLWOOD:** Or using them.

11    **INMATE EDWARDS:** Or using the drugs.

12    **DEPUTY COMMISSIONER SELLWOOD:** Whatever, okay.

13 And then you come over and you would tell us that you

14 come over and then the decision is made to go over to

15 this guy's place.

16    **INMATE EDWARDS:** To actually, when I came over, I

17 asked Deborah to go and purchase some of the drugs that

18 she claimed --

19    **DEPUTY COMMISSIONER SELLWOOD:** All right.

20    **INMATE EDWARDS:** -- that were like the drugs I

21 had. And we tested it.

22    **DEPUTY COMMISSIONER SELLWOOD:** And you went with

23 her that time or she came back with drugs again?

24    **INMATE EDWARDS:** Well she went to go get the

25 drugs. And then she came back with it, because she

1  knew --

2      **DEPUTY COMMISSIONER SELLWOOD:**  And then you went

3  with her?

4      **INMATE EDWARDS:**  -- she knew Mr. Julio Chavez.

5      **PRESIDING COMMISSIONER SHELTON:**  She had bought

6  drugs originally and thought they looked like yours.

7  And she used those.  And then she told you about it.

8  And then you had her go back a second time and get more

9  drugs to show you?

10      **INMATE EDWARDS:**  Right, because she had known

11  Julio Chavez.  I didn't know Julio Chavez.

12      **DEPUTY COMMISSIONER SELLWOOD:**  And I have a basic

13  question about the difference between your version and

14  the version offered in the report that the Commissioner

15  read.  The version offered in the report says, she

16  knocked on the door, hi, it's Deborah, he opens the

17  door.  And the codefendant with you, bang, bang.  Your

18  version is fight, struggle for the gun, gun goes off.

19  Do we know who told the original version of the door

20  opens and bang, bang with no fight involved?  I mean,

21  how do we get that version?

22      **INMATE EDWARDS:**  Excuse me, what's your question

23  to that?

24      **DEPUTY COMMISSIONER SELLWOOD:**  How do we get the

25  version that says there was no struggle for the gun.

1    The door simply opened and the man got shot.

2         **INMATE EDWARDS:**  That came from Reno Williams, I

3    guess.  I have no idea.  The only report that I had that

4    said anything was William Reno said that after

5    discussing killing Julio Chavez, I guess this came from

6    him.  I'm not sure.  Or it could be in the confidential

7    file because I have no access to --

8         **DEPUTY COMMISSIONER SELLWOOD:**  I would imagine it

9    might have --

10        **INMATE EDWARDS:**  One of the things that we asked

11   the DA last year was to present us with, in the file

12   where I could be able to go into it and see what that

13   information had said.  It was never presented.  So I

14   don't know exactly where a lot of these things are

15   coming from.

16        **DEPUTY COMMISSIONER SELLWOOD:**  Okay.

17        **PRESIDING COMMISSIONER SHELTON:**  There was a

18   request for some follow-up.  And I didn't see it.

19        **INMATE EDWARDS:**  Because I had no knowledge of a

20   lot of the information that was being said.

21        **DEPUTY COMMISSIONER SELLWOOD:**  All right.  Thank

22   you.  I'm, thank you.

23        **PRESIDING COMMISSIONER SHELTON:**  Mr. Dahle?

24        **DEPUTY DISTRICT ATTORNEY DAHLE:**  Just

25   preliminarily, I would ask the Panel check the

1    prisoner's central file, because there is, I have a

2    letter that staff sent in February of 2006 to this

3    institution with police reports, it appears and that was

4    following the last Parole Consideration Hearing, to see

5    if those documents are placed in the inmate's central

6    file.  I would presume under the legal section because

7    it was specifically asked that documentation not be

8    placed in the confidential.

9         **ATTORNEY NORTON:**  What's the date of that,

10    Counsel?

11         **DEPUTY DISTRICT ATTORNEY DAHLE:**  February of

12    2006.

13         **ATTORNEY NORTON:**  February --

14         **PRESIDING COMMISSIONER SHELTON:**  2006.

15         **DEPUTY DISTRICT ATTORNEY DAHLE:**  February 14th,

16    2006.

17         **ATTORNEY NORTON:**  Because that would have been

18    only two weeks after the last --

19         **DEPUTY DISTRICT ATTORNEY DAHLE:**  Yeah, after the

20    hearing.

21         **ATTORNEY NORTON:**  Okay.

22         **DEPUTY DISTRICT ATTORNEY DAHLE:**  So it should be

23    in the inmate's central file.

24         **PRESIDING COMMISSIONER SHELTON:**  While we're

25    looking, where are your codefendants now, Mr. Edwards?

1    **INMATE EDWARDS:**  Mr. Salvador Garcia, deceased.

2   Deborah Scott --

3    **PRESIDING COMMISSIONER SHELTON:**  Naturally or

4   otherwise?

5    **INMATE EDWARDS:**  I don't have any information on

6   how he was, naturally or otherwise.  Brandon Edwards is

7   here at CSP, Solano.

8    **PRESIDING COMMISSIONER SHELTON:**  You communicate

9   with him?

10    **INMATE EDWARDS:**  He's on a different yard.

11    **PRESIDING COMMISSIONER SHELTON:**  Do you

12   communicate with him at all?

13    **INMATE EDWARDS:**  No.  And Deborah Scott was

14   released after serving her time.

15    **PRESIDING COMMISSIONER SHELTON:**  How much time?

16    **INMATE EDWARDS:**  She was given three years.  And

17   the other defendant was never charged.

18    **PRESIDING COMMISSIONER SHELTON:**  Let me ask you a

19   question.  Who else had guns?

20    **INMATE EDWARDS:**  No one.  Just Salvador Garcia.

21    **PRESIDING COMMISSIONER SHELTON:**  Why does the

22   report indicate there were three weapons?

23    **INMATE EDWARDS:**  It was something that came from

24   Reno Williams, witness.

25    **PRESIDING COMMISSIONER SHELTON:**  The statement

65

1  made by Salvador Garcia on a cassette tape indicated

2  that it was not he who fired the gunshot. He stated he

3  had a 38 caliber pistol at the time of entry. He had

4  removed the bullets from the magazine in the chamber of

5  the pistol. He stated there were three pistols among

6  their group. And someone other than he fired the shot.

7      **INMATE EDWARDS:** That's where that comes from.

8      **ATTORNEY NORTON:** That's coming from Salvador

9  Garcia, the man who did do the shooting, obviously a

10  self-serving statement that, yes.

11      **PRESIDING COMMISSIONER SHELTON:** Yes, that's what

12  I'm saying.

13      **INMATE EDWARDS:** And if you look at Mr. Julio

14  Chavez' statement before he passed away, he directly

15  points to Salvador Garcia as being the perpetrator that

16  shot him. Did you want to ask any questions, sir, while

17  he was looking for the package or do you want to wait a

18  second?

19      **DEPUTY DISTRICT ATTORNEY DAHLE:** One of the

20  questions that I had was that I believe that I heard the

21  inmate say that his crime partner, Mr. Garcia, had a

22  shotgun, was armed with a shotgun when they went to the

23  door; is that correct?

24      **INMATE EDWARDS:** It was not a shotgun. It was a

25  handgun.

1  **DEPUTY DISTRICT ATTORNEY DAHLE:**  All right.

2  Thank you.  I have no other questions for the inmate.

3  Thank you.

4  **PRESIDING COMMISSIONER SHELTON:**  Mr. Norton, do

5  you have any questions?

6  **ATTORNEY NORTON:**  Yes.  Mr. Edwards, how do you

7  feel about the death of Mr. Julio Chavez?

8  **INMATE EDWARDS:**  It was tragic.  It shouldn't

9  have never happened.  I'm very remorseful for it.  You

10 know, if I could apologize to Julio for what had

11 happened, you know, and also his family that's also been

12 hurt and went through a lot of pain.

13 **PRESIDING COMMISSIONER SHELTON:**  What do you know

14 about his family?

15 **INMATE EDWARDS:**  I found out that he had three

16 daughters.  And they're suffering the most now because

17 their father was taken away from them.  And due to my

18 stupidity and my distorted thinking and poor decision

19 making, they no longer have a father to be there to

20 support and help them through their life experiences.

21 **ATTORNEY NORTON:**  And even though you did not do

22 the shooting, do you feel that you're responsible for

23 the death of Mr. Chavez?

24 **INMATE EDWARDS:**  Yes.

25 **ATTORNEY NORTON:**  And why is that?

67

1    **INMATE EDWARDS:**  Because it was my drug that

2  caused the action that affected Mr. Julio Chavez in the

3  way it did.

4    **ATTORNEY NORTON:**  Thank you.  I have no further

5  questions.

6    **PRESIDING COMMISSIONER SHELTON:**  Okay.  Thank

7  you.  (Indiscernible) there, Commissioner?

8    **DEPUTY COMMISSIONER SELLWOOD:**  No.

9    **PRESIDING COMMISSIONER SHELTON:**  I have no

10  notation of anything in my board report other than the

11  request for the information.

12    **DEPUTY DISTRICT ATTORNEY DAHLE:**  I'll be happy to

13  provide the reports today to staff so that they can copy

14  them to place into the file.

15    **PRESIDING COMMISSIONER SHELTON:**  Thank you.

16    **DEPUTY DISTRICT ATTORNEY DAHLE:**  I have the

17  documentation here.

18    **DEPUTY COMMISSIONER SELLWOOD:**  There were some

19  court, you know, transcripts.  But they were talking

20  about a change of plea to no-lo and all the discussion

21  about that.  So there was never any discussion of the

22  issues.

23    **DEPUTY DISTRICT ATTORNEY DAHLE:**  I have police

24  reports including the transcribed statements of the, and

25  the photographic lineups that relate to the arrests of

1    the defendant, codefendants, their statements

2    transcribed, and the interviews with other witnesses

3    that I'll be providing.

4         **PRESIDING COMMISSIONER SHELTON:**  Okay.  Thank

5    you.  Before we go into closing statements, I would

6    indicate that we send out notices to agencies and

7    individuals that might had an interest in your case.

8    Those are called 3042 notices.  That's why the District

9    Attorney's Office is represented here today.  We also

10   received a letter from LA Police Department basically

11   indicating an opposition to parole for you at this time.

12   With that, we will go to closing statements.  First is

13   Mr. Dahle then your attorney.  And then you may speak if

14   you like, Mr. Edwards.

15        **DEPUTY DISTRICT ATTORNEY DAHLE:**  Thank you.  On

16   behalf of the District Attorney, I am going to ask this

17   Panel, after due consideration here and looking very

18   closely at the positives and the negatives that exist in

19   Mr. Edwards' case, find that he is not suitable at this

20   time yet for parole.  Mr. Edwards has certainly turned a

21   corner and is addressing the issues.  And I believe he

22   has been doing so earnestly.

23        He comes to prison unfortunately having given up

24   or squandered some very significant opportunities in his

25   upbringing that is tragic for him, probably out of a

1 concern for greed in dealing drugs. And it's troubling.

2 And there are several areas that concern me that I think

3 should give the Panel pause and be reason to deny parole

4 again at this particular hearing.

5 First is the nature of the crime, although I

6 think the inmate is expressing genuine remorse here for

7 this crime. It is a tragic killing that is drug

8 related. I am concerned about the differences in the

9 psychological assessments that have been posed by

10 Dr. Rouse and by Dr. Walker, who is now one of your

11 supervisors for the clinical program to be used on

12 individuals that come before this Board.

13 One of the areas that was not noted in the

14 discussion here that is continuing to trouble me is in

15 2002, Dr. Walker, the only clinician of the group that

16 did clinical tests in a risk for violence assessment,

17 did both the PCLR, the psychopathy checklist revised,

18 which found Mr. Edwards in the low range. But he also

19 did the violence risk appraisal guide assessment. And

20 that placed this inmate in 2002 in the indeterminate

21 range of violence risk. Quoting Dr. Walker,

22 "This score is associated with a 17 to 35

23 percent chance of a violent re-offense within

24 seven years and a 31 to 48 percent risk of

25 violent re-offense within 10 years were the

1      inmate to be released to the community at this

2      time."

3      Dr. Rouse's three page report evidences no

4  reassessment of Dr. Walker's clinical tests that were

5  run.  It does not eliminate them.  In fact, Dr. Rouse's

6  comments regarding substance abuse only cover three

7  lines in his clinical assessment in 2006, whereas,

8  Dr. Walker went into much great detail.  Dr. Walker

9  noted,

10      "Mr. Edwards appears to have a superficial

11      appreciation of the lifelong nature of a

12      substance abuse problem and currently seems

13      ambivalent about seeing himself being a continued

14      risk for substance abuse.  Nonetheless, due to

15      the nature of the proclivity for drug and alcohol

16      use, he will remain at a higher risk for relapse

17      then will people in the general population."

18      This is in 2002.  Now, given the fact that

19  Mr. Edwards' counselor in AA here gives him laudatory

20  notes for his participation in the substance abuse

21  program and Dr. Rouse has eliminated the Axis I

22  diagnosis that Dr. Walker has, poly-substance abuse in

23  institutional remission, at the best Mr. Edwards'

24  progress must be characterized as recent and recent

25  because he has been institutionalized since 1990.  So I

1  think that a longer period of observation is going to be

2  necessary to insure that this is long-term commitment.

3      And with that, I acknowledge the fact that he has

4  been substance abuse free while in the institution.  But

5  the concern is not so much whether he's been using in

6  the institution, but will he use or abuse again on the

7  outside when released back into free society.

8      Lastly, I am concerned as well about the fact

9  that Mr. Edwards has no current job offer, has not

10  identified any employers that he has sent out

11  applications to in the free community.  This is

12  particularly significant to the District Attorney

13  because this was a crime of opportunism.

14      Mr. Edwards was engaged in drug trafficking to

15  supplement his income while he was working.  He's going

16  back out into the free community without money.  Will he

17  resume that behavior?  Will he put himself into that

18  position again by the lure of easy money?  That is a

19  matter that I believe needs to be addressed.

20      I applaud him for his searching out of

21  residential treatment as a source.  But again, by going

22  back and living with his mother, he's returning to the

23  same comfort zone he was in when he was dealing drugs

24  and using other people to sell narcotics in the local

25  community.  He is going back to what he is comfortable

1  with.  And I think that that is a wrong message to give.

2  I do not contest the validity of being a caregiver to

3  his mother, a noble intent to be sure.  But he is

4  stepping right back it seems into the same environment

5  that he was in when he was involved in this.  And that

6  is the wrong atmosphere to put him back into immediately

7  after.

8       So I think that focusing more on a transitional

9  living program is probably more prudent for him and

10  certainly having firmed up employment plans as soon as

11  he hits the street is necessary to insure the public

12  safety.

13       Given these areas and the fact that I think there

14  needs to be a longer period of observations to insure

15  the long-term commitment, I think also a supplemental

16  assessment by clinicians to address the variances

17  between Dr. Rouse's three page report and the more

18  extensive seven page report by Dr. Walker that included

19  the risk assessment tools, I think there needs to be

20  some clarification or bringing together of these two

21  reports before this Panel can be comfortable in

22  assessing the inmate is suitable for release into the

23  community.  And I'll submit on that basis.  Thank you.

24       **PRESIDING COMMISSIONER SHELTON:**  Thank you.

25  Mr. Norton?

1    **ATTORNEY NORTON:**  Yes, thank you.  Mr. Edwards

2    presents to this Panel what it means to be

3    rehabilitated.  First of all, looking at his social

4    history, he does come from a stable family.  And he has

5    no history of assaultive behavior and absolutely no

6    juvenile record.  He shows insight into why he varied

7    from the stable home.  He says I was trying to fit in.

8    And he was sheltered.  He was going to private schools.

9         And then it was his choice to involve himself

10   with dealing because of his distorted thinking.  I know

11   that's one of the things that the Panel looks for is

12   insight into the causative factors of his commitment

13   offense.  I don't believe I've ever represented an

14   inmate who has shown more keen and acute insight into

15   the causative factors.

16        I don't believe that there is any evidence in the

17   record that he presents a measurable risk of going back

18   to his old lifestyle of using and dealing drugs.  To the

19   contrary, I look at the chrono from Mr. Thang who has

20   known him for seven years and has witnessed on a daily

21   basis or at least a weekly basis the life of Inmate

22   Edwards, how he applies the principles of AA in all of

23   his affairs.

24        And to reiterate, he says, I strongly recommend

25   you find him suitable for parole.  He's an excellent

1    example of what rehabilitation looks like in our new

2    name.  And again, I've already stated that.  And I would

3    just like to reemphasize that.  The District Attorney

4    contends that he does present a risk to returning to his

5    old lifestyle because of the VRAG of five years ago.  I

6    would, and it's in the indeterminate range.  And again,

7    that was five years ago.

8         But the best predictor of future behavior is

9    history.  And this Mr. Edwards has not had a single 115

10   for drugs, alcohol or violence while institutionalized.

11   His record has been exemplary. The 115, I believe, was

12   for over familiarity with staff.  And that was back in

13   1993.  Again, showing acute insight into the causative

14   factors, he acknowledged that he involved himself in

15   dealing of cocaine.  He was very candid with this Panel

16   today regarding that activity.

17        As to the circumstances surrounding the life

18   crime, I did not hear any objection from the District

19   Attorney's representative that he's trying to minimize

20   his involvement or anything like that.  And I don't

21   believe he is.  I believe his version is the true

22   version.

23        He acknowledged that he was not using good

24   judgment at the time, as most people involved in

25   criminal behavior are not.  He acknowledged that he did

1    not call for help after Mr. Chavez was shot.  Again,

2    most, a lot of inmates come in here and they try to make

3    excuses and say well, this, that and no, he just said,

4    you know, I didn't.  And again, I think that is to be,

5    he is to be commended for his candor with this Panel.

6        And again, Mr. Edwards does deserve individual

7    consideration for parole.  Again, he was not the shooter

8    in this crime.  And there is no indication to support

9    the theory that he went there with any other intent than

10   to retrieve his drugs.  He certainly, there's certainly

11   no evidence in the record that he intended for anyone to

12   be killed.  And he did take responsibility for this

13   crime at the outset.  He took a plea, again, there were

14   no factual findings made by a judge or a jury as to

15   intent.  But he took a plea and has been serving his

16   time and serving his time well.

17       Now 18 years later Mr. Kennedy Edwards is not the

18   same person that was dealing drugs back then.  He has

19   done the necessary work and self-help activities to

20   change his way of thinking.  It's not just that he's

21   doing the externalities.  He's changed his way of

22   thinking.  And that's been demonstrated here today by a

23   very intelligent and articulate man.

24       He has three vocations in the optician, auto body

25   and carpentry.  So he certainly has marketable skills.

76

1   And I know there's a lot of discussion, he doesn't have

2   a job.   That is not required under the statute.   And I

3   would submit that he has done the necessary work.   He

4   had reached out to OEC.   He's reached out to EDD.   And I

5   have no question that this man, who again, will be under

6   the supervision of a parole officer, will do the

7   necessary things to get himself employment.

8          And he has solid family support.   I agree with

9   the District Attorney that it's commendable that he be

10  there to care take for his mother.   However, I know as

11  special condition of parole, if the Panel would like,

12  they could have him parole to the New Life Institute.

13  He has a letter that he would be accepted there.   And

14  again, it's free of charge for six months.

15         In sum, Mr. Edwards is what the R stands for in

16  CDC and R.   I respectfully request that this Panel find

17  him suitable for parole today and set a parole date for

18  him under the appropriate matrix calculation.   Thank

19  you.

20         **PRESIDING COMMISSIONER SHELTON:**   Thank you, sir.

21  Mr. Edwards, do you think you are suitable for parole?

22         **INMATE EDWARDS:**   Yes, yes, I am suitable for

23  parole.   I would just like to talk about time and

24  change.

25         **PRESIDING COMMISSIONER SHELTON:**   Go right ahead.

1          **INMATE EDWARDS:**  Because within the last 18 years

2    of being incarcerated in prison that I've taken a lot of

3    programs that have given me a lot of insight and

4    awareness and understanding the things that I have done

5    in my past.  My behavior and all the extra baggage stuff

6    that I came into prison with, I've reduced those chances

7    of ever going back and reliving those old behaviors and

8    patterns that I've done once before in my past.

9          I've grown and matured in such a way that I could

10   be a responsible man out in society and even in a

11   community today, that I want to be able to help and

12   support my family as well as others to give back for all

13   the things that I've done that was, I'm ashamed of, that

14   I've caused grief to a lot of people.  So this is my

15   way.  I do it in the institution as far as helping those

16   out who have came from the similar backgrounds and

17   similar behavioral patterns that I came from.

18         And those are things that are passion to my heart

19   and I'm driven and motivated to do today.  And it's

20   something that I want to be able to continue upon my

21   release on parole.  I know that I have a lot of work to

22   do upon my parole.  And it's something that I'm going to

23   work at daily to keep my focus.

24         I have no desire to do the things that I've done

25   in my past.  I'm 43 years old now.  I have to move

1  forward with my life, not backwards.  I don't want to

2  have to look at the past.  But I want to go into a

3  future.  And I know that I have the ability to be able

4  to do that now because of my thinking skills.  I have

5  great coping skills today that will allow me to be able

6  to go out and be a productive member in society.

7       I also would like to apologize to the Chavez'

8  family for the grief and the pain that I caused them.

9  Because of my actions, their father, a son and a brother

10 has been murdered, because of that.  And so I would just

11 like to apologize for that.  And I also would like to

12 thank you guys for giving me the opportunity to come in

13 and present myself before you and ask, you know,

14 compassion and that God puts it on your heart to find me

15 parole today.

16      I'm able to make a difference in the life than,

17 out there today than I was if you had asked me that 18

18 years ago.  My focus is much clearer now.  I have so

19 many things to offer because of the skills and

20 experience of being incarcerated to a society that may

21 be straying in the same direction I've been in.  So I

22 ask you to compassionately to give me a second chance to

23 go back out into society and be that productive person.

24 Thank you.

25      **PRESIDING COMMISSIONER SHELTON:**  Thank you, sir.

79

1  Very nicely said, I might add.  We are going to recess

2  for deliberations.  The time is 10:25 a.m.  And if we

3  could look at your book during the recess, I would

4  appreciate it.

5                    R E C E S S

6                    --oOo--

1  **CALIFORNIA BOARD OF PAROLE HEARINGS**

2  **D E C I S I O N**

3      **PRESIDING COMMISSIONER SHELTON:**  -- because they

4  just ran out of too much paper.  Okay.

5      **DEPUTY COMMISSIONER SELLWOOD:**  We are back on the

6  record.

7      **PRESIDING COMMISSIONER SHELTON:**  Okay.  We are

8  back here for the fourth Subsequent Parole Consideration

9  Hearing for Kennedy Edwards, CDC number E-54444.

10  Mr. Edwards, everyone has returned to the hearing room

11  that was here during your hearing.  And we have reviewed

12  all the information received.  And we've relied on the

13  following circumstances in concluding that you are not

14  quite yet suitable for parole and would pose an

15  unreasonable risk of danger to society or a threat to

16  public safety.

17      We have two things we're focusing on Mr. Edwards.

18  And I want to let you know that you did an excellent

19  presentation today.  We are giving you a one year denial

20  for two specific reasons.  Obviously there's the

21  commitment offense.  But we have two areas that we want

22  to focus on for you.  One was the considerations of

23  Mr. Dahle.  And one is our own.

24      You have done an excellent program.  You're

25  **KENNEDY EDWARDS      E-54444      DECISION PAGE 1    4/12/07**

1  moving definitely in the right direction.  Do not stop

2  what you are doing.  Continue.  Continue to do as much

3  self-help as you can.  Continue to do your

4  certifications.  Do your work.  But there is one area

5  that we are requesting, and I left it out because I

6  wanted to tell you and your attorney.

7        Obviously today we've noticed a bunch of

8  discrepancies.  There's a real professional word, a

9  bunch of discrepancies between the 2002 psychological

10  evaluation and the 2006 psychological evaluation.  Those

11  will haunt you until we get them fixed.  So we are

12  requesting a new psych eval for you.  Specifically I

13  wrote, please review both 2002 and 2006 psychs, any

14  inconsistencies with regard to diagnosis and

15  dangerousness to the community.

16        That will be done prior to your next hearing.

17  Hopefully that will answer or resolve the differences in

18  those.  And actually, we looked back even further and

19  there's like one says this, another says this and

20  another one says this.  We want to get it cleared up for

21  once and for all for you.

22        **INMATE EDWARDS:**  Okay.

23        **PRESIDING COMMISSIONER SHELTON:**  Secondly, I'm

24  kind of doing this decision backwards, but hey,

25  **KENNEDY EDWARDS      E-54444      DECISION PAGE 2    4/12/07**

1  secondly, we want you to shore up your parole plans.

2  What we are recommending is that you consider living at

3  the New Life Institute for six months.  I think that

4  that program sounded wonderful.  You thought it did.

5  What we would like to see is you put together for the

6  next Parole Panel, a parole package.  You don't need to

7  write this stuff down, because you get a copy of this

8  transcript.

9       Get a letter from the New Life Program indicating

10  that you can live there and do the transition program

11  for six months.  The reason I'm saying that is because

12  of this.  You do not have a job.  You definitely have

13  the skills, the marketable skills.  We're thinking that

14  if you live in a transitional house, you'll get the

15  ongoing counseling that you need.  You'll get the

16  immediate assistance to get employment.  While you're

17  pending that, you have a place to live that doesn't tap

18  your resources.

19       You can't get the question like we gave you today

20  or I did or one of us did, how are you going to, I think

21  I, how are you going to support yourself.  In that gap,

22  are you going to go back to selling drugs to support

23  yourself like you did before.  So let's fill the gap

24  with transitional housing, give you a six month lead for

25  **KENNEDY EDWARDS       E-54444       DECISION PAGE 3    4/12/07**

1    your, you have housing you don't pay for, food you don't

2    pay for, utilities you don't pay for.  You have access

3    to ongoing counseling, support, transportation, medical

4    and most of all, employment.  Does that make sense to

5    you?

6              INMATE EDWARDS:  Yes, it does.

7              PRESIDING COMMISSIONER SHELTON:  So if you put a

8    package together for the next Panel that includes a

9    letter saying you have a place to live, what the

10   services are specifically that they provide, incorporate

11   your resume in the parole plans packet, incorporate your

12   sponsor letter, who is going to sponsor you, where your

13   meetings would be and how you would get there, all in

14   one nice neat little packet we talked about.  Prepare

15   that for the next Panel.  So let me start all over again

16   with this decision.

17             Basically, we're giving you a one year denial for

18   those two issues as well as the issue we can never

19   forget, the commitment offense.  We believe you have

20   been very genuine today.  We have no reason to doubt

21   anything that you said to us.  You were presented well.

22   And I'm going to quote your attorney, you were presented

23   as intelligent and articulate.  And we believe you.  We

24   just want to make sure that the T's are crossed and the

25   **KENNEDY EDWARDS      E-54444      DECISION PAGE 4    4/12/07**

1   I's are dotted.

2        We are not the last stop for a date.  It goes

3   through a review panel.  It goes to the Governor.  So we

4   need to be able to show the Governor that you are going

5   to be doing what you need to do so the community is

6   protected.  It's the biggest issue we deal with is

7   community protection and victim's issues.

8        With regards to that, the commitment offense that

9   we've reviewed and asked questions about including the

10  potential planned murder versus, you know, the two week

11  delay and these witnesses and all that, I think that if

12  Mr. Dahle gives the additional information like he said,

13  it will help clarify some of those issues as well or

14  open them up again as the case may be.

15       I refer to the January 30th, 2007 Board report

16  that indicating on September 14th, '89 you and several

17  others went to the home of Julio Chavez.  And he ended

18  up shot.  This was a drug deal gone bad.  You did not do

19  the shooting.  But it was your actions that precipitated

20  this and you indicated that you were responsible for

21  that.

22       You have no prior record.  That is also

23  advantageous to you.  Just don't do anything like get a

24  115 or a 128.  Your institutional behavior has been

25  **KENNEDY EDWARDS      E-54444      DECISION PAGE 5    4/12/07**

1    excellent.  We commended you already for your

2    disciplinary behavior.  You have one 115.  That was back

3    in '93, 14 years ago.  You only received four 128s, the

4    last in 1999.  And your classification score is 19.  I

5    will enter your positive programming on the behavior, on

6    the record in just a moment.

7        We've discussed and discussed the psychiatric

8    evaluations.  Your last one was done by Dr. Rouse in

9    January of '06.  He had no diagnosis for you on Axis I

10   and II, which we indicated was contrary to what your

11   psychological evaluation done in, by Dr. Walker in 2002

12   was.  You did have a GAF score of 90.  Do you know what

13   GAF means?

14       **INMATE EDWARDS:**  The GAF, no, I have no idea.

15   I've been trying to figure that one out.

16       **PRESIDING COMMISSIONER SHELTON:**  It's called the

17   Global Assessment Functioning.  It's kind of like, I

18   really like Commissioner Sellwood's way of describing

19   it.  It's like an IQ how you would behave in the

20   community.  A hundred is the highest.  In my books, if

21   it was a school grade, it would be an A minus.  That's

22   pretty good.  Okay.  But we've talked about the

23   discrepancies in the psychologicals.  We're concerned

24   about getting a clear picture for once and for all.  So

25   **KENNEDY EDWARDS       E-54444       DECISION PAGE 6    4/12/07**

1   it doesn't keep getting tossed around like a baseball.

2        I think if once you shore up the parole plans

3   like we talked about, you'll be in pretty good shape

4   with those.  It's obvious you have support.  It's

5   obvious that you have the marketable skills to take care

6   of yourself in a variety of areas.  The other thing I

7   was going to ask with regard to that, too, is start

8   sending letters out to Lens Crafters and some of those

9   other places.

10       We're not expecting necessarily an immediate

11  response.  But what I would like you to include as part

12  of your parole package is all the letters that you send

13  out so we can see, and it's like I usually say, I would

14  rather see what you're doing for you than what others

15  are doing for you.  So write out letters anywhere who

16  might be interested in picking you up.  Send a resume to

17  them with your copies of your certificates.  And keep

18  any letters you get back and include it as part of the

19  parole package.

20       I told you about the 3042 notices.  And the LA

21  District Attorney's Office as well as the LAPD are in

22  opposition to your parole at this time.  I do want to

23  put on the record the things that you have achieved.  We

24  were impressed that you went out and got your GED even

25  **KENNEDY EDWARDS      E-54444      DECISION PAGE 7    4/12/07**

1  though you had your high school diploma because you

2  couldn't find your appropriate paperwork.

3      You have accomplished as least, if not more than,

4  12 credits at Compton College.  Again, your disciplinary

5  record is very, very good, excellent.  You have three

6  vocations, carpenter, body and fender and your optical

7  lens lab.  I always am thrilled when people participate

8  in the lens lab programs because everybody wears

9  glasses.  And if you do a good job, those certificates

10  are not that easy to come by that you got.  Don't ever

11  let it expire.

12      You have participated in the offender employer

13  continuum workshop.  That will be a resource for you as

14  well.  You have participated nonstop in AA and NA and in

15  fact, have received a chrono dated January of this year

16  complimenting you on how you've grown through your

17  participation and that in fact, you are what

18  rehabilitation is all about.  So you should be proud of

19  that one.

20      What we would like to see you do during the

21  course of this next year is to continue in your self-

22  help as much as you can.  That means beyond AA and NA,

23  if you can do anything else.  I noted somewhere that you

24  were in the VORG program.  Are you still in the VORG

25  **KENNEDY EDWARDS    E-54444    DECISION PAGE 8    4/12/07**

88

1    program?

2         **INMATE EDWARDS:**  Yes, I am.

3         **PRESIDING COMMISSIONER SHELTON:**  Okay.  That we

4    didn't get on the record today.  And I think it's

5    considered one of the, if not the best program in this

6    institution.  So be sure that gets on record next time

7    as well.  So continue in your self-help.  Continue to be

8    the role model you've become.  Develop your parole plans

9    package.  And we'll get that psychological evaluation

10   done with you.  Commissioner?

11        **DEPUTY COMMISSIONER SELLWOOD:**  Just two things,

12   sir, the Commissioner has been very on point with the

13   things that you need to be concerned with.  So please,

14   when you get a copy of the transcript, read it

15   carefully, go over it, mark it up, look at the things

16   that you're being asked to do.  In that vein, the

17   Commissioner has talked about your parole package.  I

18   want you understand that we do understand that you have

19   put together a very fine parole package.  You've brought

20   it with you.  And we have seen it.

21        We are asking you for a subsection to that

22   independent that you could also hand to the next Panel,

23   parole plans.  We don't want you to think we didn't

24   understand that.  We did understand that.  But we're

25   **KENNEDY EDWARDS        E-54444        DECISION PAGE 9    4/12/07**

1  looking at a parole plans package that really lets us or

2  the next Panel know this is the transitional housing,

3  yes, they'll accept him, right down the line for all

4  those things that have been mentioned.  Okay.

5      Secondly, this is going to be a real test of your

6  ability to control your own future to some extent.  By

7  that I mean the frailties of the '02 psychological

8  evaluation or the single frailty was some startling

9  actuarials.  Actuarials usually mean statistics.  And

10  you were run through a test.

11      And that test said that guys who score like you

12  scored are apt to commit a violent crime within the next

13  10 years, a 50-50 proposition.  That's a scary figure.

14  That's a figure that causes us to think, wow, we're

15  supposed to talk about unreasonable risk to public

16  safety.  And this thing talks about a 50-50 proposition

17  of a violent offense by you within 10 years.

18      So when you do the next psych that we're going to

19  order for you, you need to have reviewed the '98 psych,

20  the '02 psych, the '06 psych.  Look at those and you

21  need to help the doctor understand that there has to be

22  some resolution to this question of risk.  Look the '02

23  said, look at these numbers that were cited.  The

24  problem was the numbers were cited, but no conclusion to

25  **KENNEDY EDWARDS      E-54444      DECISION PAGE 10   4/12/07**

1  help us understand the numbers and put them in

2  perspective.  So the numbers just hang out there.

3      So you need to control your own fate by

4  understanding those reports, reading them and saying

5  they were concerned about these numbers and no

6  conclusion and no lack of clarity offered to clean up

7  the last one from the most recent.  So the next psych

8  needs to put them all perspective and let us understand

9  your risk within the community and talk about all those

10  things.

11      And you need to help the doctor understand that

12  is the doctor's task, because if it doesn't get done,

13  those numbers are going to hang out there, be they four

14  years old, ten years old, fifteen years old, they're not

15  going to be good for you.  So understand it, read it and

16  be prepared to help the doctor do for you what needs to

17  be done.  Thank you, Commissioner.

18      **PRESIDING COMMISSIONER SHELTON:**  You did very,

19  very well today, sir.  You should be proud of yourself.

20  Good luck.  That concludes this hearing at 11:30 a.m.

21      **INMATE EDWARDS:**  And thank you guys for the

22  advice, appreciate it, Mr. Sellwood and you too,

23  Ms. Shelton.

24      **PRESIDING COMMISSIONER SHELTON:**  Thank you.  Have

25  **KENNEDY EDWARDS        E-54444        DECISION PAGE 11   4/12/07**

1  a good day, sir.

2          **INMATE EDWARDS:**  Thank you.

3          **DEPUTY COMMISSIONER SELLWOOD:**  Good luck.

4                          --oOo--

21  PAROLE DENIED ONE YEAR

22  THIS DECISION WILL BE FINAL ON:_____AUG 1 0 2007_____

23  YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

24  DATE, THE DECISION IS MODIFIED.

25  KENNEDY EDWARDS      E-54444      DECISION PAGE 12   4/12/07

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, Sarah M. Collins, as the Official Transcriber,

hereby certify that the attached proceedings:

| | |
|---|---|
| In the matter of the Life )<br>Term Parole Consideration )<br>Hearing of: )<br>  )<br>KENNEDY EDWARDS )<br>_____ ) | CDC Number:   E-54444 |

CALIFORNIA STATE PRISON, SOLANO

VACAVILLE, CALIFORNIA

APRIL 12, 2007

8:55 A.M.

were held as herein appears.  Further, this transcript

is a true, complete and accurate record, to the best of

my ability, of the recorded material provided for

transcription.


_Sarah M. Collins_
Sarah M. Collins
May 27, 2007
Capitol Electronic Reporting

# I N  T H E  M A T T E R

## O F :

### K E N N E D Y  E D W A R D S

CDC# E-54444

## S U I T A B I L I T Y  A N D  P A R O L E

## R E L E A S E  P L A N S...

T A B L E   O F   C O N T E N T S                    SECTION:

PRE-ACADEMIC & SOCIAL HISTORY ..............................Sec. I

INSTITUTIONAL ACADEMICS ................................... Sec. II

INSTITUTIONAL VOCATIONS ................................... Sec. III

SELF-HELP PROGRAMS ....................................... Sec. IV

PSYCHOLOGICAL REPORTS .................................... Sec. V

DISCIPLINARY ............................................. Sec. VI

EMPLOYMENT LETTERS AND SUPPORT ...........................Sec. VII

SUPPORT LETTERS .......................................... Sec. VIII

PAROLE AND RELEASE PLANS .................................Sec. IX

CONCLUSION: .............................................. Sec. X

PRE-ACADEMIC

INSTITUTIONAL ACADEMICS

& INSTITUTIONAL VOCATIONAL

SEC ............ I,II & III

# Certificate of Recognition

## Awarded to

### KENNEDY EDWARDS

*In recognition of*

## MOST IMPROVEMENT IN READING ABILITY

*Dated this* 8th *day of* June 19 78

*Presented by:* Richard N. Whiteside, Principal

## COVENANT LUTHERAN SCHOOL

CODE 4322-05. BROADMAN SUPPLIES, NASHVILLE, TENN. PRINTED IN U.S.A.

Compton Unified School District

*Certificate of Promotion*

from

*Vanguard Junior High School*

THIS certifies that: **Kennedy Edwarts**
has completed the course of study prescribed by the board
of trustees of this district for the Junior High School which
includes grades seven, eight, and nine.

Given at Compton, California, this fifteenth day of June,
nineteen hundred seventy-nine.

_____
Principal

_____
Superintendent

# Certificate of Completion

## English Department

### Alain Leroy Locke High School

This is to certify that

Mr. *Kennedy Edwards*

has successfully completed all
requirements and examinations
for the English Department's

## Intermediate Grammar Course

June 12, 1980

Date

*M. P. Holmes*

English Teacher

Counselor

# Certificate of Appreciation

## WE HEREBY EXPRESS
## OUR SINCERE APPRECIATION TO

**Kennedy Edwards**

for _Participation in First Annual Senior Career Day_

awarded at _South Central Los Angeles Service Center_

this ___4th___ day of ___June___ 19 _82_

_Yvonne E. Clark_
SIGNED
Employment
Counselor

_Anita L. Banks_
SIGNED
Manager

VA 214 © COPYRIGHT 1977, HAYES SCHOOL PUBLISHING CO., INC., WILKINSBURG, PA.



# Otay Mesa Adult School

## Certificate of Participation

### This Is To Certify That

KENNEDY F. EDWARDS

Achieved the performance levels acknowledged on the reverse side for the program of

## Structural Air Frame

And is therefore recognized

This 14th Day of OCTOBER , 19 92

DIRECTOR OF INSTRUCTION

SUPERVISOR OF EDUCATION PROGRAM

SUPERVISOR OF VOCATIONAL INSTRUCTION

January 18, 1995

# State of California

# High School Equivalency Certificate

This is to certify that

**KENNEDY F. EDWARDS**

has met the standards established by the California State Board of Education for successful completion of tests of General Educational Development and is therefore entitled to this high school equivalency certificate.

President of the California State Board of Education

Acting State Superintendent of Public Instruction

# Otay Mesa Adult School

## Certificate of Completion

### This Is To Certify That

Eduardo, k

Has Successfully Completed

### Unrational Auto Body & Fender Repair

Presented This 9th Day Of August, 19 95



INSTRUCTOR

SUPERVISOR OF
EDUCATION PROGRAMS

SUPERVISOR OF
VOCATIONAL INSTRUCTION

CSP Solano P.O.BOX 4000,    Kennedy Edwards, E-54444
BUILDING 13-A-2-LOW
Vacaville California, 95696-
4000

# To: PERSONEL DEPARTMENT
# RESUME OF
#   KENNEDY EDWARDS

**Objective**          I am interested in a long term career in the Auto Body industry.

**Experience**
- My Auto Body & Panel Replacement experience was acquired in the Donovan Vocational Training School. I have 2 years experience
- 1998–present,      Vaca Valley Adult School and Prison Industry Authority Optical Laboratory.
- In addition to my Auto body experience, I worked at the Vaca Valley Adult School/Prison Industry Authority Eyewear manufacturing laboratory in a production setting producing 400 to 600 eyeglasses per day. I also worked for the following businesses in the Los Angles Area. L.A. Times news paper as a stuffing supervisor in Los Angles California,  Well Fargo Bank, Los Angles Ca. as a Security Guard, Thrify Drug Store Warehouse, Los Angles California as an order filler, P.I.A. Textiles special skill machinists and operator.
-

**Education**
- 1992 General Education Diploma from .Otay Mesa Adult School, I have trade school experience in Carpentry, Vaca Valley Adult School Certified, 2000  Machine Shop 1993, Auto Body, Donovan Vocational Training School Certified 1995, Vaca Valley,  Eyewear Manufacturing, Vaca Valley Adult School Certified November-19-2001,   American Board of Opticianry Certified November 2002, Federal Emergency Management Agency Certified in 2004
-

**Interests**          Long Term Auto Body Repair and Sports.

**References**          Upon Request

February 14, 2005

**PERSONAL DEPARTMENT**

I am interested in a full time career position with a company that I can grow with where my individual skills can be fully utilized. I I am available full time as well as weekends and overtime. I am an efficient and dedicated hard worker who pays close attention to product quality. I am always willing to learn and help others learn for the sake of productivity and quality. I am always willing to take on any task that is assigned with personal safety as the top priority. Additionally I work well as a team player and consider good customer relations as a must for any business. I have listed my experience and auto body and fender skills on the enclosed resume...I am seeking a letter of interest for a future potential job

Sincerely,

Kennedy Edwards

Kenneuy Edwards    (323) 773-0808

## Position Wanted:

### AUTOBODY PREP/BODY WORK

**3 Years Experience**

### Skills:

| | |
|---|---|
| Body Work & Panel Replacement | Prep Work |
| Detail Work | D.A. Sander |
| Block Sander | Electric & Gas Welding |
| Replacement of Trim & Glass | Air Tools |

I am looking for a full time position with a company that I can grow with, where my individual skills can be fully utilized. I am available for part-time, weekends, and overtime.

I am an efficient and dedicated hard worker who pays close attention to product quality. Always willing to learn and take on any task that is assigned with personal safety as the top priority. Additionally I work well as a team player and consider good customer relations as a must for any business.




# VacaValley Adult School

## Vacaville, California

### Letter of Recognition

To

# KENNEDY EDWARDS

On behalf of the VacaValley Adult School at Solano, it is with great pleasure that we present you with this

### Certificate of Achievement

In Vocational Carpentry

Let all who see this know and recognize the tremendous effort put forth by you in achieving your goal.

### Congratulations and well done!

Supervisor of Education Programs

Date: 1-5-2000

## Position Wanted:

**CARPENTER**

**3 Years Experience**

Rough Framing
Finisher
Framing Finisher
Custom Home Finisher

### Skills:

Residential Building
Can Draw Blueprints
Roofing
Dry Wall

I am looking for a full time position with a company that I can grow with, where my individual skills can be fully utilized. I am available for part-time, weekends, and overtime.

I am an efficient and dedicated hard worker who pays close attention to product quality. Always willing to learn and take on any task that is assigned with personal safety as the top priority. Additionally I work well as a team player and consider good customer relations as a must for any business.



# Safety Committee Member

be it known that

**KENNEDY EDWARDS**

has been appointed a Member of the

**VOC. CARPENTRY**

Safety Committee

which promotes accident prevention by means of education, inspection, evaluation and example



# Certificate of Completion

is

Presented to

*Kenny Edwards*

On this date of

*30 March 2001*

For work in the following Programs

*PL470: Math And Language Arts Curriculum*

Supervisor of Education

Instructor/Teacher



# Certificate of Completion

is

Presented to

*Kenny Edwards*

On this date of

*15-May-02*

For work in the following Programs

*Plato: Substance Abuse Curriculum*



_____
Supervisor of Education

_____
Instructor/Teacher

# Certificate of Completion

is

Presented to

*Kenny Edwards*

On this date of

*15-May-02*

For work in the following Programs

*Plas. Job And Life Skills Curriculum*



_____
Supervisor of Education

_____
Instructor/Teacher



CSP Solano P.O.BOX 4000,    Kennedy Edwards, E-54444
BUILDING 13-A-2-LOW
Vacaville California, 95696-
4000

# To: PERSONEL DEPARTMENT

# RESUME OF

# KENNEDY EDWARDS

---

**Objective**

I am interested in a long term career in the Optical field using my production skills and American Board of Opticianry Certification.

**Experience**

- My Optical training was acquired in the Vaca Valley Adult School in an environment of a production laboratory, producing from 400 to 600 prescription eyeglasses per day. I acquired lens edging, insertion and final inspection skills as well as achieving American Board of Opticianry certification. I also acquired lens surfacing skills.

- 1998–present,        Vaca Valley Adult School and Prison Industry Authority Optical Laboratory.

- I also worked for the following businesses in the Los Angles Area. L.A. Times news paper as a stuffing supervisor in Los Angles California, Well Fargo Bank, Los Angles Ca. as a Security Guard, Thrify Drug Store Warehouse, Los Angles California as an order filler, P.I.A. Textiles special skill machinists and operator.

- 

**Education**

- 1992 General Education Diploma from .Otay Mesa Adult School, I have trade school experience in Carpentry, Vaca Valley Adult School Certified, 2000 Machine Shop 1993, Auto Body, Donovan Vocational Training School Certified 1995, Vaca Valley, Eyewear Manufacturing, Vaca Valley Adult School Certified November-19-2001, American Board of Opticianry Certified November 2002, Federal Emergency Management Agency Certified in 2004

- 

- 

**Interests**

Long Term Optical Career and Sports.

**References**

Mike Garozzo, Vocational Instructor Eyewear Manufacturing,
CSP Solano 1-707-451-0182 X 6623
Nick Stanbery, Industrial Supervisor CSP Solano 707-451-0182X6627

February 14, 2005

**ERSONAL DEPARTMENT**

I am interested in a full time career position with a company that I can grow with where my individual skills can be fully utilized. I I am available full time as well as weekends and overtime. I am an efficient and dedicated hard worker who pays close attention to product quality. I am always willing to learn and help others learn for the sake of productivity and quality. I am always willing to take on any task that is assigned with personal safety as the top priority. Additionally I work well as a team player and consider good customer relations as a must for any business.

My most recent experience was working in a high production setting producing approximately 400 to 600 prescription eyeglasses per day. I was responsible for lens edging, lens insertion, lens tinting, final inspection and shipping...I completed a formal instruction course consisting of eyewear manufacturing including the study of Anatomy & Physiology, Lens Surfacing, Lens Finishing, of prescription lenses. In addition I am American Board of Opticianry Certified providing my ability to dispense eyeglasses without supervision. I thoroughly enjoy Optical work and take great pride in all facets of the industry. I am seeking a letter of interest for a future potential jobs. Please see my enclosed resume.

Sincerely,

Kennedy Edwards

# Vaca Valley Adult School

Vacaville, California

## *Vocational Education*

### COMPLETION OF CERTIFICATION UNIT

THIS IS TO CERTIFY THAT

K E N N E D Y   E D W A R D S

HAS DEMONSTRATED ACHIEVEMENT IN

V 0 5 . 0 1 . 0 1 & 0 2

ORIENTATION AND SHOP SAFETY



WESTERN ASSOCIATION OF SCHOOLS AND COLLEGES

Accrediting Commission for Schools

Accreditation #4890085999

LOG# 8019E54444

SUPERVISOR OF VOCATIONAL INSTRUCTION

VOCATIONAL INSTRUCTOR

JUNE 26, 2001

DATE







# Vaca Valley Adult School

### Vacaville, California

## Vocational Education

### COMPLETION OF CERTIFICATION UNIT



THIS IS TO CERTIFY THAT

KENNEDY EDWARDS

HAS DEMONSTRATED ACHIEVEMENT IN

V 0 5 . 0 1 . 0 3

I N F E C T I O N   C O N T R O L

Accreditation #4899085999

8021E54444

SUPERVISOR OF VOCATIONAL INSTRUCTION

LOG=

VOCATIONAL INSTRUCTOR

JUNE 26, 2001

DATE









# Vaca Valley Adult School

Vacaville, California

## *Vocational Education*

### COMPLETION OF CERTIFICATION UNIT

THIS IS TO CERTIFY THAT

KENNEDY EDWARDS

HAS DEMONSTRATED ACHIEVEMENT IN

ANATOMY & PHYSIOLOGY

VO5.01.05



Accreditation #4899085999

SUPERVISOR OF VOCATIONAL INSTRUCTION

LOG= 8020E54444

VOCATIONAL INSTRUCTOR

JULY 23, 2001

DATE









# Vaca Valley Adult School
## Vacaville, California

## *Vocational Education*
### COMPLETION OF CERTIFICATION UNIT

THIS IS TO CERTIFY THAT

KENNEDY EDWARDS

HAS DEMONSTRATED ACHIEVEMENT IN

OPTICAL THEORIES

V05.01.09

SUPERVISOR OF VOCATIONAL INSTRUCTION

VOCATIONAL INSTRUCTOR

SEPTEMBER 5, 2001

DATE

Accreditation #489085999

LOG= 8022E54444





## OPTICAL LAB
## 1 Year Experience

*Position Wanted:*

**Skills:**

| | |
|---|---|
| Dispensing | Running Cylinder Machines |
| Lensometer, Alloy Machine | Edgers, Marker Blocker |
| Generators SL2 & V95 | Reclaim Tank |
| Screening RX's & Fitting Frames | Lenses for Patients |

I am looking for a full time position with a company that I can grow with, where my individual skills can be fully utilized. I am available for part-time, weekends, and overtime.

I am an efficient and dedicated hard worker who pays close attention to product quality. Always willing to learn and take on any task that is assigned with personal safety as the top priority. Additionally I work well as a team player and consider good customer relations as a must for any business.

# Vaca Valley Adult School

Vacaville, California

*Vocational Education*

## CERTIFICATE OF COMPLETION

THIS IS TO CERTIFY THAT

KENNEDY EDWARDS

HAS DEMONSTRATED ACHIEVEMENT IN

EYEWEAR MANUFACTURING

V05.01.01-22

Accreditation #48990859

WESTERN ASSOCIATION OF SCHOOLS AND COLLEGES

Accrediting Commission for Schools

LOG# 9652E54444

SUPERVISOR OF VOCATIONAL INSTRUCTION

VOCATIONAL INSTRUCTOR

NOVEMBER 19, 2001

DATE



# Vaca Valley Adult School

## Certificate of Recognition

*Vacaville, California*

To

**KENNEDY EDWARDS**

On Behalf of the Vaca Valley Adult School at Solano, it is with great pleasure that we present you with this

**Completion of
CERTIFIED OPTICIAN**

Let all who see this know and recognize the tremendous effort put forth by you in achieving your goal.

_____
Supervisor of Correctional Education Programs

_____
Date

# OPTICAL TRAINING INSTITUTE

Hereby Awards

## Kennedy F. Edwards

This

## CERTIFICATE

For Successful Completion Of The
Exam Preparation Home Study Course
For Spectacle Dispensers



OTI

Spring, 2004

Director

Presented This
Fourth Day of
August, 2004

# The American Board of Opticianry

*Having demonstrated competency and knowledge by passing the*

*National Opticianry Competency Examination*

## Kennedy F. Edwards, ABOC

*is designated a*

# Certified Optician

*Certification effective 2002*

*May be renewed upon demonstrating*

*that the Continuing Education Requirement*

*of the A B O has been completed.*

*Certificate*

*Expires*

*December 31,*

*2005*

R. Emil Hagman

**Chairman**





Certification Program
approved by the National Commission
for Certifying Agencies

*Certificate Number*

## 159354

# The American Board of Opticianry

*Having demonstrated competency and knowledge by passing the National Opticianry Competency Examination*

## Kennedy F. Edwards, ABOC

*is designated a*

# Certified Optician

*Certification effective 2002*

*May be renewed upon demonstrating that the Continuing Education Requirement of the A B O has been completed.*



R. Emil Hagman
*Chairman*



Certification Program approved by the National Commission for Certifying Agencies

*Certificate Number*
## 159354



# AMERICAN BOARD OF OPTICIANRY
# NATIONAL CONTACT LENS EXAMINERS

6506 Loisdale Road, Suite 209
Springfield, Virginia 22150
703-719-5800 • FAX 703-719-9144
800-296-1379
Web Address: www.abo-ncle.org

Dear Certified Optician/Contact Lens Fitter:

Congratulations on maintaining your certification! Enclosed is your recertification seal(s) to place over the expired seal or expiration date on your current certificate(s). This seal will validate your certificate for three years from your current expiration date. You are entitled to use the established designations as part of your signature on letterhead, business cards, etc: ABOC (American Board of Opticianry Certified) if you are ABO and/or NCLC (National Contact Lens Certified) if you are NCLC certified.

By obtaining the required continuing education to renew, you have shown your commitment to your career. Are you ready to advance to the higher level of certification through the *Advanced Certification* and then on to the *Masters in Ophthalmic Optics program?* Contact the office for details at (800) 296-1379 or look us up on the web at www.abo-ncle.org.

You will receive an Activity Report in June, which will show your new expiration date and newly submitted C.E. credits. To be recertified again, you will need to meet the continuing education requirements as well as the renewal fee(s) before the new expiration date. You may submit valid CECs at any time during your next three-year certification period. For your reference, a Certification Renewal Fact Sheet and a list of Providers of Continuing Education are also enclosed. **Renewal fees are $65 for ABO and $65 for NCLE.**

Be advised that Disciplinary Guidelines exist for opticians certified by ABO or NCLE. Copies are available upon request or on our web site. Violation of any part of the *Guidelines* could result in suspension or revocation of certification.

**Continue to display your certificate proudly...let your customers and peers see your credentials.**

Sincerely,

Larry E. Harper
ABO Chairman

Sincerely,

Joseph S. Thoma
NCLE Chairman



# AMERICAN BOARD OF OPTICIANRY
# NATIONAL CONTACT LENS EXAMINERS



6506 Loisdale Road, Suite 209
Springfield, Virginia 22150
703-719-5800 • FAX 703-719-9144
800-296-1379
Web Address: www.abo-ncle.org

**Kennedy F. Edwards, ABOC (159354)**
E-54444 13-A-2L
PO Box 4000
Vacaville, CA 95696-4000

Congratulations!  You have finished the requirements necessary to
renew your ABO certification.  Enclosed is your seal and relevant
information about your certification.

Your Certification is now good thru:          **December 31, 2008**

December 12, 2005



# AMERICAN BOARD OF OPTICIANRY
# NATIONAL CONTACT LENS EXAMINERS



6506 Loisdale Road, Suite 209
Springfield, Virginia 22150
703-719-5800 • FAX 703-719-9144
800-296-1379
Web Address: www.abo-ncle.org

Dear Certified Optician/Contact Lens Fitter:

Congratulations on maintaining your certification! Enclosed is your recertification seal(s) to place over the expired seal or expiration date on your current certificate(s). This seal will validate your certificate for three years from your current expiration date. You are entitled to use the established designations as part of your signature on letterhead, business cards, etc; ABOC (American Board of Opticianry Certified) if you are ABO and/or NCLC (National Contact Lens Certified) if you are NCLC certified.

By obtaining the required continuing education to renew, you have shown your commitment to your career. Are you ready to advance to the higher level of certification through the *Advanced Certification* and then on to the *Masters in Ophthalmic Optics* program? Contact the office for details at (800) 296-1379 or look us up on the web at www.abo-ncle.org.

You will receive an Activity Report in June, which will show your new expiration date and newly submitted C.E. credits. To be recertified again, you will need to meet the continuing education requirements as well as the renewal fee(s) before the new expiration date. You may submit valid CECs at any time during your next three-year certification period. For your reference, a Certification Renewal Fact Sheet and a list of Providers of Continuing Education are also enclosed. **Renewal fees are $65 for ABO and $65 for NCLE.**

Be advised that Disciplinary Guidelines exist for opticians certified by ABO or NCLE. Copies are available upon request or on our web site. Violation of any part of the *Guidelines* could result in suspension or revocation of certification.

**Continue to display your certificate proudly...let your customers and peers see your credentials.**

Sincerely,                                              Sincerely,

Larry E. Harper                                        Joseph S. Thoma
ABO Chairman                                           NCLE Chairman

P.S. We cannot keep you informed if we cannot reach you. Please notify this office each time you have a change of name or mailing address. Your certification may depend on it!



# EMERGENCY MANAGEMENT INSTITUTE

*Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

**KENNEDY F. EDWARDS**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the Independent study course:

**IS-001**

**Emergency Program Manager**
**An Orientation to the Position**

Issued this 08th Day of March, 2004

1.0 CEU

*Stephen G. Sharro*
**Stephen G. Sharro**
*Director, Training Division*

**UNITED STATES FIRE ADMINISTRATION**



# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

### KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis; through continued professional development and completion of the independent study course:

**IS-002**

**Emergency Preparedness, USA**

*Issued this 01st Day of December, 2003*

1.0 CEU

Stephen G. Sharro
*Director, Training Division*

**UNITED STATES FIRE ADMINISTRATION**



# EMERGENCY MANAGEMENT INSTITUTE

*Certificate of Achievement*

This Certificate of Achievement is to acknowledge that

## KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-003**
**Radiological Emergency Management**

Issued this 29th Day of December, 2003

**Stephen G. Sharro**
*Director, Training Division*

**UNITED STATES FIRE ADMINISTRATION**



# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

This Certificate of Achievement is to acknowledge that

### KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-005**

**Hazardous Materials: A Citizen's Orientation**

Issued this 10th Day of March, 2004

1.0 CEU

Stephen G. Sharro
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION



# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

### KENNEDY EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**A Citizen's Guide to Disaster Assistance**

**IS-007**

*Issued this 24th Day of June, 2004*

**Stephen G. Sharro**
*Director, Training Division*

**UNITED STATES FIRE ADMINISTRATION**



# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

**KENNEDY F. EDWARDS**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-008**
1.0 CEU

**Building for the Earthquakes of Tomorrow**

Issued this 25th Day of August, 2003

*Stephen G. Sharro*
**Stephen G. Sharro**
*Director, Training Division*

**UNITED STATES FIRE ADMINISTRATION**



# EMERGENCY MANAGEMENT INSTITUTE

*Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

## KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS 010**

**Animals in Disaster Awareness and Preparedness**

*Issued this 15th Day of September, 2003*

1.0 CEU

Stephen G. Sharro
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION

# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

### KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-011**

**Animals in Disaster Community Planning**

*Issued this 06th Day of October, 2003*

.3 .30 CEUs



*Stephen G. Sharro*
*Director, Training Division*

**UNITED STATES FIRE ADMINISTRATION**



# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

**KENNEDY F. EDWARDS**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-111**
**Livestock in Disaster**
1.0 CEU

Issued this 08th Day of March, 2004

**Stephen G. Sharro**
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION

# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

### KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-139**
**Exercise Design**

*Issued this 26th Day of August, 2004*
1.5 CEU's

**Stephen G. Sharro**
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION

# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

### KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-230**
**Principles of Emergency Management**

*Issued this 26th Day of August, 2004*
1.0 CEU

Stephen G. Sharro
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION

# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

This Certificate of Achievement is to acknowledge that

### KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-235**
**Emergency Planning**

Issued this 26th Day of August, 2004
1.0 CEU

Stephen G. Sharro
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION

# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

### KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-240**

**Leadership & Influence**

Issued this 24th Day of June, 2004



Stephen G. Sharro
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION



# EMERGENCY MANAGEMENT INSTITUTE

*Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

**KENNEDY F. EDWARDS**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-241**

**Decision Making & Problem Solving**

(0.8CEU)

Issued this 08th Day of March, 2004

Stephen G. Sharro
*Director, Training Division*

**UNITED STATES FIRE ADMINISTRATION**



# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

**KENNEDY F. EDWARDS**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-242**

**Effective Communication**

Issued this 9th Day of March, 2004

0.8 CEU

*signature*

**Stephen G. Sharro**
*Director, Training Division*

**UNITED STATES FIRE ADMINISTRATION**



# EMERGENCY MANAGEMENT INSTITUTE

*Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

## KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-244**

**Developing and Managing Volunteers**

*Issued this 21st Day of April, 2004*

**Stephen G. Sharro**
*Director, Training Division*

**UNITED STATES FIRE ADMINISTRATION**

# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

This Certificate of Achievement is to acknowledge that

### KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**Retrofitting Flood-Prone Residential Structures**

IS-279
(1.0 CEU)

Issued this 21st Day of April, 2004



**Stephen G. Sharro**
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION



# EMERGENCY MANAGEMENT INSTITUTE

*Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

## KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

### IS-288
### Role of Voluntary Agencies in Emergency Mgmt

.30CEU

Issued this 1st Day of April, 2004

Stephen G. Sharro
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION



# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

**KENNEDY F. EDWARDS**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-301**
**Radiological Emergency Response**

*Issued this 01st Day of April, 2004*
(.1CEU)

Stephen G. Sharro
*Director, Training Division*

**UNITED STATES FIRE ADMINISTRATION**

Case 4:08-cv-02247-SBA    Document 134    Filed 02/09/2009    Page 20 of 61

# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

**KENNETH EDWARDS**

Has reaffirmed a dedication to serve in times of crisis, through continued professional development and completion of the independent study course:

**IS-346**

**Hazardous Materials for Medical Personnel**

Issued this *17th Day of February, 2004*

*(.3CEU)*



Stephen G. Sharro
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION

# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

**KENNEDY F. EDWARDS**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-386**

**Introduction to Residential Coastal Construction**

Issued this 21st Day of April, 2004
.4 CEUs



Stephen G. Sharro
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION

# EMERGENCY MANAGEMENT INSTITUTE

## Certificate of Achievement

*This Certificate of Achievement is to acknowledge that*

### KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

### IS-393
### Introduction to Mitigation

*Issued this 26th Day of August, 2004*
1.0 CEU

**Stephen G. Sharro**
*Director, Training Division*

UNITED STATES FIRE ADMINISTRATION

# EMERGENCY MANAGEMENT INSTITUTE

*Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

**KENNEDY F. EDWARDS**

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-394**
**Mitigation for Homeowners**

*Issued this 26th Day of August, 2004*
1.0 CEU

Stephen G. Sharro
Director, Training Division

UNITED STATES FIRE ADMINISTRATION

# EMERGENCY MANAGEMENT INSTITUTE

## *Certificate of Achievement*

*This Certificate of Achievement is to acknowledge that*

### KENNEDY F. EDWARDS

Has reaffirmed a dedication to serve in times of crisis through continued professional development and completion of the independent study course:

**IS-513**

(1.0 CEU)

### The Professional in Emergency Management

*Issued this 01st Day of April, 2004*



**Stephen G. Sharro**
*Director, Training Division*

**UNITED STATES FIRE ADMINISTRATION**

# Emergency Management Institute



## FEMA

### KENNEDY F. EDWARDS

has reaffirmed through completion of the Emergency Management Institute's Professional Development Series a commitment to Standards of Excellence in Emergency Management.

## Certificate of Achievement

On this Day, 31 August 2004

Superi   ndent

The Electronics Technician Association. International

800-288-3824/765-653-8262/4301/5592 765-653-4287fax
http://www.etainternational.org   eta@eta-i.org
President. Richard L. Glass, CETsr
Vice President, Teresa Maher, CSS

Chairman
Randal Reusser, CETsr, MBA
6317 50th St
Kenosha, WI 53144
262-654-1756
randver@netzero.com
Vice Chairman
Glen Wolfe, CET
88 Royce Dr
Bloomingdale IL 60108
947-452-3413
gw1966@hotmail.com
Secretary
Tom Janca, CETsr
6229 S. Kramena
Greenwood Village, CO 80111
720-200-0784
tranca@ucenl.com
Treasurer
Ben Longwood, CET
164 McCormick Blvd.
Newark, DE 19702
302-455-9445
rayor@aol.com
Comm Div Chair
Robin Okerberg, CETsr
2016 S Fremont Crest Ave
Syracuse, UT 84075
901-776-3767
rlocker1@juno.com
Comm Div S/T
John Baldwin, CETsr
327 SW 4th Ave
Faribault, MN 55021
507-389-7369
jbaldwin@mycleanwave.net
Educ Div Chair
Paul Yost, CET
10509 Timberwood Cir, Ste 100
Louisville, KY 40223
502-327-7424
ptyz@aol.com
Educ Div S/T
William Sutton, CET
3100 Masthead NE
Albuquerque, NM 87109
505-828-1114
bcsutton@it-tech.edu
Cert Tech Div Chair
Khalid Taha, CETsr
4705 Cox Rd
Glen, VA 23060
14-0100
jtacca.edu
Cert Div S/T
Rick Bailey, CET
1700 Scanlan Dr
Rogan IL 60123
547-214-7239
rbailey@elgin.edu
Shop Div Chair
Jim Fellows, CET
2949 Erie Blvd. E
Syracuse NY 13224
315-445-3314
jfellows@jvandradio.com
Shop Div S/T
Ernest Smith, CETma
2165 Grants Mill Rd
Palatine, SC 29596
803-537-7880
ernest2165@aol.com
WebMaster
Chris Courson, CET
7109 N 19th St
Tampa, FL 33610
313-238-5279
chris@chrisbol.com
Dir. Chap Relations
Thomas Walker, CETsr
10258 Technology Dr
Knoxville, TN 37932
865-671-2600
twalker@et-tech.edu
Cabling Chair
Robert Steinmetz, Jr., CETma
1047 Frances Place
Goodview, VA 24095
540-890-4439
bsteinme@verizon.net
Cabling Div S/T
Sandra Henricks, FOI
3801 Campus Drive
Waco, TX 76705
254-867-2903
sandra.henricks@tstc.edu
SDA Chairman
John Zielinski, CETma
167 Orchard Pl Apt #1
Lackawanna NY 14218-1739
716-668-6600
zielinski@at.net
SDA Vice Chairman
Pat Oberlander
103 Bloat Ct
East Peoria IL 61611
309-694-0389
pro.enterprises@starband.net
SDA Sec.
Michael King, CSI
and Ct
Junction, CO 81503-2238
-1118
-1119 fax
service@qwest.net
SDA Treas.
Jerry Henson
413 Poke #59
Mena, AR 71953
379-336-9090

Monday, August 22, 2005

Kennedy F. Edwards, CSS
2100 Peabody Rd
Vacaville, California  95687

Dear Kennedy F.,

Congratulations on passing the Electronics Technicians Association exam(s)!  You have now been registered as a CSS.

Your name will be published in the next issue of ETA®'s "High-Tech News" journal.  We urge you to include the initials of your new title, CSS, behind your name-it means something.  By becoming ETA® certified, you have raised the level of professionalism one more notch.  Thank you for your contribution to the electronics industry.  We would also like to encourage you to become a member of our professional trade association.  To accept a one-year renewable membership, simply fill out the enclosed brochure and return with your payment to ETA®.

Regarding the certification examination itself, ETA® has an exam advisory committee of top electronics professionals who continually monitor exam content, and the certification program itself.  We encourage your support in helping to mold the program.  Any suggestions you would like to submit in the areas of mix, wording, context or subject matter would add to the comprehensiveness of this exam.  We welcome your feedback.

To make comments on one or more item, just jot them down and send the to the ETA® office in Greencastle at the address at the top of this page.

Again-Congratulations!

Tests: CSS104 80%                    Assigned CSS number: CSSCA677

Sincerely,

Richard L. Glass, CETsr
President





**Date of Issue**
August 22,
2005

# Certified Customer Service Specialist

## Kennedy F. Edwards - CSSCA677
Vacaville, California

has successfully completed the technical examinations and requirements to be universally recognized for competency, ability, and knowledge as a Certified Customer Service Specialist. To be recognized for this honor, practicing technical personnel must pass examinations in product technology understanding and customer-relations decision-making skills with at least a 75% score. They also must accept the CSS Code of Conduct. Only well trained technicians with 'people skills' are able to accomplish this feat. The Electronics Technicians Association takes great pride in presenting this official recognition to the above named expert Customer Service Specialist. His/her name has been published in the High Tech News journal, imbedded in the CSS permanent database, and is available for recognition by officials of the industry. This individual may display the CSS identification items or advertise his level of accomplishment as a technical specialist. Congratulations from ETA officers and members and the electronics industry.

The Electronics Technicians Association, International, Inc.
Greencastle, Indiana

*Richard L. Glass, CETsr*
President, Electronics Technicians Assn, Int'l.



ICAC
International Certification
Accreditation Council

and NUMBER ~~EDWARDS, K. / E-54444~~     CDC-128-B (Rev. 4/74

ABOVE NAMED INMATE HAS SUCCESSFULLY COMPLETED THE BASIC 26 HOUR ALTERNATIVES TO VIOLENCE

NCE PROGRAM HELD ON: __SEPT. 18 - 20, 1992__ . INMATE PARTICIPATION WAS VOLUNTARY,

IN E: __EDWARDS, K.___ , CDC NUMBER __E-54444__ IS TO BE COMMENDED FOR HIS INTEREST

CONDUCT THROUGHOUT THE PROGRAM.

INAL: RECORDS
  cc: CCI
      Inmate
      Chapel File
                       CHAPLAIN C. M. BREWER
                       A.V.P. COORDINATOR

'E September 20th, 1992          (LAUDATORY)                    GENERAL CHRONO

---

E and NUMBER  __EDWARDS, K. / E-54444__     Housing Unit: F1-02-211L          CDC-128-B (Rev. 4/74

THE ABOVE NAMED INMATE HAS SUCCESSFULLY COMPLETED THE 26 HOUR ADVANCED ALTERNATIVES

TO VIOLENCE PROGRAM HELD ON: __OCT. 13 - 15, 1992__ . INMATE PARTICIPATION WAS VOLUNTARY,

AND INMATE: __EDWARDS, K.___ , IS TO BE COMMENDED FOR HIS INTEREST AND CONDUCT

THROUGHOUT THE PROGRAM.

  ORIGINAL: CENTRAL RECORDS
      cc; CC-I
         Inmate
         Chapel Files
                       CHAPLAIN C. M. BREWER
                       A.V.P. COORDINATOR

ITE OCTOBER 15, 1992               (LAUDATORY)                 GENERAL CHRONO

---

AME and NUMBER  __EDWARDS. K. / E-54444 / F1-02-239U__     CDC-128-B (Rev. 4/74

INMATE __EDWARDS. K.___ , CDC NO. __E-54444__ HAS COMPLETED THE
"TRAINING FOR TRAINERS" SEMINAR FOR THE ALTERNATIVE TO VIOLENCE
PROGRAM. THE PROGRAM WAS HELD ON __FEBRUARY 23 - 25, 1993__ .
PARTICIPATION WAS VOLUNTARY. INMATE EDWARDS, K.
IS TO BE COMMENDED FOR HIS CONDUCT AND INTEREST.

  ORIG: RECORDS
    CC: CCI
       INMATE
       CHAPEL FILE
                       CHAPLAIN C.M. BREWER
                       A.V.P. COORDINATOR

DATE FEBRUARY 25, 1993          (LAUDATORY)                    GENERAL CHRONO

Facilitator in the following _____ hour Alternatives to Violence seminar held on: APRIL 02-APRIL 04, 1993 . Participation as a Facilitator was voluntary, and inmate: EDWARDS, K. _____ is to be commended for his interest, support, and conduct in the **Alternatives to Violence Project** here at R.J.Donovan.

```
...IG: RECORDS
    cc: CC-I
        Inmate
        Chapel File
```

Chaplain C.M. Brewer
Alternatives to Violence Coordinator

TE APRIL 04, 1993             (LAUDATORY)                    GENERAL CHRONO

iE and NUMBER: EDWARDS, K. / E-54444 / F1-02-239U

CDC-128-B (Rev. 4/74)

above named inmate has successfully completed the **Alternatives to Violence Facilitators** ting held on: APRIL 14, 1993 . Inmate participation was voluntary, and inmate; WARDS, K. _____ , is to be commended for his conduct, interest, and continuing support the Alternatives to Violence Project here at R.J.D.C.F.

```
.GINAL: CENTRAL RECORDS
    cc; CC-I
        Inmate
        Chapel Files
```

CHAPLAIN C.M. BREWER
A.V.P. COORDINATOR

TE APRIL 19, 1993            (LAUDATORY)                    GENERAL CHRONO

ME and NUMBER    EDWARDS, KENNEDY  E-54444  13-H-7L  POS #CLK-A.516    CDC-128-B (Rev. 4/74)

nate EDWARDS, KENNEDY has successfully completed the first twelve sessions (15) hours of
e "A Framework For Recovery" program as part of the Pre-Release program. This inmate was a
ogram participant from 09/09/98 to 09/26/98. "A Framework For Recovery" is a voluntary
lf-help program.

```
: Central File
    Inmate
        ass File
    Education File
```

R. HART
A Framework For Recovery Program Manager
C.S.P.-Solano, Level II & III

ATE  09/26/98                                              GENERAL CHRONO

# Certificate of Training

This document certifies that

has successfully completed

# BREAKING THE BARRIERS

Education featuring Gordon Graham of the Pacific Institute, Inc. ®



The Pacific Institute

K. EDWARDS

Issued this 27th day of May 1992

_____
Program Coordinator

_____
Rabbi ___ Pollack Ph.D.   Facilitator

ES4447



# Certificate

## Workshops For Training In Nonviolence
### Alternatives to Violence Project West

A Project of

San Diego Friends Meeting (Quakers) and the Peace Resource Center of San Diego

This is to certify that

## Kenny Edwards

has satisfactorily completed the Basic Course in Nonviolent Conflict Resolution

Hall R. Brody
Lead Trainer

9-20-97
Date

Nancy Wright

Beth C. Jones

ES4444



# Certificate

**Workshops For Training In Nonviolence**
*Alternatives to Violence Project West*

Jointly Sponsored By

The San Diego Friends Meeting (Quakers) and The Peace Resource Center of San Diego

This is to certify that

**KENNY EDWARDS**

has satisfactorily completed the Advanced Course in Nonviolent Conflict Resolution

_Dah Ammy_
Lead Trainer

10/15/92
Date

E5444



**Certificate of Completion**

This Certifies That

KENNEDY EDWARDS

Has Successfully Completed

26TH Day Of SEPTEMBER 19 98

A FRAMEWORK FOR RECOVERY

Gordon Graham
and Company

Program Manager

Facilitators

**M.V.P.**
**(MEN'S VIOLENCE PREVENTION)**
California State Prison – Solano
P.O. Box 4000
Vacaville, CA 95696-4000

November 15, 1998

**TO WHOM IT MAY CONCERN:**

Mr. Kenny Edwards has successfully completed the **MEN'S VIOLENCE PREVENTION** seminar. MEN'S VIOLENCE PREVENTION is an extensive training seminar and self-help group for men who want to end their violance. The program is comprised of ten (10) weekly sessions in which participants define violence and explore expanded definitions of behavior they might not have considered violent.

Specific procedures for handling and averting the expressions of violence are taught. Accompanying signs of anger are studied and techniques for changing internal attitudes are learned. Family and partner interaction is discussed and alternative ways of dealing with relationships are taught. The precept for passing on this behavior to peers is emphasized.

This program is intened to help curb or stop the passed on cycle of violence.

*M.R Brewer*
MIKE BREWER
V.O.R.G. Program Manager
CSP Solano II

# Men's Violence Prevention Program

be it known that

**MR. KENNY EDWARDS**

*has successfully completed*

**MEN'S VIOLENCE PREVENTION**

**ATTESTED TO THIS**

15th Day of November, 1998



_M. A. Brown_
Sponsor

_Na'eem Washington_
Facilitator



Case Management Specialist

**FRIENDS OUTSIDE**
National
Organization

To:    Whom It May Concern
From:  Regina White
Date:  November 4, 1999
Re:    Parenting Class Completion

This letter will confirm Mr. Kennedy Edwards, has successfully completed the thirty (30) hour Parenting Program, sponsored by Friends Outside National Organization.   The curriculum is designed to reduce incidents of child abuse and neglect by parents or other primary caregivers, who may be viewed as high risk.  It is also designed to set the stage for a successful reunification of the family after release, and assist participants in achieving closure when they have lost custody or contact with their children.

THE CURRICULUM FOCUSES ON THE FOLLOWING ISSUES:

Introduction to parenting                Child growth and development

Communication                            Self-esteem (mother, father and child)

Adolescence                              Stress and parenting

Anger and parenting                      Guidance and discipline

Sex, drugs and outside influences        Family relationships

Long distance parenting and reunification  The family together

Nutrition

Mr. Edwards, has fulfilled all requirements to receive a certificate attesting to his completion of this 30-hour parenting program on November 4, 1999.

*Regina W. White*

Regina White

Case Management Specialist



# Parenting Program

**FRIENDS OUTSIDE** ®  *National Organization*

## Certificate of Completion

presented to

*Kennedy Edwards*

on _____ *Nov. 4, 1999* _____

*Case Management Specialist*
and
*Program Facilitator*

Friends Outside since 1955

# THIS CERTIFICATE IS PRESENTED

*In Recognition of the Ten Year Existence of the*

*Victim/Offender Reconciliation Group*

*at California State Prison - Solano*

*"Together We Made It"*

THE CALIFORNIA DEPARTMENT OF CORRECTIONS

OFFICE OF VICTIM SERVICES & RESTITUTION

DECEMBER 1998

# CERTIFICATE OF COMPLETION

## KENNY EDWARDS

Has successfully completed the pilot program

## TAWHEED, CHANGING FACES

An incredible process in understanding his own life journey so that he might better aid in the journeys of victims and offenders. He trusted the process in such a way that he was able to share with the group not only the resolved issues and struggles in his life, but the unresolved issues.

Kenny met this challenge with **courage, honesty, integrity, & humor** and helped create a deeply safe place for himself and others.

_MR Brewer_
Mike Brewer, Group Sponsor

_Marcia Blackstock_
Marcia Blackstock, BAWAR

_Diane Beynon_
Diane Beynon, BAWAR

3/23/05
Date

# Men's Violence Prevention Program

be it known that

**K E N N Y   E D W A R D S**

has successfully completed

**ATTESTED TO THIS**

March 30, 2004



_____
**Sponsor**

_____
**Facilitator**



# Certificate of Achievement

This certifies that

## Kenny Edwards

Has successfully completed the twelve week

Anger Management Program

May 6, 2004

*You have the keys... Controlling your anger. It's your choice!*

J. McMasters
L.C.S.W

Mr. Kenny Edwards has successfully completed the MEN'S VIOLENCE PREVENTION (MVP). MEN'S VIOLENCE PREVENTION is an extensive training seminar and self-help group for men who want to end their violence. The program is comprised of ten (10) weekly sessions in which participants define violence, and explore expanded definitions of behaviors they might not have considered violent.

Specific procedures for handling and averting the expressions of violence are taught. Accompanying signs of anger studied, and techniques for changing internal attitudes are learned. Family and partner interaction is discussed, and alternative ways of dealing with relationships are taught. The precept for passing on this behavior to peers is emphasized.

This program is intended to help curb, and stop the passed on cycle of violence.

*MR Brewer*

MIKE R. BREWER
MVP Primary Sponsor
CSP-Solano

DATE          March 30, 2004          LAUDATORY          CENTRAL CHRONO

## Insight and Anger Management Group

**Participant: Kenny Edwards**                    **CDC: E-54444**

Mr. Edwards has successfully completed the anger management self-help group. He has been introduced to events that could be the origin of feelings that began in childhood and persisted through adolescence and adulthood. He has learned about issues that can corrupt relationships if they are not acknowledged and evaluated as to their relevance in new situations. The Myers Briggs Type Indicator was a tool to help the participant identify his own characteristics and get a better understanding of others whose characteristics may be different from his own. He has been exposed to 10 ineffective ways people deal with anger and effective means of coping. Most importantly, he has learned that anger is a warning sign that there is a problem and the first step in dealing with anger is to identify the problem. The second step is to get his thoughts and feelings under control so that he can rationally address the problem and all the consequences of potential solutions to the problem. His response to the problem should elicit consequences that are consistent with what he wants and support his positive self esteem.

*J. K. McMaster Lcsw*                    **May 6, 2004**

**Ms. McMaster Lcsw, Group Leader**

CDC SOL 128 B



# Stress Management

*This certifies that*

## Kenny Edwards

Has successfully completed the Five-Week Stress Management Course at California State Prison Solano

May 6, 2004

Stress Free

Stress Free

Frank Mopping, Coordinator

Andre Hall, Facilitator

M.R. Brewer, Sponsor

Inmate Edwards, E-54444, has successfully completed the Stress Management program, which entails extensive participation and group discussions in association with the physical, emotional and behavioral symptoms of stress. This seminar also provides a thorough comprehension of response techniques, positive self-talk messages, management tips, relaxation exercises and a "Commitment to Change" plan to ensure productive lifestyle choices for the future.

The Stress Management program is a voluntary group comprised of five (5) weekly sessions, each building upon the fundamental principles necessary for the development of a personal Stress Management plan.

*M.R. Brewer*

MIKE R. BREWER, Primary Sponsor            Original:   Central File
Stress Management Program                  Copies:     CCI/Writer/Inmate
CSP-Solano

DATE        April 27, 2004              (LAUDATORY)                    GENERAL CHRONO

# Relationship Awareness Workshop

*This certifies that*

## Kennedy Edwards

*has successfully completed the five-week Relationship Awareness Program at*

*California State Prison Solano*

*June 7, 2005*



_Nick Stanbery Sponsor_
Safety Coordinator

_F. Moppins Coordinator_

_J. Shelmire Coordinator_

# MANAGING ANGER

## PROGRAM

THIS CERTIFIES THAT

# Kenny Edwards

HAS SUCCESSFULLY COMPLETED THE FIVE-WEEK
ANGER MANGEMENT PROGRAM AT
CALIFORNIA STATE PRISON SOLANO

SEPTEMBER 7, 2005

"REMEMBER YOU HAVE THE KEY TO CONTROLLING YOUR ANGER!"

A. Dabney, Facilitator

F. Moppins, Coordinator

MIKE BREWER SPONSOR



# *California State Prison Solano*

Vacaville, California

## Relationship Awareness

This is to certify that

### *Kennedy Edwards*

Has successfully facilitated the

## Relationship Awareness Program
2006-2007

Eddie Munoz, Sponsor

Date: 8/23/07

NAME and NUMBER        Edwards        E-54444    13-A-2L        (B)

Inmate Edwards,  E-54444 has successfully completed the Relationship Awareness Workshop. This workshop discussed the following topics:  Extra Baggage, Required Relationship Principles, Dysfunctional Relationship Behavior, Taking Responsibility for Your Own Actions, Pre Marital Reflections.  This provided the inmates with positive alternatives through a through comprehension of response techniques to productive lifestyle choices, and insight inot how unhealthy relationships effected their lives.

This Relationship workshop is a voluntary group comprised of five (5) weekly sessions, building a personal relationship management plan of necessary fundamental foundation principles.

NICK STANBERY, Sponsor
Optical Lab Safety Coordinator
CSP-Solano

Original:  Central File
Copies:    Writer/Inmate

                June 2, 2005                    (LAUDATORY)

NAME and NUMBER    KENY EDWARDS        E-54444

CDC-128-B (Rev. 4/74)

Mr. Kenny Edwards, has successfully completed the MEN'S VIOLENCE PREVENTION (MVP).  MVP is an extensive training semina and self-help group for men who want to end their violence.  The program is comprised of ten (10) weekly sessions in which participants define violence, and explore expanded definitions of behaviors they might not have considered violen

Specific procedures for handling and averting the expressions of violence are taught.  Accompanying signs of anger are studied, and techniques for changing internal attitudes are learned.  Family and partner interaction is discussed, and alternative ways of dealing with relationship are taught.  The precept for passing on this behavior to peers is emphasized.  This program is intended to help curb, and stop the passed on cycle of violence.

MIKE R. BREWER
MVP Primary Sponsor
CSP-Solano

                August 8, 2005        (LAUDATORY CHRONO)

DATE                                        GENERAL CHRONO

NAME and NUMBER        EDWARDS        E-54444    13-A-2L        (B)

CDC-128-B (Rev. 4/74)

Inmate Edwards,    has successfully completed the five (5) session Anger Management Seminar, a program founded upon the associated principles outlined in the Self-Care Managing Anger Curriculum.  This handbook provides each inmate participant the ability to understand and discuss the causative factors related to these important skills:  Identifying what triggers your anger, learning how to calm yourself, and finding healthy ways to express your anger without losing control.  Having insight of the cause of anger from an early age and the effects of an unstable environment and relationships, devlopment of coping skills, and insight into the nature of crime.

This voluntary self-help program encourages the development of a personal anger management plan based upon the establishment of positive goals, seeking support from family, friends, and professionals, tracking progress and rewarding yourself for productive lifestyle choices.

IKE BREWER, Sponsor
Managing Anger
CSP-Solano

Original:  Central File
Copies:    Writer/Inmate/Work File

DATE        September 7, 2005        (LAUDATORY)            GENERAL CHRONO

EDWARDS    E-54444    13-A-2L    (B)

Inmate Edwards, has continued to devote his time and energy on a volunteer basis to facilitate the Relationship Awareness Workshop. These sessions are done with integrity and sincerity, his insight that he shares with others is viewed as positive influence upon other inmates. There is a waiting list maintained within the rules and regulations. Mr. Edwards is commended for his continued efforts.

The Relationship Awareness Workshop is comprised of a voluntary group which meets for five weekly sessions.

NICK STANBERY,
Optical Lab Safety Coordinator
CSP-Solano

DATE

October 9, 2005

Original:    Central File
Copies:      Writer/Inmate

(LAUDATORY)

GENERAL CHRONO

---

NAME and NUMBER    EDWARDS    E-54444    13-A-2L    (B)

CDC-128-B Rev. 4/74

This inmate has taking the time to devote his leisure time to volunteer to be a Facilitator. These are five sessions groups that are done with the insight he has gained over the years through programs and studying, to give proper insight. He maintains the integrity needed to be viewed as a positive influence with others. He maintains a waiting list within the guidelines of the rules. He is to be commended for his continued efforts to try and rehabilitate others.

The Relationship Awareness Workshop is comprised of a voluntary group of inmates.

MIKE BREWER
Sponsor
CSP-Solano
DATE

January 10, 2007

Original:    Central File
Copies:      Writer/Inmate/CCI

(LAUDATORY)

GENERAL CHRONO

Mr. Kennedy Edwards has successfully completed a four (4) hour workshop on current medically correct health information regarding Sexually Transmitted Diseases (STD). ..seases covered are Pediculosis, Scabies, Trichomonas, Chlamydia, Syphilis, Gonorrhea, .. ..oid, Human Papilloma Virus, and Herpes Simplex Virus. The workshop provides ... ...ation concerning transmission and prevention of these communicable diseases ..th an emphasis on altering high risk behaviors. He is to be commended for his ...illingness to heighten his awareness and knowledge of infectious diseases.

ORIGINAL:  C-File
     CC:  CCI
          Inmate
          Writer

R. ALANDY, R.N.
Peer Ed. Coordinator
CSP-Solano

..TE FEBRUARY 6, 2001

GENERAL CHRONO

NAME and NUMBER EDWARDS            E-54444            13-A-2L            CDC-128-B Rev. 4/7

Mr. Kennedy Edwards has successfully completed a three (3) hour workshop on current medically correct health information regarding the Tuberculosis bacteria (TB). The workshop provides information concerning transmission and prevention of the communicable disease with an emphasis on altering high risk behaviors. He is to be commended for his willingness to heighten his awareness and knowledge of the characteristics of TB and the difference between infection and disease.

ORIGINAL:  C-File
     CC:  CCI
          Inmate
          Writer

R. ALANDY, R.N.
Peer Ed. Coordinator
CSP-Solano

DATE FEBRUARY 27, 2001

GENERAL CHRONO

Inmate Edwards has participated in the computer in Housing Units Project (CHU). He was completed: (a) Beginning Reading Curriculum, (b) Advanced Reading Curriculum, (c) Math and Language Arts Curriculum, (d), Parenting and Substance Abuse Curriculum, (e) Job and Life Skills Curriculum, (f) Plato Phonics Curriculum. With the above program completions he has completed the entire Plato Self Instructional Computer Literacy Program. He is to be congratulated for his over-all effort for Self-improvement.

Original: C-Files  
  cc:  Inmate  
      CCI

W. Chee , SAI (Acting)  
Education Complex B  
CSP-Solano

H. Hubler (CHU-Coordinator) (A)  
Education Complex B  
CSP-Solano

DATE: 5/28/02

**GENERAL CHRONO**

NAME and NUMBER EDWARDS      E-54444      13-A-2L    CDC-128-B Rev. 4/7

Mr. Kennedy Edwards has successfully completed a six (6) hours workshop on current medically correct health information regarding Human Immune Deficiency Virus (HIV) and Acquired Immune Deficiency Syndrome (AIDS). The workshop provides information concerning transmission and prevention of the communicable disease with an emphasis on altering high risk behaviors. He is to be commended for his willingness to heighten his awareness and knowledge of the acute and chronic HIV/AIDS infectious disease.

ORIGINAL:  C-File  
    CC:  CCI  
        Inmate  
        Writer

R. ALANDY, R.N.  
Peer Ed. Coordinator  
CSP-Solano

DATE DECEMBER 15, 2000

**GENERAL CHRONO**

NAME and NUMBER  EDWARDS     E-54444     13-A-2L    CDC-128-B (Rev. 4/7

Mr. Kennedy Edwards has successfully completed six (6) hours workshop on current medically correct health information regarding Hepatitis A, B, and C pathogens. The workshop provides information concerning transmission and prevention of the communicable disease with an emphasis on altering high risk behaviors. He is to be commended for his willingness to heighten his awareness and knowledge of the acute and chronic Hepatitis infectious disease.

ORIGINAL:  C-File  
    CC:  CCI  
        Inmate  
        Writer

R. ALANDY, R.N.  
Peer Ed. Coordinator  
CSP-Solano

Inmate Edwards, C.D.C.# E-54444, has completed his term as GSC
Chairman for the Bottom Line Narcotics Anonymous Fellowship here at C.C.I.,
Tehachapi, Level II.  Inmate Edwards chaired bi-weekly meetings and
maintained credible service in accordance with his G.S.C. position, since
being elected as Chairman of this Fellowship.  He is an entrusted and
responsible member of N.A..

Term Completed: 7/1/96 - 1/1/97

Orig.: C-File
cc: NA File
    Inmate

_Adrian Hernandez_
Adrian Hernandez - Secretary
Bottom Line Fellowship
Narcotics Anonymous Unit II

Ken Steward - Co-Sponsor
Bottom Line Fellowship
Narcotics Anonymous Unit II

DATE    12/31/96                CCI/TEH/II                GENERAL CHRONO

---

GENERAL CHRONO                                                    DATE

K. EDWARDS        E-54444

Inmate Edwards, C.D.C.# E-54444, has completed his term in office as
described in Bottom Line Narcotics Anonymous duties in the capacity of 12 .
Step Chairman.  He was responsible for leading the bi-weekly step study
meetings.  Inmate Edwards is to be commended for his service.  On 7-18-96,
at a regularly scheduled NA Business Meeting, inmate Edwards was elected as
Chairman.  He is responsible for monitoring and informing the group of all
actions and policies of the Bottom Line group.  He is an integral part of
this Fellowship, as well as being entrusted and responsible.

Orig: C-File
cc: NA File
    Inmate

_Adrian Hernandez_
A. HERNANDEZ - SECRETARY
NARCOTICS ANONYMOUS FELLOWSHIP
BOTTOM LINE UNIT II

E. BEGA - SPONSOR
NARCOTICS ANONYMOUS FELLOWSHIP
BOTTOM LINE UNIT II

8-23-96            CCI-TEHACHAPI II                NAME and NUMBER

CDC-128-B (Rev. 4/74)

---

State of California                              Department of Corrections
                                                CDC 128B (4/74)

NAME and NUMBER    EDWARDS    E 54444    1 02 211

Inmate EDWARDS    E 54444    1 02 211  completed the Life Plan for Recovery Substance Abuse Program.  Mr. EDWARDS
participation in this 120 hour program was active and consistant.  He has demonstrated the ability to identify the
process of addiction and how it affects his decision making ability.  He has also demonstrated a basic understanding of
effects of drugs (Pharmacology), interpersonal communication skills, values clarification and relationship building.
Mr. EDWARDS was both cooperative and supportive of his classmembers.

DISTRIBUTION

Original/Records
CCI Bldg #1
Teacher/Instructor
    ation File
Inmate

_Cassandra Hubbard_
O. MILLER
Life Plan Facilitator

DATE: DECEMBER 16, 1992        LAUDATORY        RJDCF                GENERAL CHRONO

On January 16, 1997, at a monthly Business meeting of the NARCOTICS
~nymous Fellowship, here at C.C.I. Tehachapi, Level II, elections for
d. Inmate Edwards, C.D.C.# E-54444, was elected as the Treasurer for
is Fellowship. The Bottom Line Fellowship congratulates inmate Edwards
r his current elected position and his active participation in this
:his current elected position and his active participation in this
l ship. Inmate Edwards is an inspiration by his involvement in this
.A. Fellowship. He is responsible for maintaining credible service to
his group in accordance with his G.S.C. position.

erm Starts: 1/16/97-7/17/97

rig.: C-File
    cc: NA File                 ADRIAN HERNANDEZ-SECRETARY         KENNY STENARD-CO-SPONSOR
       Inmate                   BOTTOM LINE FELLOWSHIP             BOTTOM LINE FELLOWSHIP
                                NARCOTICS ANONYMOUS    UNIT II     NARCOTICS ANONYMOUS    UNIT II

                                                                              GENERAL CHRONO

ATE   1/17/97                              CCI/TEH/II


NAME AND NUMBER  *Edwards R54444*

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM                CDC-128-B (Rev. 4/74)

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meetings
during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself
through this self-help program.


Or  d: Central File
       Inmate                   SPONSOR
       Sponsor                  Alcoholics/Narcotics Anonymous
                                Facility I, II, III, IV
                                California State Prison-Solano

DATE  2004 (1ST, 2ND, 3RD, 4TH QUARTER)

                                                                 GENERAL CHRONO

The On The Rocks fellowship of Alcoholics Anonymous meets every other Wednesday evening in Facility #1 of R. J. Donovan Correctional Facility. Inmate EDWARDS has participated on a completely voluntary basis. He attended 2 of the possible total 7 meetings that were conducted during the 2nd calendar quarter. He should be acknowledged for his participation.

*D. Hamilton*

D. HAMILTON
Alcholics Anonymous Sponsor
R.J.D.C.F.

JUL 14 1994

TE                                                          GENERAL CHRONO

NAME and NUMBER    EDWARD K.    E-54444    4-125L                CDC-128-B (Rev. 4/74)

The On The Rocks fellowship of Alcoholics Anonymous meets every other Wednesday evening in Facility #1 of R.J. Donovan Correctional Facility. Inmate EDWARD has participated on a completely voluntary basis. He attended 2 of the possible total 5 meetings that were conducted during the 3rd calendar quarter. He should be acknowledged for his participation.

*D. Hamilt*

D. HAMILTON
Alcoholics Anonymous Sponsor
R.J.D.C.F.

DATE    9/21/94                                             GENERAL CHRONO

NAME and NUMBER    **EDWARDS, K.    E54444    4-125L**         CDC-128-B (Rev. 4/74)

Inmate **EDWARDS** has attended **5** out of 6 meetings for the 4th quartrer of 1994 **AA**.

**D. Hamilton**
**AA Sponsor Fac 1**

DATE

adsiders Fellowship here at CCI-II. His fellowship ... ... our ... ... contributions
sire to participate in our Study Groups as our speaker meeting ... ... ... ...
e a strong and positive influence on other members who have the willingness to practice
 honest program. He has been helpful in assisting us reach our goal of having a positive
ogram.

. STEWARD
LCOHOLICS ANONYMOUS SPONSOR
NIT II                              CCI-II

ORIGINAL: C-FILE
        CC: INMATE
            A.A. FILE

DATE **10-3-95**

GENERAL CHRONO

---

NAME and NUMBER    Edwards    E54444

CDC-128-B (Rev. 4/74)

   Inmate Edwards has been attending the Roadsiders Fellowship of Alcoh-
olic's Anonymous Big Book Study Group here at CCI Tehachapi, Unit II. He
has completed the requirements to earn a Certificate in the Big Book. I/M
Edwards continues to participate and is an asset to this Alcoholic's
Anonymous Program. He is helpful in us attaining our goal of having a
positive and honest program.

Ke  Perkins
B  Book Chairman
Alcoholic's Anonymous
Roadsiders Fellowship

Ken Stewart
Alcoholic's Anonymous
Sponsor, Unit II

CC I.

DATE    **4-2-96**

GENERAL CHRONO

---

NAME and NUMBER    EDWARDS           E-54444

CDC-128-B (Rev. 4/74)

INMATE EDWARDS, E-54444, HAS BEEN ATTENDING THE ROADSIDERS FELLOWSHIP OF ALCOHOLICS ANONYMOUS
12 X 12 STUDY GROUP HERE AT THE CALIFORNIA CORRECTIONAL INSTITUTION, UNIT II.  HE HAS COMPLETED
THE REQUIREMENTS TO EARN A CERTIFICATE IN THE 12 X 12 STUDY.  INMATE EDWARDS CONTINUES TO
PARTICIPATE AND IS AN ASSET TO THE ALCOHOLICS ANONYMOUS PROGRAM.  HE IS HELPFUL TO US IN
ATTAINING OUR GOAL OF HAVING A POSITIVE AND HONEST PROGRAM.

cc: CENTRAL FILE
    CC-I
    A. A. FILE
    INMATE

K. STEWARD
STAFF SPONSOR
ROADSIDERS A. A. PROGRAM

DATE   **JUNE 21, 1996**        CALIFORNIA CORRECTIONAL INSTITUTION

GENERAL CHRONO

NAME and NUMBER   Ken Edwards   E-54444   CDC-128-B (Rev. 4/74)

Inmate Edwards has completed his term in office as the Roadsider Alcoholics Anonymous Fellowship Librarian. He has attended all regularly scheduled business meetings and has maintained credible service to the group in accordance with his G.S.C. position. He has been actively participating in 12 X 12 and Big Book Meeting by making available all A.A. material to the Roadsider Fellowship. We hope he continues to be a part of this A.A. Fellowship in helping us maintain our goal of sobriety. Term Completed: 1/1/96-7/1/96

Orig: C-File
    cc: A.A. File    Jeff Price-Secretary          Kenny Steward-Sponsor
    cc: Inmate       Roadsider A.A. Fellowship     Roadsider A.A. Fellowship
                     Unit II                       Unit II

DATE   7/16/96        CCI-Tehachapi                    GENERAL CHRONO

---

NAME and NUMBER  _____ # _____ Unit ___ Dorm _____   CDC-128-B (Rev. 4/74)

Inmate _____ # _____ is an active member of the **Bottom Line Narcotics Anonymous Fellowship**. Inmate _____ has earned a certificate and a Laudatory Chrono for attending 10 **Botton Line Narcotics Anonymous Fellowship** meetings. Inmate _____ has shown eagerness and cooperation with a positive attitude.

cc: Central File
    N.A. File
    Inmate                          N.A. Sponsor,
                                    California Correctional Institution

DATE  _____           _____              GENERAL CHRONO

---

NAME and NUMBER  EDWARDS, K.      E-54444      5-20L      CDC-128-B (Rev. 4/74)

Inmate Edwards, C.D.C. #E-54444, has been attending the regularly scheduled meetings of the Roadsiders Alcoholics Anonymous Fellowship here at C.C.I.-Tehachapi, Level II. He has continued to participate at these meetings and was recently appointed (on January 9, 1997) to the G.S.C. position of Recording Secretary. His continued attendance and participation are valuable to reaching our goal of sobriety.

Orig.: C-File
    cc: AA File     M. JAY - SECRETARY           EDDIE BEGA - CO-SPONSOR
        Inmate      ROADSIDERS FELLOWSHIP        ROADSIDERS FELLOWSHIP
                    ALCOHOLICS ANONYMOUS UNIT II ALCOHOLICS ANONYMOUS UNIT II

DATE   2/18/97          CCI/TEH/II              GENERAL CHRONO

# Certificate of Appreciation
## presented To

_Kenny Edwards_

# We, the Narcotic's Anonymous Fellowship,
## appreciate your wholeheartedly
### participation
in ensuring that our goal of recovery is a
priority.

Sponsor-N.A.
**Bottom Line Fellowship**

Secretary-N.A.
**Bottom Line Fellowship**

# 12 TRADITIONS DISCOVERY GROUP

This is to certify that

_____

EDWARD. K.

Has completed the Alcoholics Anonymous

Twelve Traditions Discussion Class with " The Roadsiders Fellowship "

Presented this ___ JULY ___ day of ___ 2ND ___ 19 96

_____
Chairman

_____
Sponsor



# 12 TRADITIONS DISCOVERY GROUP

**This is to certify that**

KENNY EDWARDS

Has completed the Alcoholics Anonymous

Twelve Traditions Discussion Class with " The Roadsiders Fellowship "

Presented this ___ APRIL ___ day of ___ 26 ___ 19 _97_

JEFF KIRKPATRICK

**Chairman**

TERRY EILERS

**Sponsor**

E EDWARDS, E-54444 HAS BEEN ATTENDING THE "ROADSIDERS" ALCOHOLICS ANONYMOUS 12 x 12 STUDY
HERE AT THE TEHACHAPI, LEVEL I FACILITY. HE HAS COMPLETED THE REQUIREMENTS TO EARN A CER-
ATE IN THE 12 X 12 STUDY GROUP. INMATE EDWARDS CONTINUES TO PARTICIPATE AND IS AN ASSET TO
..A. FELLOWSHIP. HE IS HELPFUL TO US IN ATTAINING OUR GOAL OF HAVING A POSITIVE AND HONEST
.AM.

```
:    C-FILE                          / TERRY EILERS, "ROADSIDERS" SPONSOR
:    A.A. FILE                         CCI-II / ALCOHOLICS ANONYMOUS
     INMATE
```

TE  **APRIL 26, 1997**    ( CCI-II / SELF-HELP PROGRAM )              GENERAL CHRONO

                                                                    CDC 128B

          EDWARDS        E-54444        13-M-6L

Since joining Alcoholics Anonymous, the above named inmate has faithfully attended
the scheduled AA meetings at CSP-Solano (07-02-97 through 09-24-97) and has been a
decided asset to the program.  He has demonstrated a willingness to share openly
with the group, to read when called upon, to assist with the set-up and clean-up when
needed.   He made a commitment to himself to work the steps and the traditions,
and has shown a willingness to help others do the same.

                                AA Sponsor

cc:   Central file
      CC-I

October 29, 1997              INFORMATIVE CHRONO              CSP-Solano


                                                          CDC 128

          EDWARDS        E-54444

Since joining Alcoholics Anonymous, the above named inmate has faithfully attended
the scheduled AA meetings at CSP-Solano (10-01-97 through 12-31-97) and has been a
decided asset to the program.  He has demonstrated a willingness to share openly
with the group, to read when called upon, to assist with the set-up and clean-up when
needed.   He made a commitment to himself to work the steps and the traditions,
and has shown a willingness to help others do the same.

                                AA Sponsor

cc:   Central file
      CC-I

January 28, 1998            INFORMATIVE CHRONO               CSP-Solano

EDWARDS E-54444   13-H-8L

ce joining Alcoholics Anonymous, the above named inmate has faithfully attended
e scheduled AA meetings at CSP-Solano (01-01-98 through 03-31-98) and has been a
cided asset to the program. He has demonstrated a willingness to share openly
th the group, to read when called upon, to assist with the set-up and clean-up when
e    d. He made a commitment to himself to work the steps and the traditions,
d has shown a willingness to help others do the same.

*P. A. Gutiérrez*
AA Sponsor

:: Central file
CC-I

pril 1, 1998                    INFORMATIVE CHRONO            CSP-Solano

CDC 128B

EDWARDS   E-54444    13-H-7L

nce joining Alcoholics Anonymous, the above named inmate has faithfully attended
e scheduled AA meetings at CSP-Solano (07-01-98 through 09-30-98) and has been a
ecided asset to the program. He has demonstrated a willingness to share openly
ith the group, to read when called upon, to assist with the set-up and clean-up when
eeded. He made a commitment to himself to work the steps and the traditions,
nd has shown a willingness to help others do the same.

*P. A. Gutiérrez*
AA Sponsor

:c: Central file
CC-I

October 10, 1998               INFORMATIVE CHRONO            CSP-Solano

CDC 128B

EDWARDS   E-54444    13-H-7L

Since joining Alcoholics Anonymous, the above named inmate has faithfully attended the scheduled AA
meetings at CSP-Solano (10-01-98 through 12-31-98), and has been a decided asset to the program.
He has demonstrated a willingness to share openly with the group, to read when called upon, to assist
with the set-up and clean-up when needed.  He made a commitment to himself to work the steps and
the traditions, and has shown a willingness to help others do the same.

*P. A. Gutiérrez*
AA Sponsor

cc: Central file
CC-I

January 9, 1999                INFORMATIVE CHRONO            CSP-Solano

eetings at CSP-Solano (01-02-99 through 03-31-99), and has been a decided asset to the program. He has demonstrated a willingness to share openly with the group, to read when called upon, to assist th the set-up and clean-up when needed. He made a commitment to himself to work the steps and e traditions, and has shown a willingness to help others do the same.

*P. A. Gutierrez*
AA Sponsor

:. Central file
CC-I

April 1, 1999        **INFORMATIVE CHRONO**        CSP-Solano

CDC 128B

---

CDC-128-B (Rev. 4/74)

NAME and NUMBER   **EDWARDS KENNY**   E-54444   **FAC III**   **13/A/2L**

Since joining Alcoholics Anonymous, the above named inmate has faithfully attended the scheduled A.A. meetings at C.S.P. Solano ( 4-6-99 through 6-29-99 ) and has been a dedicated asset to the program. He has demonstrated a willingness to share openly with the group, to read when called upon, to assist with the set-up and clean-up when needed. He made a commitment to himself to work the steps and the traditions, and has shown a willingness to h others do the same. Also Mr. Edwards has shown dedication by being chairman of this group for his 2nd quarter. He is an asset to the body of Alcoholics anonymous.

cc: Central file
     CC-1

                                     R.Ambriz    *R. Ambriz*

                              A.A. Self Help/Sponsor

        7-08-99

DATE

---

NAME and NUMBER EDWARDS KENNY    E-54444    **FAC III**    **13/A/2L**        CDC-128-B (Rev. 4/74)

Since joining Alcoholics Anonymous, the above named inmate has faithfully attended the scheduled A.A. meetings at C.S.P. Solano ( 1-05-99 through 3-30-99 ) and has been a dedicated asset to the program. He has demonstrated a willingness to share openly with the group, to read when called upon, to assist with the set-up and clean-up when needed. He made a commitment to himself to work the steps and the traditions, and has shown a willingness to help others do the same. It should also be noted that Mr. Edwards is the " Chairman " of this group, and extends his help to those who are new to the A.A. program.

    cc: Central file
       CC-1                                R.Ambriz    *R. Ambriz*

meetings at CSP-Solano (04-01-99 through 06-30-99), and has been a decided asset to the program. e has demonstrated a willingness to share openly with the group, to read when called upon, to assist ith the set-up and clean-up when needed. He made a commitment to himself to work the steps and e traditions, and has shown a willingness to help others do the same.

*P. A. Gutiérrez*
AA Sponsor

c:    Central file
      CC-I

7/29/99                         INFORMATIVE CHRONO                    CSP-Solano

NAME/NUMBER:        EDWARDS        E-54444                              CDC 128B

Since joining Alcoholics Anonymous, the above named inmate has faithfully attended the scheduled AA meetings at CSP-Solano (07-01-99 through 09-30-99), and has been a decided asset to the program. He has demonstrated a willingness to share openly with the group, to read when called upon, to assist with the set-up and clean-up when needed.  He made a commitment to himself to work the steps and the traditions, and has shown a willingness to help others do the same.

*P. A. Gutiérrez*
AA Sponsor

cc:   Central file
      CC-I

October 8, 1999                INFORMATIVE CHRONO                    CSP-Solano

---

CDC-128B
B-13-A-2-L

EDWARDS      E-54444
Since joining Alcoholics Anonymous, the above named inmate has faithfully attended the scheduled AA meetings at CSP-Solano (10-01-99 through 12-31-99), and has been a decided asset to the program. He has demonstrated a willingness to share openly with the group, to read when called upon, to assist with the set-up and clean-up when needed.  He made a commitment to himself to work the steps and the traditions, and has shown a willingness to help others do the same.

*P. A. Gutiérrez*
AA Sponsor

cc:   Central file
      CC-I

January 14, 2000               INFORMATIVE CHRONO                    CSP-Solano

# Certificate of Award

*This Certifies that*

## KENNEDY EDWARDS

*of*

## ALCOHOLIC ANONYMOUS

*has been awarded this certificate for*

## TWELVE BY TWELVE COMPLETION

Date _____ 1-4-2000 _____

Barry Raybol _____ Rick Anderson _____

ince joining Narcotics Anonymous, the above named inmate has faithfully attended the scheduled NA eetings at CSP-Solano (10-01-99 through 12-31-99), and has been a decided asset to the program. e has demonstrated a willingness to share openly with the group, to read when called upon, to assist ith the set-up and clean-up when needed. He made a commitment to himself to work the steps and le ldditions, and has shown a willingness to help others do the same.

*P. A. Gutierrez*
NA Sponsor

c: Central file
CC-I

March 2000         INFORMATIVE CHRONO         CSP-Solano

---

NAME AND NUMBER    *Edwards E-54444*      CDC-128-B (Rev. 4/74)

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named Inmate is participating in the Narcotics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*B. Falla*

Original: Central File      M. BREWER – A. MOORE  B. FALLA - J. GAST SPONSORS
        Inmate         Narcotics Anonymous
        Sponsor        Facility III and IV
                 California State Prison-Solano

DATE **OCTOBER, NOVEMBER, DECEMBER 2000 (4TH QUARTER)**      GENERAL CHRONO

---

NAME AND NUMBER    *Edwards E-54444*

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM      CDC-128-B (Rev. 4/74)

The above named Inmate is participating in the Narcotics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*B. Falla*

Original: Central File      M. BREWER – A. MOORE SPONSORS
        Inmate         Alcoholics Anonymous
        Sponsor        Facility III and IV
                 California State Prison-Solano

DATE **JANUARY, FEBRUARY, MARCH 2001**                   GENERAL CHRONO

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named Inmate is participating in the Alcoholics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M. R Brewer*

Original: Central File
      Inmate
      Sponsor

M. BREWER - A. MOORE, B. FALLA - J. GAST SPONSORS
Alcoholics Anonymous
Facility III and IV
California State Prison-Solano

DATE  JULY, AUGUST, SEPTEMBER 2000 (THIRD QUARTER)       GENERAL CHRONO

---

NAME AND NUMBER     EDWARDS   E-54444         CDC-128-B (Rev. 4/74)

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named Inmate is participating in the Alcoholics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M R Brewer*

Original: Central File
      Inmate
      Sponsor

M. BREWER - A. MOORE - SPONSORS
Alcoholics Anonymous
Facility III and IV
California State Prison-Solano

DATE  OCTOBER, NOVEMBER, DECEMBER 2000 (FOURTH QUARTER)       GENERAL CHRONO

---

NAME AND NUMBER   *Edwards  E-54444*       CDC-128-B (Rev. 4/74)

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named Inmate is participating in the Alcoholics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*B. Fallay*

Original: Central File
      Inmate
      Sponsor

M. BREWER. – A. MOORE SPONSORS
Alcoholics Anonymous
Facility III and IV
California State Prison-Solano

DATE  JANUARY, FEBRUARY, MARCH 2001       GENERAL CHRONO

## PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

above names Inmate is participating in the ~~Narcotics Anonymous~~ Program, and has attended regularly scheduled meetings during past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through s help program.

*B. Falla*
_____

ginal: Central File
    Inmate
    Sponsor

M. BREWER - B. FALLA , J. GAST  SPONSORS
Narcotics Anonymous
Facility III and IV
California State Prison-Solano

TE  **APRIL, MAY, JUNE 2001 (SECOND QUARTER)**

**GENERAL CHRONO**

---

NAME AND NUMBER  *Edwards*  *F 5 4444*

CDC-128-B (Rev. 4/74)

### RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named Inmate is participating in the ~~Narcotics Anonymous~~ Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M R Brewer*
_____

Original: Central File
    Inmate
    Sponsor

M. BREWER – A. MOORE SPONSORS
Narcotics Anonymous
Facility III and IV
California State Prison-Solano

**DATE  JULY, AUGUST, SEPTEMBER 2001**

**GENERAL CHRONO**

---

13 A

NAME AND NUMBER  *Edwards*  *F 5 4444*

CDC-128-B (Rev. 4/74)

### RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named Inmate is participating in the Narcotics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M. R. Brewer*
_____

Original: Central File
    Inmate
    Sponsor

M. BREWER – A. MOORE SPONSORS
Narcotics Anonymous
Facility III and IV
California State Prison-Solano

DATE  OCTOBER, NOVEMBER, DECEMBER 2001

GENERAL CHRONO

The above names Inmate is participating in the Alcoholics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

Original: Central File
       Inmate
       Sponsor

M. BREWER - B. FALLA , J. GAST  SPONSORS
Alcoholics Anonymous
Facility III and IV
California State Prison-Solano

DATE  **APRIL, MAY, JUNE 2001 (SECOND QUARTER)**                    GENERAL CHRONO

NAME AND NUMBER  *Edwards E-54444*                    CDC-128-B (Rev. 4/74)

## RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above names Inmate is participating in the Alcoholics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

Original: Central File
       Inmate
       Sponsor

M. BREWER - B. FALLA , J. GAST  SPONSORS
Alcoholics Anonymous
Facility III and IV
California State Prison-Solano

DATE  **APRIL, MAY, JUNE 2001 (SECOND QUARTER)**                    GENERAL CHRONO

NAME AND NUMBER  *Edwards E54444*                    CDC-128-B (Rev. 4/74)

### RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named Inmate is participating in the Alcoholics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

M. BREWER – A. MOORE SPONSORS
Alcoholics Anonymous
Facility III and IV

Original: Central File
       Inmate
       Sponsor

NAME AND NUMBER  *Edwards E54444*  CDC-128-B (Rev. 4/74)

**RE: PARTICIPATION IN A SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the NARCOTICS ANONYMOUS PROGRAM, and has attended regularly scheduled meetings during the past (3) months. During the meetings he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M. R. Brewer*

Original:  Central File
           Inmate
           Sponsor

M. BREWER, B. FALLA, J. GAST — SPONSORS
Narcotics Anonymous
Facility III and IV
California State Prison - Solano

DATE          JANUARY, FEBRUARY, MARCH  (FIRST QUARTER, 2002)          GENERAL CHRONO

---

NAME AND NUMBER  *Edwards E54444*  CDC-128-B (Rev. 4/74)

**RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named Inmate is participating in the Narcotics Anonymous Program, and has attended available meetings during this quarter. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M. R. Brewer*

Original:  Central File
           Inmate
           Sponsor

M. BREWER - B. FALLA - J. GAST SPONSORS
Narcotics Anonymous
Facility I, II, III, IV
California State Prison-Solano

DATE  **(SECOND QUARTER 2002)**          GENERAL CHRONO

---

DATE 2002 (1ST, 2ND, 3RD, 4TH QUARTER)

NAME AND NUMBER  *Edwards E54444*  CDC-128-B (Rev. 4/74)

**RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meeting during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M. R. Brewer*

Original:  Central File
           Inmate
           Sponsor

SPONSOR
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison-Solano

DATE  2002 (1ST, 2ND, 3RD, 4TH QUARTER)          GENERAL CHRONO

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M.R Brewer*

SPONSOR
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison-Solano

Original: Central File
        Inmate
        Sponsor

DATE  2003 (1ST, 2ND, 3RD, 4TH QUARTER)                          GENERAL CHRONO

---

NAME AND NUMBER   *Edward E54444*                     CDC-128-B (Rev. 4/74)

RE:  PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M.R Brewer*

SPONSOR
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison-Solano

Original: Central File
        Inmate
        Sponsor

DATE   2002 (1ST, 2ND, 3RD, 4TH QUARTER)                         GENERAL CHRONO

NAME AND NUMBER   *Edwards E54444*                    CDC-128-B (Rev. 4/74)

RE:  PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named Inmate is participating in the Alcoholics Anonymous Program, and has attended available meetings during this quarter. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M.R Brewer*

M. BREWER - B. FALLA - J. GAST SPONSORS
Alcoholics Anonymous
Facility I, II, III, IV
California State Prison-Solano

Original: Central File
        Inmate
        Sponsor

TE  (SECOND QUARTER 2002)                                        GENERAL CHRONO

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M. R Brewer*

SPONSOR
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison-Solano

Original:  Central File
   Inmate
   Sponsor

DATE  2003 (1ST, 2ND, 3RD, 4TH QUARTER)

GENERAL CHRONO

CDC-128-B  Rev. 4/74

NAME AND NUMBER  *Edwards E54444*

---

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M. R Brewer*

SPONSOR
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison-Solano

Original:  Central File
   Inmate
   Sponsor

GENERAL CHRONO

DATE  2004 (1ST, 2ND, 3RD, 4TH QUARTER)

---

NAME AND NUMBER  *Edwards E54444*

CDC-128-B (Rev. 4/74)

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M. R Brewer*

SPONSOR
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison-Solano

Original:  Central File
   Inmate
   Sponsor

DATE  2004 (1ST, 2ND, 3RD, 4TH QUARTER)

GENERAL CHRONO

NAME AND NUMBER *Edwards D 54444*

CDC-128-B (Rev. 4/74)

**RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meeting during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

*M.R Brewer*

Original: Central File
        Inmate
        Sponsor

SPONSOR
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison-Solano

---

NAME AND NUMBER *Edwards E54444*

CDC-128-B (Rev. 4/74)

**RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meeting during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himsel through this self-help program.

*M R Brewer*

Original: Central File
        Inmate
        Sponsor

SPONSOR
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison-Solano

DATE **2003 (1ST, 2ND, 3RD, 4TH QUARTER)**

GENERAL CHRONO

---

NAME AND NUMBER *Edwards E54444*

CDC-128-B (Rev. 4/74)

**RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meeti during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help him through this self-help program.

*M R Brewer*

Original: Central File
        Inmate
        Sponsor

SPONSOR
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison-Solano

DATE **2004 (1ST, 2ND, 3RD, 4TH QUARTER)**

GENERAL CHRONO

NAME AND NUMBER *Edwards ES4444*                    CDC-128-B (Rev. 4/74)

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meeting during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himsel through this self-help program.

*MR Brewer*
_____
SPONSOR

Original: Central File
         Inmate                    Alcoholics/Narcotics Anonymous
         Sponsor                   Facility I, II, III, IV
                                   California State Prison-Solano

DATE   2004 (1ST, 2ND, 3RD, 4TH QUARTER)                    GENERAL CHRONO

---

NAME AND NUMBER *Edwards E54414*                    CDC-128-B (Rev. 4/74)

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled mee during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help hir through this self-help program.

*M R Brewer*
_____
SPONSOR

Original: Central File
         Inmate                    Alcoholics/Narcotics Anonymous
         Sponsor                   Facility I, II, III, IV
                                   California State Prison-Solano

DATE   2004 (1ST, 2ND, 3RD, 4TH QUARTER)                    GENERAL CHRONO

---

NAME AND NUMBER *Edwards ES4444 13-A 2L*            CDC-128-B (Rev. 4/74)

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above names Inmate is participating in the Alcoholics/Narcotics Anonymous Program, and has attended regularly scheduled meetin during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himse through this self-help program.

_____
SPONSOR

Original: Central File
         Inmate                    Alcoholics/Narcotics Anonymous
         Sponsor                   Facility I, II, III, IV
                                   California State Prison-Solano

DATE   2004 (1ST, 2ND, 3RD, 4TH QUARTER)                    GENERAL CHRONO

NAME/CDC# ~~EDWARDS    E54444~~    HOUSING: ~~13-A-2L~~

## RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named inmate is participating in the Alcoholics/~~Narcotics~~ Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

QTR

1ST JAN-MAR

2ND APR-JUN    2005

3RD JUL-SEP
4TH OCT-DEC

EDDIE MUNOZ- SPONSOR X5561
Alcoholics/Narcotics Anonymous

Facility I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

CDC-128-B (Rev. 4/74)

---

NAME/CDC# E54444 EDWARDS    HOUSING: 13-A-2L

## RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named inmate is participating in the Alcoholics/~~Narcotics~~ Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

QTR

1ST JAN-MAR

2ND APR-JUN    2005

3RD JUL-SEP
4TH OCT-DEC

SPONSOR    EDDIE MUNOZ  X5561
Alcoholics/Narcotics Anonymous

Facility I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

CDC-128-B (Rev. 4/74)

---

NAME/CDC# E54444 EDWARDS    HOUSING: 13-A-2L

## RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named inmate is participating in the ~~Alcoholics/~~Narcotics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

QTR

1ST JAN-MAR

2ND APR-JUN    2005

3RD JUL-SEP
4TH OCT-DEC

SPONSOR    EDDIE MUNOZ X5561
Alcoholics/Narcotics Anonymous

Facility I, II, III, IV
California State Prison Solano

CDC-128-B (Rev. 4/74)

NAME/CDC# *Edwards, K  E54444* HOUSING:

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named inmate is participating in the Alcoholics/~~Narcotics~~ Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

| QTR | |
|---|---|
| 1ST JAN-MAR | |
| 2ND APR-JUN | 2005 |
| 3RD JUL-SEP | |
| 4TH OCT-DEC | |

EDDIE MUNOZ – SPONSOR X5561
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

CDC-128-B (Rev. 4/74)

NAME/CDC# *Edwards, K. E54444*    HOUSING:

RE: PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named inmate is participating in the ~~Alcoholics~~/Narcotics Anonymous Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through this self-help program.

| QTR | |
|---|---|
| 1ST JAN-MAR | |
| 2ND APR-JUN | 2005 |
| 3RD JUL-SEP | |
| 4TH OCT-DEC | |

EDDIE MUNOZ – SPONSOR X5561
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

CDC – 128-B    AA                                                      State of California

Name:  **EDWARDS**              CDC#: **E54444**      Housing: FAC 3

RE:    **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ALCOHOLICS/NARCOTICS ANONYMOUS Program, and has attended regularly scheduled meetings during the past (3) months. During his attendance he has been an active participant and has shown an honest desire to help himself through his self-help program.

| QTR | |
|---|---|
| 1ST Jan – Mar | |
| 2nd Apr – Jun | 2006 |
| 3rd. Jul – Sep | |
| 4th Oct – Dec | |

D. ORROCK– SPONSOR (X- 5861)
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

CDC – 128-B    NA                                                    State of California

Name:    **EDWARDS**              CDC#:  **E54444**        Housing: FAC 3

RE:        **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ALCOHOLICS/NARCOTICS ANONYMOUS Program, and has attended
regularly scheduled meetings during the past (3) months.  During his attendance he has been an active participant and
has shown an honest desire to help himself through his self-help program.

QTR
1ST Jan – Mar
2nd Apr – Jun      **2006**
3rd Jul – Sep
4th Oct – Dec

D. ORROCK– SPONSOR (X- 5861)
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

---

CDC – 128-B    **AA**                                               State of Californ

Name:    **EDWARDS**              CDC#:  **E-54444**      Housing:  **FACILITY 3**

RE:        **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ALCOHOLICS/NARCOTICS ANONYMOUS Program, and has attende
regularly scheduled meetings during the past (3) months.  During his attendance he has been an active participant an
has shown an honest desire to help himself through his self-help program.

QTR
1ST Jan – Mar
2nd Apr – Jun  2006
3rd Jul – Sep
4th Oct – Dec

E.R. MUNOZ– SPONSOR (X- 5561)
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

---

CDC – 128-B    **NA**                                               State of California

Name:    **EDWARDS**              CDC#:  **E-54444**      Housing:  **FACILITY 3**

RE:        **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ALCOHOLICS/NARCOTICS ANONYMOUS Program, and has attended
regularly scheduled meetings during the past (3) months.  During his attendance he has been an active participant and
has shown an honest desire to help himself through his self-help program.

QTR
1ST Jan – Mar
2nd Apr – Jun      **2006**
3rd Jul – Sep
4th Oct – Dec

E.R. MUNOZ– SPONSOR (X- 5561)
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

NA

State of California

Name:  **EDWARDS**    CDC#:  **E-54444**    Housing:  FACILITY 3
902

RE::    **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ~~ALCOHOLICS~~/NARCOTICS ANONYMOUS Program, and has attended regularly scheduled meetings during the past (3) months.  During his attendance he has been an active participant and has shown an honest desire to help himself through his self-help program.

QTR
1ST Jan – Mar
2nd Apr – Jun    **2006**
3rd Jul – Sep
4th Oct – Dec

E.R. MUNOZ– SPONSOR (X- 5561)
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

---

CDC – 128-B    **AA**

State of California

Name:  **EDWARDS**    CDC#:  **E-54444**    Housing:  FACILITY 3

RE:    **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ALCOHOLICS/~~NARCOTICS~~ ANONYMOUS Program, and has attended regularly scheduled meetings during the past (3) months.  During his attendance he has been an active participant and has shown an honest desire to help himself through his self-help program.

QTR
1ST Jan – Mar
2nd Apr – Jun    **2006**
3rd Jul – Sep
4th Oct – Dec

E.R. MUNOZ– SPONSOR (X- 5561)
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

---

CDC – 128-B    **NA**

State of California

Name:  **EDWARDS**    CDC#:  **E-54444**    Housing:  FACILITY 3

RE:    **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ~~ALCOHOLICS~~/NARCOTICS ANONYMOUS Program, and has attended regularly scheduled meetings during the past (3) months.  During his attendance he has been an active participant and has shown an honest desire to help himself through his self-help program.

QTR
1ST Jan – Mar
2nd Apr – Jun    **2006**
3rd Jul – Sep
4th Oct – Dec

E.R. MUNOZ– SPONSOR (X- 5561)
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

CDC – 128-B   **AA**                                                    State of California

Name:   **EDWARDS**              CDC#:  **E-54444**        Housing:  FACILITY 3

RE:        **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ALCOHOLICS/~~NARCOTICS~~ ANONYMOUS Program, and has attended regularly scheduled meetings during the past (3) months.  During his attendance he has been an active participant and has shown an honest desire to help himself through his self-help program.

**QTR**
1ST Jan – Mar
2nd Apr – Jun      **2006**
3rd Jul – Sep
(4th Oct – Dec)

E.R. MUNOZ– SPONSOR (X- 5561)
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

                                    **GENERAL CHRONO**

---

CDC – 128-B   **AA**                                                    State of California

Name:   **EDWARDS**              CDC#  **E-54444**        Housing:  FACILITY 3

RE:        **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ALCOHOLICS/~~NARCOTICS~~ ANONYMOUS Program, and has attended regularly scheduled meetings during the past (3) months.  During his attendance he has been an active participant and has shown an honest desire to help himself through his self-help program.

**QTR**
(1ST Jan – Mar)      2007
2nd Apr – Jun
3rd Jul – Sep
4th Oct – Dec

E.R. MUNOZ– SPONSOR (X- 6621)
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

                                    **GENERAL CHRONO**

---

CDC – 128-B   **NA**                                                    State of California

Name:   **EDWARDS**              CDC#:  **E-54444**        Housing:  FACILITY 3

RE:        **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ~~ALCOHOLICS~~/NARCOTICS ANONYMOUS Program, and has attended regularly scheduled meetings during the past (3) months.  During his attendance he has been an active participant and has shown an honest desire to help himself through his self-help program.

**QTR**
(1ST Jan – Mar)      2007
2nd Apr – Jun
3rd Jul – Sep

E.R. MUNOZ– SPONSOR (X- 6621)
Alcoholics/Narcotics Anonymous
Facility I, II, III, IV
California State Prison Solano

CDC – 128-B   **NA**                                                State of California

Name:   **EDWARDS**              CDC#:   **E54444**        Housing: **13-N-5-U**

RE:      **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the NARCOTICS ANONYMOUS Program, and has attended regularly
scheduled meetings during the past (3) months.  During his attendance he has been an active participant and has
shown an honest desire to help himself through his self-help program.

**QTR**
1ST Jan – Mar
2nd Apr – Jun      2007
3rd Jul – Sep
4th Oct – Dec

E.R. MUNOZ – SPONSOR (X- 6621)
Alcoholics/Narcotics Anonymous
FACILITY I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

---

CDC – 128-B   **AA**                                                State of California

Name:   **EDWARDS**              CDC#:   **E54444**        Housing: **13-N-5-U**

RE:      **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ALCOHOLICS ANONYMOUS Program, and has attended regularly
scheduled meetings during the past (3) months.  During his attendance he has been an active participant and has
shown an honest desire to help himself through his self-help program.

**QTR**
1ST Jan – Mar
2nd Apr – Jun      2007
3rd Jul – Sep
4th Oct – Dec

E.R. MUNOZ – SPONSOR (X- 6621)
Alcoholics/Narcotics Anonymous
FACILITY I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

CDC - 128-B   NA                                                          State of California

NAME:  EDWARDS                    CDC#:   E54444          Housing:   13-N-5-U

RE:            PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named inmate is participating in the NARCOTICS ANONYMOUS Program, and has attended regularly
scheduled meetings during the past (3) months.  During his attendance he has been an active participant and has
shown an honest desire to help himself through his self-help program.

## Qtr

1st Jan -Mar
2dn Apr - Jun
3rd Jul - Sep   2007
4th Oct - Dec

E.R.  MUNOZ  SPONSOR (X- 6621)
Alcoholics/Narcotics Anonymous
FACILITY I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

CDC - 128-B    NA                                                        State of California

                                                                        State of California

CDC - 128-B    AA

NAME:  EDWARDS                    CDC#:   E54444          Housing:   13-N-5-U

RE:            PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM

The above named inmate is participating in the ALCOHOLICS ANONYMOUS Program, and has attended
regularly scheduled meetings during the past (3) months.  During his attendance he has been an active participant
and has shown an honest desire to help himself through his self-help program.

## Qtr

1st Jan -Mar
2dn Apr - Jun
3rd Jul - Sep   2007
4th Oct - Dec

E.R.  MUNOZ  SPONSOR (X- 6621)
Alcoholics/Narcotics Anonymous
FACILITY I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

CDC - 128-B    **NA**                                                    State of California

**NAME:  EDWARDS**              **CDC#:  E54444**              **Housing:  13-N-5-U**

RE:        **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the  NARCOTICS ANONYMOUS Program, and has attended regularly
scheduled meetings during the past (3) months.  During his attendance he has been an active participant and has
shown an honest desire to help himself through his self-help program.

**Qtr**

1st Jan -Mar

2dn Apr - Jun

3rd Jul - Sep

| 4th Oct - Dec    2007 |
|---|

E.R.  MUNOZ
Alcoholics/Narcotics Anonymous
FACILITY I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

---

CDC - 128-B    **AA**                                                    State of California

**NAME:  EDWARDS**              **CDC#:  E54444**              **Housing:  13-N-5-U**

RE:        **PARTICIPATION IN SIGNIFICANT SELF-HELP PROGRAM**

The above named inmate is participating in the ALCOHOLICS  ANONYMOUS Program, and has attended
regularly scheduled meetings during the past (3) months.  During his attendance he has been an active participant
and has shown an honest desire to help himself through his self-help program.

**Qtr**

1st Jan -Mar

2dn Apr - Jun

3rd Jul - Sep

| 4th Oct - Dec    2007 |
|---|

E.R.  MUNOZ
Alcoholics/Narcotics Anonymous
FACILITY I, II, III, IV
California State Prison Solano

**GENERAL CHRONO**

# Certificate of Completion

This Certificate verifies that

## Kennedy Edwards E-54444

has successfully completed in the correspondence course
in

### Anger Management

Creative Options
P.O. Box 808
Lyons, OR 97358

5/27/08
_____
Date

_Billie Walter_
_____
Billie Walter, Director

### PSYCHIATRIC EVALUATION FOR THE BOARD OF PRISON TERMS

**August 1993 Calendar**
**Richard J. Donovan Correctional Facility**
**August 12, 1993**

This is the first Board of Prison Terms report on this inmate. It is based on an 80 minute interview with the inmate for the purposes of this report only, as well as a thorough review of the inmate's Central and Medical files.

Mr. Edwards is a 29 year old Black man who was born and raised in South Central Los Angeles in an intact family. He has three older brothers and two older sisters, none of whom, by his report, have had any criminal involvement. He described his upbringing as positive, although he grew up poor and his parents both worked very hard to support the family. He described that during his junior high school years, because of immaturity and wanting to be part of a crowd, he began drinking alcohol, as well as participating in stealing liquor from stores and in burglaries with his friends. He related that he was never caught. The inmate went on to relate that these illegal activities diminished significantly during high school, although he continued to drink and smoke marijuana. He went on to further relate a relatively stable period in his life from 1984 - 1988 when he worked steadily and lived with his parents. He worked to care for a son that he had fathered during high school and according to the inmate he at times had a supervisory duties. There are no criminal records or arrests during this period of time, until the inmate began to be involved with drug sales of cocaine in 1988. He is currently committed for second degreee murder. The inmate denied that he had been under any kind of psychiatric treatment in the past. There were also no past independent indicators of any psychiatric problems.

As supported by the institutional records, the inmate has done quite well and adjusted to his institutional placement. There are no records of disciplinary problems, and he has received good work reports, as well as being called an excellent student in vocational airframing. Numerous chronos document the inmate's involvement since 1992 in self help activities including the Life Plan Recovery for Substance Abuse, Alternatives to Violence, and Breaking Barriers. He has also more recently participated in the Facilitators Program to the Alternatives to Violence Program.

EDWARDS, K    E-54444    2-239U    (1)   RJDCF-SD   (sh)

 INMATE COPY

During the interview, the inmate was cooperative and did not appear to be evasive about answering questions. He was able to discuss fully his life and his past mistakes. He was able to discuss intelligently and insightfully the factors which lead up to the commission of his crime without trying to minimize his illegal involvement in drug sales prior to the committing offense. He spoke at length about his commitment to "make up to his community" by helping youth understand how to avoid the difficulties he has. In discussing the crime, he expressed regret and remorse that the victim had been killed. He was openly able to relate that his intentions had been to hurt the man who he had perceived as someone who had interfered in his business and needed to be taught a lesson. He denied vehemently that he intended to kill the man. The inmate pointed out that he was not the person who pulled the trigger and showed a tendency to regret his past actions not purely because they were wrong, but because of the difficult consequences that had befallen him. The inmate's motivation for change appears to be good, given his push for self improvement. If the inmate's background information is accurate, he appears to have come from a stable background and should have a good and stable foundation from which to work toward remaining crime free in the future. During the interview, the inmate did not present any depression or psychotic symptoms or any other indicators that he is suffering from a major psychiatric disorder.

Diagnostic Impression:
Axis I:    History of Alcohol and Cannabis Abuse, in apparent remission
Axis II:   No diagnosis
Axis III:  None

The above diagnostic impressions are supported by the inmate's past report of difficulties with alcohol and marijuana, and his identification with the substances as a problem for him. Again, as related above, there was no other evidence to support any other kind of psychiatric diagnosis in this inmate. Although one might suggest that by inmate report, there is a possibility of an antisocial personality disorder. I do not believe there is sufficient information at this time to make that diagnosis.

Based on the above data, I offer the following psychiatric/legal opinions.

EDWARDS, K        E-54444     2-239U     (2)    RJDCF-SD   (sh)

Review of the data does not support that there was any direct relationship between the inmate's alcohol and marijuana abuse and the commission of the crime. This is supported by the inmate's own description of the problem and the crime's direct relationship to the inmate's illegal business actions. In other words, even without the factors of the alcohol and marijuana, the committing offense was very likely to have occurred given the illegal activities in which the inmate was involved.

The issue of psychiatric improvement will be addressed in regards to the diagnosis of substance abuse. The inmate has shown great improvement in that he has apparently remained alcohol and substance free and has participated in some substance abuse programming to deal with this issue. In a less controlled setting, such as return to the community, I do not believe I have enough information to offer a definitive opinion as to whether he could maintain his gains. Certainly, if we accept the inmate's sincerity and good record so far, it would be expected that he should be able to continue to refrain from the use of substances in the future.

If the inmate is to be retained in the institution he should be encouraged to continue therapeutic activities that would help to ensure him from remaining drug free, such as AA or NA. There would be no other psychiatric recommendations.

If the inmate were to be paroled or released, I would offer my opinions on the following factors. First, in regards to violence potential outside a controlled setting, it would appear that he was at least at an average violence potential at the time of his commitment. Given that he has remained discipline free and seems to be working toward improving himself, I would opine that there has been some decrease in this violence potential. If he were to be paroled, at most I believe the inmate would need some encouragement to continue AA, NA or some other substance abuse maintenance program.

Recommendations to the Classification Committee:   None.

*James W. Gaudet, M.D.*

JAMES GAUDET, M.D.
Staff Psychiatrist

EDWARDS, K        E-54444        2-239U        (3)   RJDCF-SD   (sh)

## CALIFORNIA STATE PRISON - SOLANO
### Vacaville, California

### PSYCHOLOGICAL EVALUATION
### FOR THE BOARD OF PRISON TERMS

**NAME: Edwards, Kennedy**
**CDC#: E 54444**

The following is approximately the 2nd evaluation for the Board of Prison Terms of first termer, inmate Kennedy Edwards, CDC# E 54444. Mr. Edwards was interviewed on 9/29/98 for one hour . His central file and medical record were reviewed for this report.

## Background Information

Mr. Edwards is serving a fifteen year to life sentence for second degree murder. On 9/14/89 he and a crime partner went to the apartment of the victim, who was shot by his crime partner after opening the door. The victim later died after identifying his assailants. When asked about the crime, Mr. Edwards paused in silence and then said, "It was never intended for Mr. Chavez to die. We only intended to go up there and get what I thought belonged to me. We went up and a man died from it. I'm distraught about it. I have remorse. I understand now what I have done." He continued, "Chavez opened the door and grabbed Garcia (crime partner). They both grabbed for the weapon and it discharged into Chavez' chest. I pled guilty to my role in the incident."

Mr. Edwards denies a juvenile arrest record. He was 25 at the time of this crime and is now 34 years old. He had a series of arrests for possession of controlled substances and possession for sale in 1988 and 1989 prior to this incident. The probation report indicated that the victim owed Mr. Edwards for cocaine he stole from him. It is notable that there were no arrests until age 24 or 25. He credited family stability with keeping him out of trouble during that time. He worked and did not do or sell drugs. He said, "It's my fault. No one else's. They tried the best for me to go the right way. We went to private schools, went to church. They tried the best for us. It was my own stupidity. I had opportunities and did not take them. I went with the wrong crowd of people. I just went wrong." He has only one CDC 115 from 1993 for "over-familiarity" and no history of violence or drug and alcohol use in the prison.

Mr. Edwards lives in a dorm setting now because he has zero points. He said, "This is excellent. If I had my old attitude I'd still be in a Level IV with a hundred points. I learned at the beginning that I'd have to change." He continued, "In a level IV you go to your cell to avoid problems. Here you have to mingle with people." He commented further, "I try to diffuse situations. It's worked out really well. There are situations that come to you. They are trials. You do get tested. It's how you deal with it when it comes. I try to diffuse situations before it occurs. You don't raise your voice. you walk away, whatever you need to do to regain composure if necessary." He concluded, "My only objective is to get a date and do what I need to do to get out of here."

INMATE COPY

A previous probation report indicated a cocaine habit of about 9 months in duration, but Mr. Edwards denied this. He said that he sold cocaine but did not use it. He admitted to smoking "a lot of marijuana and drinking a lot of alcohol." He believed that he may have lied about the cocaine habit to get a lesser charge. He said, "Back then I lied so much." Regarding alcohol today he said, "I'd rather be alone and clean and sober than be around a crowd of people and be loaded. They think they're the "cool people" if they use drugs or alcohol. That's just what everyone did." There are numerous chronos attesting to participation in AA from 1995 through the present.

Mr. Edwards has programmed in numerous ways. He has picked up vocational training in fender and auto body repair. He is a clerk at the moment in education. He is applying for the lens crafter training program at CSP-S. As noted above he attends AA. He has also participated in anger management classes and VORG. He spoke at some length about how he was affected by the testimony of victims of crime. He said he hopes to get involved with some sort of service programs for victims when he gets paroled. He also expressed a desire to get into the Sequoia Institute automotive training program for a year when he paroles.

Mr. Edwards grew up in Southern California. He has two older half- brothers and one older brother, plus two younger sisters. His parents worked all their lives. As noted above they put Mr. Edwards and siblings through private schools. He is in regular contact with his family in the LA area. His father has hypertension and is 83, his mother has diabetes and is 78. He has a son in LA who lives with the boys mother. He had some visits with his son when he was incarcerated at Tehachapi.

## Mental Status

Mr. Edwards was oriented to time, person and place. He has no obvious problems with memory or thinking. He was upbeat, positive and presented himself as motivated. He appeared in good health. He has insight into his actions and exercised good judgement in the interview. His mood was appropriate. He made easy eye contact. He did not appear guarded or withholding of information.

## Diagnostic Impressions

Axis I: Poly-substance abuse by history

Axis II: 799.9 Diagnosis deferred (Some anti-social traits.)

Axis III: Heart murmur

Axis IV: Minimal stress from incarceration.

Axis V: Global Assessment of Functioning Scale: Currently 85.

## Recommendations

Mr. Edwards has programmed well and made some obvious changes in his life from the nine month to a year period in 1988 and 1989 when his crime spree began and ended with the instant offense. He posed an escalating degree of threat at the time of the crime, but that is greatly reduced. It is likely that the gains made (e.g. better self control, drug free, violence free) would hold if returned to the community. As such he is estimated to pose a minimal degree of threat based upon his performance of the last nine years. He does not exhibit psychological problems which would pose a threat to a successful parole.

Respectfully submitted,

Robert Wagner Ph.D.
Clinical Psychologist
License: PSY12185

**MENTAL HEALTH EVALUATION
FOR THE BOARD OF PRISON TERMS
MARCH 2002 CALENDAR
LIFER PROGRAM UNIT
CALIFORNIA STATE PRISON - SOLANO**

## I.    PSYCHOSOCIAL ASSESSMENT

**IDENTIFYING INFORMATION:** Mr. Kennedy Edwards is a 38-year-old, never married, Black first-termer, committed from Los Angeles County. He is serving a 15-to-Life sentence for Second Degree Murder.  He has a non-controlling offense for Possession of a Controlled Substance, committed on 5/6/88. He was on probation at the time of the instant offense, which occurred on 9/14/89. Mr. Edwards entered into CDC for his controlling crime on 5/7/90, and he arrived at CSP-Solano on 6/2/97.

Informed consent, including the limits of confidentiality, was provided. Mr. Edwards appeared to comprehend both the nature and purpose for the evaluation and he agreed to participate in the interview. The interview consisted of one session on 1/16/02, lasting approximately ninety minutes. The prison Central file and Unit Health Record were reviewed.

**DEVELOPMENTAL HISTORY:** Mr. Edwards' developmental history seems to be unremarkable. There were no indications of prenatal/perinatal concerns, birth defects or serious medical problems. Developmental milestones reportedly were attained roughly within expected time periods, and he recovered adequately from all the normal childhood illnesses. The available information reflects that Mr. Edwards did not experience any serious adjustment difficulties during his childhood.

**EDUCATION:** Mr. Edwards completed 12 years of formal education, and reported taking some college classes at Compton College. He indicated that he attended a private religious school from 1st through 8th grade, and that his mother worked at the school in order to help pay for his tuition. He described his elementary school years as essentially unremarkable, and that he made average grades while also playing sports, specifically basketball.  In Junior High school, the inmate did not participate in extracurricular activities, but continued to make average grades.  By the time he entered high school, the inmate was focused primarily on issues of acceptance by certain peers, and he began to use alcohol and marijuana, like the people with whom he sought to affiliate.  Use of marijuana began at about age 15, and alcohol came soon after.  The inmate reportedly maintained average grades, and noted that his favorite subjects were Math, Government, and Physical Education. He stated that he was able to graduate with his class in 1982.

While incarcerated the inmate obtained a GED in 9/94, and explained that he did so because the prison was unable to obtain a verification of his high school graduation. Vocationally, the inmate completed Auto Body and Fender Repair on 8/9/95, and Vocational Carpentry in 12/99, and is considered employable in these fields. He has attended both AA and NA self-help substance abuse support groups at various institutions between 1991 and 2001. He has also completed other self-help seminars/workshops, including Breaking Barriers, Alternatives to Violence (Basic and Advanced), Life Plan for Substance Abuser, Non-Violent Conflict Resolution, Men's Violence Prevention, Parenting, and is involved in the Victim-Offender Reconciliation Group (VORG). He is currently working in Vocational Lens Lab, with generally satisfactory work supervisor progress reports. Prior work reports indicate above average performance in his job.

**FAMILY HISTORY:** Mr. Edwards is the 4th of 6 children (3 older brothers, 2 younger sisters) born in Los Angeles to the currently intact union of his biological parents. The inmate described his early childhood, and relationship with his parents, as "a normal home." Of his parents, he stated, "They (parents) taught us values, religion."

There is no known positive family history for emotional problems, legal entanglements, or significant substance abuse. The inmate noted, "I am the only one in the family who ever had legal problems. I guess I am the black sheep in that way." Mr. Edwards reported that two of his older brothers went into the military (one during Vietnam), and that his father served in the military during World War II. His parents are both still living together in Los Angeles. His father is age 75, retired, and with a history of high blood pressure. His mother, age 73, is also retired and struggles with a diabetic condition. Three of the inmate's siblings continue to reside in California.

His family upbringing appears to have been relatively unremarkable, and the inmate described his family as historically being "close knit." There were no overt reports or indications of child abuse or neglect.

Mr. Edwards reported that he has ongoing contact with his family, including his parents and three of his siblings, and with his 12-year-old son, Marcus. The inmate indicated that his family is emotionally and financially supportive, in that his mother and father have indicated that they want him to return to their home upon his release.

**PSYCHOSEXUAL DEVELOPMENTAL:** Mr. Edwards entered into puberty at about the age of 13. He identified himself as exclusively heterosexual. His first full sexual experience was at age 15, with a 14-year-old girl as his partner. He estimated that he has had sexual relations with "about twenty" different women, most of whom (about 15) were essentially "one night stands." He denied ever going to prostitutes for sexual activities. He reported that he was successfully treated for sexually transmitted diseases (gonorrhea and "crabs") on two occasions. He indicated that his longest relationship was about 9-12 months with the mother of his son, while other relationships lasted only a few months.

**MARITAL/RELATIONSHIP HISTORY:** Mr. Edwards has never been married. He has a 12-year-old son by a woman with whom he had a relationship for almost a year. He continues to stay in regular contact with his son, who is residing with his mother and stepfather. The inmate reported that he had talked to both of his son's parents, to clear the way for ongoing communication, which has taken the form of both phone calls and letters. The inmate stated that he never paid child support because "I can't," but does periodically send money to his son, the most recent being $50 sent about 8 months ago.

**MILITARY HISTORY:** Mr. Edwards has no record of military service.

**EMPLOYMENT/INCOME HISTORY:** According to the two Probation Officer's Reports (PORs) dated 5/8/90 and 1/23/90, and the inmate, his employment has been as a newspaper stuffer, a security guard, and a salesman. The POR described the inmate's employment stability over the previous five years as "poor-fair." His longest period of steady employment was when the inmate reportedly began working for the Los Angeles Times for about three years on a full time basis shortly after graduating from high school. At the time of the index offense, the inmate was residing in the home of his parents in Los Angeles, where he had lived all of his life. Mr. Edwards has also sold illegal substances (primarily cocaine) as a way to augment his income.

**SUBSTANCE ABUSE HISTORY:** Mr. Edwards reported that he primarily used alcohol and marijuana, but the POR noted that he acknowledged a nine-month cocaine habit just prior to his involvement in the instant offense. He noted that he started using alcohol and marijuana during his junior high/high school years (about age 15), and that his use of these substances continued on up through his arrests for the instant offense. As an adult, the inmate has three arrests for possession of controlled substance/sale, one of which (5/6/88) resulted in a prison sentence of two years on 3/1/90, and is the non-controlling case in the inmate's term of commitment.

The inmate used to consider himself to have a problem with substance abuse, but "not anymore. I am a recovered alcoholic and addict." He later, after questioning, amended his explanation to being a "recovering" alcoholic and addict. He noted that he had been in AA and NA for about 10 years while incarcerated, and while he indicated that he was working the steps, he was doing so without a sponsor or a sequentially planned course of study. "Right now I am working on step four, but I also work on my attitudes, my emotions, my behaviors – my whole lifestyle."

**MENTAL HEALTH AND MEDICAL HISTORY:** According to his record, it appears that Mr. Edwards has never formally utilized mental health services, either prior to or following his incarceration. His involvement with mental health services in prison is relegated to specific evaluations for the Board of Prison Terms hearings. At these times, he has been primarily diagnosed with Polysubstance Abuse, by history (9/29/98), and a History of Alcohol and Cannabis Abuse, in apparent remission (8/12/93). The most recent evaluation also noted the inmate's history of a Heart Murmur on Axis III, with an Axis V Global Assessment of Functioning (GAF) estimated at 85, suggesting absent or minimal psychiatric related symptoms, with good functioning in all areas.

Health problems, other than a history a heart murmur that requires no medication, were essentially denied by the inmate. The Unit Health Record noted a recent amputation to the inmate's tip of his left middle finger (5/01), and left exophthalamus (increased fat around the left eye muscles).

**PLANS IF GRANTED RELEASE:** Mr. Edwards stated that, were he to be granted parole, his plans are to return to the home of his parents in Los Angeles, and to help take care of them in their older years. He indicated his belief that he had "multiple skills" and that he could find some employment fairly quickly. He noted that he has completed vocational programs in auto body, carpentry, and as an optometrist, and that this training had equipped him for appropriate jobs in the community.

The inmate stated that his future goals are to have a good job, a good home, and to be a good father to his son. He verbalized, "I will live life on life's terms. I want to live a normal, law-abiding life."

## II. CLINICAL ASSESSMENT

**CURRENT MENTAL STATUS:** Mr. Edwards' mental status was essentially within normal limits. He was neatly groomed and dressed and displayed appropriate personal hygiene. His demeanor was initially reticent and soft-spoken, but responsive and cooperative. Affect was grossly appropriate to cognitive content. Cognition and sensorium were intact. There were no signs of disturbance in thought, mood, affect, ideation, or perception.

Despite his acknowledgment that he was a drug dealer, the inmate noted that he does not consider himself to be a criminal, and described himself as "I'm not an all bad person. I find the good in my life. Be creative, think better, stay drug free, and be responsible and accountable for my actions." He described himself as having changed while in prison, such that now he is "more mature, I have the bigger picture. I learned about empathy for victims, and learned about forgiveness." He noted his belief that he has replaced many of his vices with religion. He stated, "I have God in my life, who teaches me self control, including over flesh and desires. Now I cling onto Christ." He takes pride in his ability "to complete something that I start, like the MVP program."

**DIAGNOSTIC IMPRESSION:**

| Axis I:   | 305.90<br>V71.01 | Polysubstance Abuse (cannabis, alcohol, cocaine), by history.<br>Adult Antisocial Behavior, by history. |
|-----------|---------|---------------------------------------------------------------|
| Axis II:  |         | Antisocial Personality features.                              |
| Axis III: |         | Hx of heart murmur, S/P amputation of LMF (5/01), per file.    |
| Axis IV:  |         | Incarceration.                                                |
| Axis V:   |         | GAF: 88.                                                       |

**CRIMINAL HISTORY/REVIEW OF LIFE CRIME:** Mr. Edwards has no record of a juvenile criminal history, according to the POR, and he admitted no prior juvenile arrests. He acknowledged several behaviors during his childhood and adolescence, which included lying, fighting, and witnessing violence. He denied other behavioral activities such as stealing, curfew, vandalism, truancy, runaway, arson, burglary, animal cruelty, bullying peers, or being the victim of parental abuse or neglect.

According to the POR (dated 5/8/90), as an adult the inmate was first arrested on 5/6/88 (age 24) for Possession of Controlled Substance for Sale. This case serves as the non-controlling case, and the inmate was eventually sentenced to two years in prison on 3/1/90. His next arrest was less than a year later, on 8/3/89 for Possession of Controlled Substance, but there is no known disposition. The POR noted that the inmate claimed arresting officers put drugs in his pocket, and that he was later released. He was again arrested on 11/2/89 for Possession of Controlled Substance for Sale, but prosecution was suspended and the inmate was granted probation on 2/21/90. The inmate was on probation at the time of the instant offense.

According to the POR, on 9/14/89 at a little before 2:00 a.m., the inmate and four crime partners approached the victim's apartment, where the female crime partner knocked on the door and requested entrance. The victim opened the door, and "was shot once in the chest area, immediately after he opened the door of his apartment . . . He was taken for medical treatment but succombed (sic) to his injuries on October 3, 1989. ...Subsequent police investigation indicated that defendant and the co-defendants discussed killing victim or getting money from him after he reportedly had stolen cocaine from defendant Kennedy Edwards." The police later determined, after interviewing the victim prior to his death, that the "shooter" was a co-defendant and not Mr. Edwards.

According to the inmate, "I was a drug dealer and someone stole some drugs from my car. I heard that it was done by the victim. I went back to confront the victim about my drugs, with one guy who brought a gun. They (victim and co-defendant) got into a struggle for the gun, and it discharged. It was never supposed to happen that way. I knew he (co-defendant) had a gun, but I didn't think he'd use it. I didn't have a gun with me at that time. I had one, but not with me. I quit carrying it in my car, in case I ever got pulled over."

The inmate admitted that he had been smoking marijuana and drinking alcohol prior to his involvement in the crime. He explained, "I had been a drug dealer, but I had never had to confront anybody before. My initial reaction was to just go get it (money or drugs). (Q) My co-defendant knew the victim, but I did not know him at all. Had never seen him before. I was in a new territory for me."

Of the murder, the inmate stated, "I'm responsible. I did this crime. I just want to be at peace, do a positive program. I may never get out, but if I do, I will live a productive and

law-abiding life." This is very different from his early incarceration, when he denied involvement in the murder (ISRS, 6/18/90).

**RISK FOR VIOLENCE:** A structured empirical approach was utilized in assessing future risk for violence. Current research supports this approach as being the most reliable and valid method for predicting future violence. Two separate measures were employed.

On the Psychopathy Check List – Revised, (PCL-R), a measure of static risk factors, Mr. Edwards scored within the *low* range of severity. As illustrated above, he had a steady work history, lived at the same residence all his life, and was employed at the time of the index offense. Additionally, he has no juvenile offenses, and displays a decreased criminal versatility. On the Violence Risk Appraisal Guide (VRAG), an actuarial measure, the inmate scored in the *indeterminate* range of violence risk. This score is associated with a 17-35% chance of a violent reoffense within seven years, and a 31-48% risk of a violent reoffense within ten years, were the inmate to be released to the community at this time.

There are no signs of a mental disorder, either historically or currently. His risk for violent or harmful behavior is exacerbated by the use/abuse of drugs or alcohol, and in association with his antisocial maladaptive behavioral characteristics. Substance use has been a steady component in the inmate's history, both in personal use and trafficking to others as a source of illegal income. His long-term involvement in substance abuse treatment programs is encouraging, and he is able to accurately recite some of the "steps" in the program, even though he is not actively involved in a "step" group.

The inmate has accumulated only two CDC-115 disciplinary infractions, one on 12/11/93 (Overfamiliarity with staff), and the most recent on 2/11/99 (Theft, reduced from Serious to Administrative Level). Mr. Edwards appears to have a superficial appreciation of the lifelong nature of his substance abuse problem, and currently seems ambivalent about seeing himself as being at continued risk for substance abuse. Nonetheless, due to the nature of his proclivity for drug and alcohol use, he will remain at a higher risk for relapse than will people in the general population.

**CONCLUSION:** The index offense presents as a crime of instrumental violence, and was committed in a concerted effort with others to confront the victim about allegedly taking drugs from the car of the inmate. The inmate had no history of violent behavior, although he was admittedly involved for years in the sale and distribution of drugs, a potentially dangerous but lucrative endeavor. The inmate now clearly offers to take responsibility for his part in the death of the victim, although he did not actually pull the trigger. He has been involved in numerous self-help and self-improvement programs, and has made himself employable in several fields of work. The inmate should continue to stay active in substance abuse programming, particularly if he can obtain a sponsor and begin to formally complete the 12-step program. His continued participation in the VORG program is also encouraged.

The inmate has been disciplinary free (serious) for now over eight years, and is apparently an able and reliable worker in his various jobs or programs. He does not currently present as a candidate for any noteworthy change as a result of psychosocial intervention. Ongoing education, and involvement in self-help or introspective treatment groups when he is ready, is suggested and encouraged.

_____                    January 22, 2002

Steven Walker, Ph.D.
Forensic Psychologist
CA License # PSY-11894
Lifer Program/Forensic Services Unit
Health Care Services Division
California Department of Corrections

INMATE COPY

**CALIFORNIA STATE PRISON – SOLANO**
**Vacaville, California**

**PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PAROLE HEARINGS**

**PSYCHOSOCIAL ASSESSMENT**

I    **Identifying Information**

This is a psychological evaluation conducted solely for the Board of Parole Hearings for the inmate Mr. Kennedy Edwards, a 41 year old African American male, who has an upcoming third subsequent Board Hearing. Mr. Edwards is incarcerated for PC 187 Murder 2nd Degree, which occurred on September 14, 1989. Mr. Edwards was incarcerated for this offense on May 7, 1990, with a life term of 15 years to life. Mr. Edwards has been incarcerated for approximately 16 years. The information for this Board of Parole Hearings evaluation was obtained from a review of Mr. Edwards' central file, a review of his medical file, and a clinical interview with Mr. Edwards on the date of January 16, 2006.

II    **Background Information:**

A review of Mr. Edwards initial Probation Officer's Report indicates that the circumstances of his commitment offense involved Mr. Edwards and four crime partners approaching the victim's apartment and shooting to death the male victim who had reportedly stolen cocaine from Mr. Edwards. Police investigation reports indicate that Mr. Edwards and his co-defendants had previously discussed shooting the victim or getting money from him after he had reportedly stolen cocaine from Mr. Edwards. However, a later determination indicates that the shooter was really Mr. Edwards's co-defendant and not Mr. Edwards.

Records also indicate that Mr. Edwards has a past arrest history of possession of Narcotics For Sale in addition to the instant offense. Mr. Edwards said to this examiner that he had been under the influence of a substance at the time of the instant offense, though he was quick to report that he takes full responsibility for his commitment offense. He does not blame his behavior on his substance abuse. He expressed to this examiner what appeared to be a genuine sense of remorse, shame, and guilt in regard to his commitment offense. His explanations in regard to his commitment offense were neither non-minimizing nor defensive. He made no effort to avoid responsibility. His statements were consistent with and did not vary from previous statements he has made, both to other evaluators as well as to the Board. Mr. Edwards stated that substance abuse prevention is a lifetime effort on his part and says that is why he has continued his participation since 1979 to the present. He said he has ongoing contact with a sponsor outside of prison and that he knows that he

must continue his participation in substance abuse programs. He stated that if he loses focus, "anyone can relapse, I know this."

## III    Family History

Mr. Edwards was born in Los Angeles, the fourth of six children born out of his parent's intact marriage. He described his early childhood and family life as growing up in a stable, normal family. He stated that his father was a hand finisher, his mother was a housewife. According to him, he was the only child out of six who ever had any problem with the legal authorities. Mr. Edwards stated that his father died in 2002 but his mother is 76 years of age and still alive and living in Los Angeles. He stated that he has three older brothers, two by his father who had his brothers out of wedlock, and he has a full brother, one adopted sister, and a full sister. He said all of his siblings live in Los Angeles. According to Mr. Edwards his family is very supportive of him and have indicated that they would be part of his parole plans.

## IV    Marital History

Mr. Edwards never married though he does have a 16 year old son through a casual relationship. He stated that he has a close relationship with his son and that he sends him money on his birthday and supports him in all of the positive endeavors that he is involved in.

## V    Military History

Mr. Edwards had never been in the military.

## VI    Education

Mr. Edwards stated that he graduated from Locke High School in Los Angeles in 1982. He stated that he attended private religious school from the first through the eighth grade and that his mother worked there to pay for both he and his siblings tuition. He stated that after he graduated from high school, he took college classes at Compton College. When he was incarcerated, he got a GED in 1984 because he couldn't find his high school transcripts. He stated that he has been involved in vocational programs in Auto body, Carpentry, Optical, FEMA, Certified Customer Specialist, and has completed the American Board of Certification for Opticians. He stated that he has also participated in vocational Air Framing.

VII    **Employment History**

Mr. Edwards reported that he worked at Thrifty Drugstore Warehouse as an order filler, at the Los Angeles Time as a paper stuffer, and at Wells Fargo Bank as a security guard, and he also worked as a salesperson for a sign company. He stated that he has been involved in the PIA Optical Program since 2002 and has acquired average to above average work reports.

VIII    **Substance Abuse History**

Mr. Edwards claimed that he abused alcohol and marijuana. He stated that he sold cocaine but he had never abused it. He stated that he had a prior prison term for the Possession of Cocaine.

IX    **Psychiatric and Medical History**

Mr. Edwards stated that he currently has a heart murmur, which is congenital but that it doesn't affect his job or activities. He stated that the only other health issue has been an amputation of part of his finger on his left hand, which was cut off by a router when he was in vocational carpentry. His health history is otherwise unremarkable. He stated that his psychiatric history is equally unremarkable and that he has no history of psychiatric problems, complaints, or treatment. Mr. Edwards was previously diagnosed by other examiners as having a Polysubstance Abuse by History, Alcohol and Cannabis Abuse, but no other psychiatric related illness. He appears to have good psychiatric functioning in all areas at the current time.

## CLINICAL ASSESSMENT

X    **Current Mental Status/Treatment Needs**

Mr. Edwards was seen by this examiner at the Dental Annex on January 16, 2006. He presented as a medium height, well nourished, African American male, of the stated age of 41 years. He was dressed appropriately in prison attire and adequately groomed. On the date of this evaluation he was alert and fully oriented in all spheres. He manifested no speech, thoughts, or behavior that would indicate a severe mental disorder. There were no abnormal ideation or delusional beliefs. Indeed, Mr. Edwards denied any hallucinations or abnormal ideation. He was able to focus and concentrate upon this evaluation easily with little effort. His mood was euthymic and his affect was unrestricted in range. Mr. Edwards appeared to be able to function well within the average expectable intelligence range.

XI     **Diagnosis (DSM IV-TR)**

| | | |
|---|---|---|
| AXIS I | V71.09 | No diagnosis on Axis I. |
| AXIS II | V71.09 | No diagnosis on Axis II. |
| AXIS III | | Heart murmur by report of inmate with no restrictions in activity. |
| AXIS IV | | Incarceration |
| AXIS V | | GAF = 90 |

XII     **Assessment of Dangerousness**

Mr. Edwards life crime was not related to any mental disorder though there was an indication that substance abuse may have played a marginal part or may have been an aggravating factor in his life crime. However, Mr. Edwards's life crime was likely the result of his lifestyle, personality characteristics, and/or poor impulse control. Subsequent to his incarceration he appears to have matured, has been discipline free for over six years, and during the course of his incarceration has never committed a violent act or attempt towards staff or other inmates. He has participated in a number of prosocial activities. He seems to have benefited from these prosocial activities in terms of acknowledgement of his substance abuse, and an understanding of the factors leading up to his commitment offense. He has expressed what appears to be a genuine sense of remorse for the victim and the victim's family. He accepts culpability and responsibility for his commitment offense. Clearly, he has developed a sustained level of impulse control. He has in effect demonstrated appropriate personal, social, and behavioral adjustments in this institutional setting. As such, there is a high reasonable probability that Mr. Edwards risk of dangerousness is lower than that of the average inmate incarcerated here at CSP Solano and consistent with the average inmate who has been paroled in the community with a similar commitment offense. If Mr. Edwards is to be offered a parole date a factor of his parole should include continued self help programming for substance abuse. Mental health issues do not appear to be an issue for this inmate.

Respectfully Submitted,

1/3/06

John T. Rouse, Ph.D.
PSY 11264
Forensic Psychologist
CSP Solano Mental Health Department
California Department of Corrections and Rehabilitation
January 30, 2006

DISCIPLINARY

SEC ......................VI

**NAME and NUMBER**    EDWARDS    E-54444    B03-113    PBSP

This Rules Violation Report was originally calssified as a Division 'F' offence, CDC-115 log #B91-09-062, however at the time of the hearing Senior Hearing Officer M. D. McDonald reduced it to a CDC-128-A.

On 09-17-91, at approximately 1080 hours, inmate EDWARDS, was reported missing from A.B.E. III to the Education Officer Anderson. After checking with B02- housing, Officer Anderson said that inmate EDWARDS was returned to his cell after he failed to proceed directly to his Education assignment.

```
ORIGINAL: C-FILE
      CC: CC I
          AWC
          INMATE
```

M. D. MC DONALD, LIEUTENANT
SENIOR HEARING OFFICER
FACILITY 'B' PROGRAM LIEUTENANT    2ND/W

**DATE** 09-29-91            (CDC-115 REDUCED TO CDC-128-A)            **CUSTODIAL COUNSELING**

---

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128 A (8-87)

**NAME and NUMBER**    EDWARDS, K.   E-54444   F1-02-213U

On 09/06/93, at approximately 1645 hours, while performing my duties as Facility I Yard II Officer, directing inmates into the dining hall for the evening meal, 5 inmates at a time, I observed Inmate Edwards attempting to enter the dining hall as number 5. Edwards was given 3 direct orders to return to the line and wait his turn. He refused all 3 direct verbal orders. Instead of creating a hostile situation inside the dining hall, I allowed him to eat. His I.D. card was taken for positive identification. Edwards is aware of his documentation. He was not receptive to counseling. CDC-115 Log Number F1-93-465 is reduced to a CDC-128A.

```
cc: C-File
    Program lt.
    Writer
    Inmate
```

C. DOBBS, CORRECTIONAL OFFICER

**DATE** 09/11/93  305(B) DISOBEYING ORDERS    RJDCF            **CUSTODIAL COUNSELING**

---

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128 A (8-87)

**NAME and NUMBER**    EDWARDS        E-54444        F1-04-243L

On Thursday, March 17, 1994, at approximately 1604 hours, Inmate Edwards E-54444, F1-04-243L Failed to lock-up in his cell when ordered to do so via P.A. address. Inmate Edwards has been verbally counseled about this same type of behavior before on 1-22-94, and has not been receptive to counseling. He has been informed that future violations of the same nature will result in a more serious disciplinary action. Inmate Edwards is aware of this documentation.

```
Orig: C-File
  cc: Program Lt.
      Writer
      Inmate
```

RODRIGUEZ, M. A.
CORRECTIONAL OFFICER
FACILITY ONE H/U #4 3/W

**DATE** 3-21-94        3005-B (OBEYING ORDERS)            **RJDCF CUSTODIAL COUNSELING**

NAME and NUMBER    EDWARDS    (B)    E-54444    #13-A-2-L

On 2-11-99, at approximately 1600 hours, I observed Inmate Edwards, K-54444, cell #13-A-2-L, clothing being searched by C/O Schmitt, who gave the items to me to inspect to determine if there was a weapon hidden in the front seam of Inmate Edwards' state blue coat. What I discovered was four state pencils inserted in a small hole inside the left front of the garment. Inmate Edwards had been counseled at length regarding the theft of state supplies, which he was caught trying to steal from the Industry area, to bring to Facility III in June 1998. He was advised that any recurrence of such behavior would constitute administrative action taken against him. Inmate Edwards has been advised of this report and has no reportable medical conditions.

(CDC-115, LOG #S3-99-02-0457 REDUCED TO CDC-128-A PER SGT. R. MOCKLEY. (HO))

```
Original:  C-FILE
     cc:  CC-I/CC-II
      :  WRITER
      :  INMATE
```

R. MOCKLEY, Correctional Sergeant
HEARING OFFICER
Facility III, CSP-Solano


**DATE**  03-21-99              (( DISCIPLINARY ))              **CUSTODIAL COUNSELING**

---

DEPARTMENT OF CORRECTIONS

**NOTICE OF CLASSIFICATION HEARING**

ROUTING INSTRUCTIONS
ORIG. CLASS. COMM.
CC INMATE

| INMATE NAME | NUMBER | DATE |
|---|---|---|
| EDWARDS, J. | E-54444 | 12-19-93 |

YOU WILL APPEAR BEFORE A CLASSIFICATION COMMITTEE ON __ASAP__ __ FOR CONSIDERATION OF A MAJOR PROGRAM CHANGE AS FOLLOWS:

| | | |
|---|---|---|
| ☐ TRANSFER | ☐ INCREASE IN CUSTODY | ☐ ASSIGNMENT TO SECURITY HOUSING |
| ☒ REMOVAL FROM PROGRAM | ☐ OTHER  **TO CONFIRM CREDIT LOSS AND PROGRAM REVIEW** | |

REASONS: Based on a finding of guilty during disciplinary hearing of CDC-115, Log No. F1-93-617, Inmate Edwards, J. E-54444, F1-02-218L, was assesses thirty (30) days) credit loss for a division "F" offense. Senior Hearing Officer recommends unassignment from current assignment as first watch porter in Central Infirmary. Refer to Unit Classification Committee for confirmation of credit loss program review and unassignment.

| STAFF NAME | TITLE | INSTITUTION |
|---|---|---|
| A. R. SWEENEY | LIEUTENANT | RJDCF |

CDC-128-B-1 (1/76)

EMPLOYMENT LETTERS & SUPPORT LETTERS

SEC ........................VI & VII

# FAME RENAISSANCE

C. CECIL L. MURRAY
President

N. STEVEN D. JOHNSON
Chief Financial Officer

FAME Renaissance

MARK E. WHITLOCK
Executive Director

EXECUTIVE ADVISORY
BOARD

LARRY SANDERS
Latham & Watkins

BILLY WARD
Pacific Enterprise

BRENDA ROSS-DEAN
Wells Fargo Bank

BRUCE LAMBERTUS
St. John's Hospital

BRUCE LEDWIG
West Mark
Realtor Advisor

CARLTON JENKINS
Founders National
Bank

DAVID CARTWRIGHT
O'Melveny & Myers

DOUGLAS J McEACHERN
Deloitte & Touche LLP

DUTCH C. ROSS III
Economic Resource
Corporation

EDWARD BLAKELEY
Dean of USC

EZ BURES
Los Angeles Area
Chamber of Commerce

FRANK MOREN
Latin Business
Association

JOHN BRYANT
Operation Hope

JOHN HARAGAN

JOHN ROONEY
Valley Economic
Development

LINDA JOY RICHARDS
Los Angeles
Urban League

MARIO BUDELA
HELIX Investment

MAUREEN KINDEL
Rose & Kendle

PETER KELLY, ESQ.
Kelly & McAuliffe

REV. HYON SEUNG YOUNG
Korean American Food
and Shelter Service

ROBERT TAYLOR
Blue Capital Company

ROCKY DELGADILLO
City of Los Angeles

VICTORIA EASLEY
KFWB NewsRadio

WIL MARSHALL
Marshall Enterprise

February 7, 2001

Mr. Kennedy Edwards
E-54444 13-A-2-Low
CSP-Solano P.O. Box 4000
Vacaville. CA 95696-4000

Dear Mr. Edwards:

Thank you for your letter to Rev. Murray. Enclosed you will find literature on the First African Methodist Episcopal Church (FAME) and various programs available to the community.

The Welfare to Work program is designed to assist non-custodial ex-offenders find permanent job placement in Los Angeles County. Upon your release and you are in the Los Angeles area. the Welfare To Work staff will be able to assist you in finding permanent employment. However. we cannot start the process until you are enrolled in our program.

We look forward to working with you in obtaining your career objective.

Sincerely.

Eva Woodard. MAOM
Associate Executive Director
Social Services

Enclosure

FAME ASSISTANCE CORPORATION
FAME RENAISSANCE • FAME HEALTH • FAME YOUTH
1270 S. Harvard Boulevard • Los Angeles. California 90018
Telephone: (323) 730-9194 • Fax: (323) 737-5717
Email: famechurch@famechurch.org

**COMMUNITY AND SENIOR SERVICES**
**OF LOS ANGELES COUNTY**

BOARD OF SUPERVISORS

GLORIA MOLINA
YVONNE BRATHWAITE BURKE
ZEV YAROSLAVSKY
DON KNABE
MICHAEL D. ANTONOVICH

R    RT RYANS
Di    or

October 1, 2003

Mr. Kenny Edwards Sr.  (No. E-54444 13-A-2 Low)
P.O. Box 4000/CSP-Solano II
Vacaville, CA  95696-4000

Dear Mr. Edwards,

Thank you for your letter to the Los Angeles County Workforce Investment Board requesting information on the Job Training and Job Placement programs provided by the County of Los Angeles.

I am pleased to provide you with the attached list of the Los Angeles County Workforce Investment Board's Work Source Centers that provide the types of services you are seeking to assist you in securing employment.  I recommend that you contact or visit one of these centers as soon as you are able to.   Also attached are brochures containing information on the WorkSource California system, and an overview of the Workforce Investment Act that provides brief and general descriptions of the programs offered by the Work Source Centers.

Very best wishes to you for success in your endeavors.

Yours sincerely,

Josie Marquez, Director
Employment & Training Programs

/cz

Attachments

10/06/03

Kennedy, Edwards  E-54444 13-A-2LOW
P.O. Box 4000 / C.S.P. -SOLANO
Vacaville, CA  95696-4000


Hi!

Enclosed is the latest directory of all Los Angeles area meetings.

The best chance for you to stay in the AA program is to attend one of the meetings that are convenient to where you are going to be staying.  It is best to do that within a couple of days of your release.  If you would feel better to have another AA member accompany you to the first couple of meetings and introduce you to other members, stay in touch and one of us will arrange it.

As for a sponsor, when you go to the first few meetings, you will have an opportunity to pick one.  Many meetings have formal "interim" sponsors for those who are new to the area, meeting, or the program and want one right away.  I am not aware of any arrangement where you can get a sponsor before you are released.  If you do, let me know.


Good luck.

Phillip


AA Westwood Central Office
2365 Westwood Blvd., Suite 22
Los Angeles, CA 90064



# COMMUNITY CENTERS, INC.

7518-26 South Vermont Avenue, Los Angeles, CA 90044 • (323) 752-2115 • (323) 752-1799

October 17, 2003

Mr. Kenny Edwards Sr – E-54444    13 –A-2 low
P.O. Box 4000/CSP-Solano II
Vacaville, CA 95696-4000

To: Program Inquires

Thank you for thinking of Community Centers, Inc. part of the Workforce efforts of the City of Los Angeles for employment needs. Community Build located at 8730 S. Vermont Ave. 90044 has received funding to target ex-felons and help them with their employment needs.

They would be able to help you more efficiently and effectively because they have tailored opportunities for you. Contact them at (323) 789-9950 for further information.

Sincerely,

Patricia Rodriguez
Executive Director

**WorkSource**
CALIFORNIA
*Building Business and Careers*

October 28, 2003

Kennedy Edwards
E-54444 13-A-2 low
P.O. Box 4000 CSP-Solano II
Vacaville, CA 95696-4000

Dear Mr. Edwards

We have received your letter; here at the Southeast L.A.-Crenshaw Work Source Center we assist people such as yourself obtain job placement assistance.

I have enclosed some flyers that explain our programs. We present Orientations about our services every Monday and Wednesday at 9:45 a.m. When you are ready, please call me at (213) 743-3950 to make an appointment for an Orientation Session.

The Worksource Center also provides referrals to community resources (such as housing) through our partner PATH (people assisting the homeless). Please contact Juan Martinez, the PATH representative here at the Worksource Center, for information and assistance. He can also be reached at (213) 743-9350.

Thank you for your request and good luck with your search.

Sincerely,

*Maggie Ramos*
Maggie Ramos
Client Services Technician

# PVJOBS

Playa Vista Job Opportunities and Business Services

January 7, 2004

Mr. Edward Kennedy
E-54444 13-A-2-Low
P.O Box 4000/CSP-Solano
Vacaville, CA 95696-4000

Dear Mr. Kennedy,

I would like to thank you for your interest in PVJOBS. PVJOBS is a nonprofit organization providing career placement opportunities for at-risk individuals, with the support from Community Based Organizations. The collaboration between the CBO's and us is to assure that an individual will have supportive services available to them to insure a successful outcome.

To submit an application, you will need to be referred to us by a collaborating Community Based Organization. I have included with this letter a PVJOBS brochure with information about us and contact phone numbers to our Collaborating CBO's. Please know that the Playa Vista development is a 1,087acre project. We're looking at approximately 15 to 20 years of construction work, and we're just getting started.

Please contact us upon your release to better assist you with getting your application to us.

Again, thank you for your interest.

Sandy Medrano
(310) 448-4684
PVJOBS
Receptionist/ Case Manager

12555 W. Jefferson Boulevard

Suite 300

Los Angeles, CA 90066

Voice 310.448.4684

Fax 310.821.0720

 recycled paper



# The Salvation Army

### H A R B O R     L I G H T     C E N T E R

Founded 1865
William Booth, Founder

P.O. Box 53791
Los Angeles, CA 90053

John Gowans, General
Commissioner David Edwards, Territorial Commander
Lt. Colonel Alfred R. Van Cleef, Divisional Commander
Conrad Watson, Executive Director

6/23/2004

Kennedy F. Edwards
E-54444  13-A 2- low
CSP-Solano P.O. Box 4000
Vacaville, CA. 95696-4000

Re: Kennedy F. Edwards

I received your letter dated 06/14/04. Mr. Edwards, you appear eligible to enter The Salvation Army Harbor Light Center program providing that all necessary criteria are met, and bed space is available. Requirements would include, if court ordered, judge's approval, and a copy of the minute order. Additionally, if being released on parole or probation the applicant would need to agree to abide by all conditions of your parole or probation. If the applicant has no income they would be eligible for county assistance. If the applicant has income such as SSI, SDI, pension, etc. and is in possession of such funds a deposit of $446 would be required upon admission. Program fees would be determined using a sliding scale based upon verification of said income.

The Salvation Army Harbor Light Center is a 90 day to 1 year residential treatment program for recovery from alcohol and/or other drugs. A wide variety of services are offered including, GED preparation, parenting classes, and HIV education and risk reduction. I have included a brochure outlining various groups, lectures, and other services. Should you have any questions, please do not hesitate to contact me.

Sincerely,

Michael Arrington -cos-
Michael Arrington
Correctional Outpatient Specialist
(213) 626-4786 ext. 37

---

Harbor Light • 809 E. Fifth Street • Los Angeles 90013 • Phone (213) 626-4786 • Fax (213) 626-0717
Harmony Hall • 3107 S. Grand Avenue • Los Angeles 90007 • Phone (213) 748-0391 • Fax (213) 626-0717
Safe Harbor • 721 E. Fifth Street • Los Angeles 90013 • Phone (213) 622-5253 • Fax (213) 626-0717
conrad_watson@usw.sarmy.org

**Willie Phillips**
739 East 84th Street
Los Angeles CA 90001
213-752-6926

October 7, 1998

To: The Board of Prison Term

Dear Sir or Madam,

I am writing this letter in regards to Kennedy F. Edwards, my nephew. In my conversation with Kennedy has expressed remorse for the situation that landed him in prison. The Kennedy I remember was kind and loving to his family and friends and I know he can be that same loving person again once he released. I will be there for him to help make his transition back into society a productive and smooth one. I have invited Kennedy upon his release to join my church. I feel with the help of the Lord. We can achieve anything. I know he has learned what he has done was wrong. In our telephone conversation, we always do a prayer for the family he has hurt and ask God forgiveness for his sins. I just pray and hope you will find it in your heart to hear my plea to release Kennedy.

Sincerely,

Willie Phillips

FROM:  MR. AND MRS. EDWARDS              SEPTEMBER 5, 1998
       249E 122ND STREET
       LOS ANGELES, CA.


TO:  THE BOARD OF PRISON TERM:

     WE, MARY JEWEL MORRIS AND OTIS CURTIS EDWARDS, PARENTS
     OF KENNEDY EDWARDS, WILL PROVIDE HIM WITH A HOME UPON
     HIS RELEASE.  WE, ALONG WITH OUR MINISTER, WILL DO
     EVERYTHING WE CAN TO HELP KENNEDY INTEGRATE BACK INTO
     SOCIETY AS PRODUCTIVE MEMBER OF OR COMMUNITY.  OUR SON
     IS EXTREMILY REMORSEFUL OVER THE EVENTS WHICH CAUSED
     THE DEATH OF A FELLOW HUMAN BEING.
     WE ARE VERY SORRY AND HAVE SENT OUR APOLOGIES AND
     CONDOLENCES TO THE VICTIMS FAMILY.  WE PRAY THAT YOU
     GIVE SERIOUS CONSIDERATION TO OUR PLEA.

     _____
     OTIS AND MARY EDWARDS

Dear Pison Bourd Former
this is Marcus Edwards. Couis
you pliai let my dad go
Because I miss him and
I love him.

For Marcus

Mr. Otis and Mrs. Mary Edwards
249 E 122nd Street
Los Angeles, CA  90061
(323) 779-6868

To:  The Board Of Prison Terms,

We, the parents of Kennedy Edwards, do acknowledge our son did a thoughtless crime.  For that, we pray that the family of the victim will except our humble apology.  We have spoken openly to our son, on many occasions, regarding this issue,  and it appears to us, as God fearing people, that he truly carries a heart filled with remorse for the wrong he has committed.

Today, Kennedy is a very educated young man.  He recognizes the regretful decisions he made in the past,  and has made positive progress to learn from his mistakes.

With our love and support, we can work together to achieve a successful re-entry into society for Kennedy; allowing him to be a productive member of his community, as well as a supportive and loving father to his children.

We have invited our son, Kennedy, into our home to offer him a stable environment in which to live.   We also look forward to his presence in our home, us as we could use his help as we live out our golden years.

Kennedy's father and I petition your hearts to show mercy upon our son and find him suitable for parole.


Sincerely,



Mr. Otis and Mrs. Mary Edwards

12618 BLAKLEY AVE
COMPTON CA 90222
310-764-5332

# LA SHELL D. MOREHEAD

September 15, 1998

The Board of Prison Term

Dear Sir or Madam:

Kennedy F. Edwards is someone whom I love dearly, he is my brother. I have asked him to come live with my family in my God loving home upon his release. I plan to help as much as possible to get Kennedy back into a productive environment around positive people. He has displayed in conversations that he wants to live a productive life and get involved with the church and community. I feel strongly that my brother feels very remorseful about taking someone else's life and by the grace of God and Kennedy this will never happen again.

I have spoken with several department mangers in my company and they have all said they will give Kennedy an interview for their department and consider him for employment. My husband works for U-Haul they hiring permanent temporary people in their manufacturing plant. My husband has stated to me he can get him on at his company upon his release.

My prayers are that God have softens your heart and give new sight on Kennedy growth and maturity over the course of time. I pray that his release be taken into consideration.

Sincerely,

LaShell Morehead



September 18 2001

To the Parole Board of Correctional Instititue

I'm writing this letter in the behalf of my son whose father is an inmate. Kennedy F. Edwards who has been instutionalized since 11/89 for commiting an un - thinkable crime. I understand that he had to serve the time fit for the crime he has committed. He has now been in prison for 12 years. I believe he has served his time and has reconzied the serverity of the crime and should be able to come back into the society as a person that will not make the same stupid mistake twice. I believed in telling my son the truth about the crime, his father has commited so he will respect the human life, and try to give back to society.

My son is now 12 years old and has never been able to take walk with his father or throw a footballl with him. I think all boys need a father in there teenage life. His father calls twice a month to speak with him, my son is so excited to tell him about all the things that are going on in his life. I hate to see him so upset, when his friends are telling him about the things they have done or about to do with there dads.

If your commitee see fit please consider giving him parole. So he can prove to himself and others that he has remorse for what he has done.

Sincerely,
Shellia Robinson

Shelia Robinson

12618 BLAKLEY AVE
COMPTON CA 90222
310-764-5332

# LaShell D. Morehead

December 26, 2001

To The Board of Prison Term

Dear Sir or Madam:

I am writing you in regards to my brother Kennedy F. Edwards.  My brother has been in prison for over 10 years; in the meantime I have notice a change in him. He has matured and accepted God completely in his life.  I know from the conversation I have with my brother he is very remorseful for what he has done.

I know with my guidance and the guidance of his immediate family, Kennedy can become a very productive member of society.  I pray that you will consider him for release.

Sincerely,

LaShell Morehead

T. Edwards
249 E. 122nd St
Los Angeles CA 90001

C.C.I. Counselor Blackwell
CSP- Solano P.O. Box 4000
Vacaville, CA 95696-4000





MARY EDWARDS

January 13, 2004

Board of Prison Term

Dear Sir or Madam:

    I am writing to petition to your hearts being a woman of 74 years old and not in the best of health. I first would like to make an apology to the victim family for the lose of a love one behind my son negligence for human life. L would also like to say me and my husband who is now resting in peace did not raise our son to be heartless, insensitive person. He is paying the price for his sins but I also know as his mother while he has been incarcerated all these years he has gain insight on his crime, he has mature in his thinking and believe would be helper and good citizen in our society. I have a home at 249 E. 122nd St. Los Angeles, CA 90061 where he can stay I would love and appreciate him being here. I am also going to help support in every way possible to keep him on the right path. I ask in prayer and humbleness that you consider a mother's petition to send her son home to her.

Sincerely, *Mary Edwards*

Mary Edwards

249 E. 122ND STREET
LOS ANGELES CA 90061
323-779-6868

12618 Blakley Ave
Compton CA 90222
310-764-5332

# LaShell D. Morehead

January 13, 2004

Board of Prison Term

Dear Sir or Madam:

I am writing on behalf ~~on behalf~~ of my brother Kennedy Edwards.  I would like to say that I know my brother is feeling great remorse for the part he played in this crime.  In the phone conversation I have with my brother I can tell he has grow and mature since he has been away.  He talks about his plans when he get release on how he can help other young men and women not follow his same path.  I know most people do not feel that an ex-felon is the best person for a roll model but I believe if it was not for some of the conversation my 20 year son had with his uncle helped to keep him strong and away from drugs. I will be here to support my brother any way possible to keep him focus on the positive path he has set for himself.   I have also extended my home for my brother if he needs a place to go.  I hope you will here my family prayers and release him.  May God bless and keep you.

Sincerely,

LaShell Morehead

1/15/04

Dear Counselor Blackwell

I'm writing this letter on behalf of Kenny Edwards. I believe he is a very nice person and has paid his debt to society.

If he get out, I think he will do good. He should find a job easy because they have places that only hire parolees.

He has a son, he can finally be a father to him. I really truly think that he has learned his lesson, and won't make another mistake.

Please give him a chance to prove himself. I don't think you would be making a mistake, he can live with his Mother.

Sincerely Yours
Ethel Jackson - Cousin





CCT Counselor Blackwell
CSP- Solano P.O. Box 4000
Vacaville, CA, 95696-4000

Ethel Jackson
14707 S. Williams Ave.
Compton, CA 90221-3144



1-15-04

To Whom It May Concern,

I'm writing on behalf of
Kennedy Edwards. I think he
is very remorseful for what he
did, and has paid a generous
amount of time for it. I also think
he has learned a valueble lesson
and is ready to get back into
society and be with his family.
We would gladly appriciate it
it you would give him another
chance.

Thank You

Cynthia Jackson

1-15-04

Attention; Counselor Blackwell

I think my cousin Kenny Edwards, has learned his lesson, I think he is ready to get back into sociaty and be the good person that he is.

I know he made a mistake, but he regret what he did. Please give him another chance to prove hisself.

He has a son who loves him dearly and other family that loves him too. He can stay with his mother until he get on his feet. He can get a job get his own place to live. I'm begging you to give my cousin another chance please! Thanking you in advance.

Sincerely yours
David Jackson

3145 NORTON AVE, APT D
LYNWOOD, Ca. 90262-1840

CC/ Counselor Blackwell
CSP. Solano P.O. Box 4000
Vacaville, Ca. 95696-4000

Jacqueline Robertson
1871 Chestnut Ave #101
Long Beach CA 90806

Counselor Blackwell
for Kennedy Edwards
CSP Po Box 4000
Vacaville CA 95696-4-00

1-23-04

To whom it my concern:
        Att: Counselor Blackwell

        I am writing this letter
in regards of Kenny Edwards (Kennedy)
Personally, I have not met this
young man, but I have spoken to
him over the phone. From the
time that I've conversated with
Mr Edward, he seems to be a
strong individual who realize
the mistakes in his life. He
have made a great effort in
changing his life around, since
he have been in prison. I
feel that he should be given
another chance ise society.

                    Thank
                        you
                    Mrs Margaret L. Lots

P.S. God Bless.

January 20, 2004

To whom it may concern:
Attn: Counselor Blackwell

I am writing this letter in regards to Kennedy Edwards. I have never personally met Mr. Edwards but I have spoken to him over the telephone. Mr. Edwards in my opinion seems to be a great man and father. His concern that his son doesn't follow in his footsteps amazes me, he has understandings of the mistakes that he has made in his life with the help of his higher power. He understands that with god on his side anything is possible. Kennedy Edwards has became a productive member in the jail society. He has accomplished many good things with his time spent in the system and training that he can use in society and also use it in his new venture. Ever since our children that he was

Edwards should be given a chance
to be a Father, for and whatever
else his heart leads him to doing.
Everyone deserves a second chance
to make things right

Thank you for listening to my words
Sincerely yours,
Maya C. Paul

INMATE COPY

2-29-2004

CDC # E54444

Counselor Black Well
in Behalf of Kennie Edward I knew
him soon after he was Borned he
Grew Up as a Plenset Young man
And Ney Pleite to his Mother,
Father Sister and Brother and
Peoplee Aruend him

Betty Morris

1-15-04
E54444

To Whom It May Concern,

I'm writing on behalf of
Kennedy Edwards. I think he
is very remorseful for what he
did, and has paid a generous
amount of time for it. I also think
he has learned a valueble lesson
and is ready to get back into
society and be with his family,
We would gladly appriciate it
if you would give him another
chance,

Thank You

Cynthia Jackson

1-15-04

Attention; Counselor Blackwell
    I think my cousin Kenny Edwards, has learned his lesson, I think he is ready to get back into sociaty and be the good person that he is.
    I know he made a mistake, but he regret what he did. Please give him another chance to prove hisself.
    He has a son who loves him dearly and other family that loves him too. He can stay with his Mother until he get on his feet. He can get a job get his own place to live. I'm begging you to give my cousin another chance Please! Thanking you in advance.

Sincerely yours
David Jackson

1/15/04
E 54444

Dear Counselor Blackwell

I'm writing this letter on behalf of Kenny Edwards. I believe he is a very nice person and has paid his det to society.

If he get out, I think he will do good. He should find a job easy because they have places that only hire parolees.

He has a son, he can finally be a father to him. I really truly think that he has learned his lesson, and won't make another mistake.

Please, give him a chance to prove himself. I don't think you would be making a mistake, he can live with his Mother.

Sincerely Yours
Ethel Jackson - Cousin

E 54444

To whom it may concern

My name is Timothy Williams
I work for the Salvation Army.
I'm writing this letter on
be have of my brother Kennedy
Edwards. whom is coming up
before your broad. Although
I have not seen my brother
for many year. I can tell
by his phone call and letter
that a change has taken
place. He has told me about
his goal and job training and
shooling he has undergone while
he has been incarcerate. I
believe that with his change
in value and intense training
and goals. That with God and
the help of family and friend
MR. Kennedy Edwards can become
an helpful member of society.
Please give my brother this chance.

Thank you

Timothy Williams

MARY EDWARDS

January 13, 2004

Board of Prison Term                                        *E 54444*

Dear Sir or Madam:

I am writing to petition to your hearts being a woman of 74 years old and not in the best of health. I first would like to make an apology to the victim family for the lose of a love one behind my son negligence for human life. L would also like to say me and my husband who is now resting in peace did not raise our son to be heartless, insensitive person. He is paying the price for his sins but I also know as his mother while he has been incarcerated all these years he has gain insight on his crime, he has mature in his thinking and believe would be helper and good citizen in our society. I have a home at 249 E. 122nd St. Los Angeles, CA 90061 where he can stay I would love and appreciate him being here. I am also going to help support in every way possible to keep him on the right path. I ask in prayer and humbleness that you consider a mother's petition to send her son home to her.

Sincerely, *Mary Edwards*

Mary Edwards

249 E. 122ND STREET
LOS ANGELES CA 90061
323-779-6868

12618 Blakley Ave
Compton CA 90222
310-764-5332

# LaShell D. Morehead

January 13, 2004

Board of Prison Term

*E 34444*

Dear Sir or Madam:

I am writing on behalf ~~on behalf~~ of my brother Kennedy Edwards. I would like to say that I know my brother is feeling great remorse for the part he played in this crime. In the phone conversation I have with my brother I can tell he has grow and mature since he has been away. He talks about his plans when he get release on how he can help other young men and women not follow his same path. I know most people do not feel that an ex-felon is the best person for a roll model but I believe if it was not for some of the conversation my 20 year son had with his uncle helped to keep him strong and away from drugs. I will be here to support my brother any way possible to keep him focus on the positive path he has set for himself. I have also extended my home for my brother if he needs a place to go. I hope you will here my family prayers and release him. May God bless and keep you.

Sincerely,

LaShell Morehead

September 25, 2001

Mrs. Joan Sims
12208 S Los Angeles Street
Los Angeles, CA  90061

Dear Sir and/or Madam,

I have known Kennedy Edwards almost his entire life.  Him and
I grew up in the same neighborhood.  Back then he was revered
as a good child, who displayed a caring heart and a willingness
to share with others.  He was also known for his polite mannerism
and respectful  attitude towards his elders.

Kennedy was raised in a loving Christian home, which taught
him Christian morals, values, and beliefs.  He grew up attending
a Lutheran private school, which also instilled many of the
same beliefs he was taught at home.

When I learned what had happen, I realized that what he had
done was unthinkable.  I have had many conversations with Kennedy
about what took place, and in every conversation, he continues
to show a deep regret for the past, and how unhappy he is with
the situation.  He has openly asked for God's forgiveness, and
he continues to pray for those whose life has affected by his
actions, that they to will find it in their heart to forgive
him.

Although he feels he deserves the consequences for the crime
he committed, my plea to you, the Board of Prison Terms, is
that God will soften your heart towards Kennedy Edwards, and
take into serious consideration the possibly of allowing him
a second chance at life to become a productive member  of society
once again.

Kennedy's mother and father are growing old, and they really
need their son to be with them to help them in their time of
need.  I trust in God, and have complete faith that you will
make the right decision when considering Kennedy Edwards suitable
for parole.


Sincerely,



Mrs. Joan Sims

PAROLE & RELEASE PLAN

SEC .............VIII

# Marcus Edwards

To the Board of Prison Terms

Dear Sir/Madam.

My name is Marcus Edwards I writing in regards to my father Kennedy Edwards. I am a fourteen year old boy who needs the guidance of his father.

I know my father has done things in his life that he regrets and not proud of, that's why when I talk to him over the phone he always tell me to consider the consequence of my action before I react. He explained to me because of him not thinking before he acted. He is missing watching his son grow up to become a young man.

My father has shown great remorse for his action. He has stated that he prays that the victim family could one day forgive him. He also hopes that I could forgive him for what he has done, for not being there for me. I just hope that you could consider releasing my father from jail.

I am a young man that really wants to spend time and get to know his father.

Sincerely,

*Marcus Edwards*

Marcus Edwards



Counselor Blackwel
CSP PO Box 4000
Vacaville CA 95696

Marcus Edwards
11816 Artec Ave
Norwalk CA 90650

Willie Lee Phillips
739 E, 84 th St,
Los Angeles Ca 90001
323-752-6926

9-26-2001

To The Board of Prison Term

Dear Sir or Madom,

I am writing this letter conceving
my nephew Kennedy J, Edwards
all of his life I have known Kennedy
he was obedience always to his Dad and mom
he gave them no problems. he love his
parents, matter of fact he loved all of his
family what happen to Kennedy in this
Case, I am sure he regret what happen.
If given another chance, I also believe he
would be just as loving and kind as he
was before, this happen, I am sure he has
learned a lesson from the mistok he made. I
alway pray for God to forgive him for the
sin he committed, I pray that you will find
in your heart to hear my plea for
Kennedy Release, I have invited Kennedy
to come to my church Tomoring
avenue S.D.A. Church Compson Ca.
    Willie Lee Phillips  Kennedy J Edwards
    auntie  I love him with all my heart

I FIRST WOULD LIKE TO ADDRESS YOU MR. BPT
FOR ALLOWING ME THIS OPPORTUNITY TO HUMBLY
SUBMIT MYSELF BEFORE YOU, I ALSO WANT
TO TAKE THIS TIME TO APOLOGIZE TO THE
CHAVEZ FAMILY FOR MY PAST BEHAVIOR
I AM SORRY FOR THE GRIEF AND PAIN I
HAVE CAUSED MR. CHAVEZ HIS FAMILY.
I HAVE MADE AN IRRATIONAL DECISION IN
MY LIFE THAT HAS RESULTED IN THE HURT
AND ANGUISH TO OTHERS INCLUDING MY FAMILY
AS WELL AS SOCIETY, AND FOR THIS
I AM ASHAME FOR WHAT I'VE DONE
AND TRULY REMORSEFUL. I REALIZE
NOW THROUGH EXTENSIVE THERAPY THE IMPACT
OF MY ACTIONS. I WAS FOOLISH, SELF-CENTER AND
IRRESPONSIBLE. BUT TODAY THROUGH THE GRACE OF
GOD I'VE LEARN HOW TO LIVE IN THE GREATEST
PEACE, PARTNERSHIP AND HUMANITY WITH ALL HUMAN
BEINGS. I AM NOT THE SAME PERSON I ONCE WAS
I'M AT A DIFFERENT PLACE IN MY LIFE NOW.
MY PRAYER IS THAT GOD TOUCHES YOUR HEARTS
TO SEE THE CHANGE AND GIVE ME A SECOND CHANCE
THANK YOU

454444

# MARY EDWARDS

May 4, 2005

Board of Prison Term

Dear Sir or Madam:

I am writing to petition to your hearts being a woman of 75 years old and not in the best of health. I first would like to make an apology to the victim family for the loss of a love one behind my son negligence for human life. L would also like to say me and my husband who is now resting in peace did not raise our son to be heartless, insensitive person. He is paying the price for his sins but I also know as his mother while he has been incarcerated all these years he has gain insight on his crime, he has mature in his thinking and believe would be helper and good citizen in our society. I have a home at 249 E. 122nd St. Los Angeles, CA 90061 where he can stay I would love and appreciate him being here. I am also going to help support in every way possible to keep him on the right path. I ask in prayer and humbleness that you consider a mother's petition to send her son home to her.

Sincerely,

Mary Edwards

*Mary Edwards*

12618 Blakley Ave
Compton CA 90222
310-764-5332

# LaShell D. Morehead

May 4, 2005

Board of Prison Term

Dear Sir or Madam:

I am writing on behalf on behalf of my brother Kennedy Edwards. I would like to say that I know my brother is feeling great remorse for the part he played in this crime. In the phone conversation I have with my brother I can tell he has grow and mature since he has been away. He talks about his plans when he get release on how he can help other young men and women not follow his same path. I know most people do not feel that an ex-felon is the best person for a roll model but I believe if it was not for some of the conversation my 20 year son had with his uncle helped to keep him strong and away from drugs. I will be here to support my brother any way possible to keep him focus on the positive path he has set for himself. I have also extended my home for my brother if he needs a place to go. I hope you will here my family prayers and release him. May God bless and keep you.

Sincerely,

LaShell Morehead

To Whom it may Concern

My Name is Timothy Williams. I'm a supervisor with the Salvation Army Harbor Light treatment center.

I'm writing on behalf of Kennedy Edwards who I have know a long time. Both before his incarceration and since he has been incarcerated, Kennedy appears to be growing both spiritually and mentally. Since he and myself has been going through the 12-step of recovery, we have share on ours experience, strenth and hope. So that we can get away from our denial. And find that spirital from from ourselves. I feel that Kennedy has excepted his responsibility for his action and behavior. This has came about by going through and working the 12-step of recovery and living the spiritual principles found in each step. I truely believe that Kennedy will be a positive and productive member of society. Since Kennedy incarceration he has put forth an effort to do positive things; going to 12-step meeting, and work shops and attending job training courses. I feel that with support of family and friends and a belief in a God of his own understanding. That Kennedy will not return to his old way of thinking.

Sincerely
Timothy W.

Timothy Williams
HVRP Employment Counselor

LOS ANGELES HARBOR LIGHT CENTER
SAFE HARBOR · HARMONY H.A.L.

hereby the citizens of Los Angeles, in the county of _Los Angeles_ where Mr. Kennedy Edwards will reside upon his release from prison. We sign and submit to the California Board of Prison Terms, this Community Support Petition on Kennedy Edwards behalf.

We as a whole believe that one of the main concerns of the Parole Board authorities, is "public safety" and the question of whether it is safe to release Kennedy Edwards back into our society and community after serving a certain amount of time without incident of infractions that will curtail his release. As the Board panel knows that Kennedy Edwards was young in attitude and maturity, where now he is much older and with a healthier attitude towards life and which direction he has chosen to pursue, even while incarcerated.

The gains he has made are clear and convincing evidence that he has achieved and contnuously maintained a positive program. This is evident from what we have learned of his last parole consideration hearing. Please refer to his last hearing comments from the commissioner's.

We strongly believe Kennedy Edwards has learned from this great tragedy, and expresses great remorse for what he has done, and we believe this to be genuine. So the only guarantee we the undersigned can give this Parole Panel, is that we will provide Kennedy Edwards support and guideance with transportation, employment, residence, community projects and most of all Church mentoring.

We believe also, that Kennedy Edwards is a changed person! Please approve his release and allow him a grant to parole into this community.

We the undersigned citizens of Los Angeles California, in the county of _Los Angeles_ collectively, have signed, dated, addressed, & placed our phone to contact any of us regarding this Community Support Petition on behalf of Kennedy Edwards, with full knowledge and belief of the contents thereof and will be willing to testify to it if called to do so.

Thank you for considering our support for Kennedy:

<u>See Attached Signatures:</u>

NAME:      ADDRESS:      PHONE #:      DATE:

| Name | Address | Phone # | Date |
|---|---|---|---|
| Ona Davenport | 3084 East 120th St | 323. 777-9277 | 4-20-2005 |
| Neil Johnson | 308 1/4 E 120th St | 323 777-9277 | 4/20/05 |
| Equlitter J. Kemp | 435 E 126th | 3237567422 | 4-20-05 |
| Annie Kemp | 435 E 126th St | 323 756-7422 | 4/20/05 |
| Edna Sibley | 12253 S. San Pedro St | (323) 418-8057 | 4/20/0 |
| Dana Smith | 260 E 124th Los Angeles | (323) 755-5643 | 4/20 |
| Carnell Allison | 241 E 132nd St | (323) 242-0296 | 4/21/05 |
| Linda Allison | 241 E 129nd St | (323) 242-0296 | 4/21/05 |
| Rae Patrick | 19570 Enslow Dr. Carson Ca | (310) 462868 | 4/21 |
| Jushana Howard | 12219 S Trinity St LA, CA 90061 | (323) 496-79 | 4/21/10 |
| Jill R. Patrick | 517 W 105th St LA CA 90044 | (213) 9107627 | 4/ |
| Deanda Farryck | 12207 S. Trinity St LA CA 90061 | (323) 4017004 | 4/ |
| M. Julia Lugo | 435 E 126th LA CA 90061 | 323 472 756-74 | |
| Brenda Kemp | 435 E 126th St LA CA 90061 | 323756-7422 | 04/21 |
| Lee V. Taylor | 909 E. Alvarado St Ontario CA 91767 | (909) 948-879 | 04/21 |
| Deirdee Anderson | 805 w 136 Compton CA | 310 3459880 | |
| Sam Pilgrim | 643 W Almond St Compton CA | 310 3495459 | |
| Gilbert Gomez | 714 W. 131st Cpt. Ca 90222 | 537-99 | 4/21/05 |
| Gonzalo Alarcon | 1475 E Camp St Compton CA 90220 | | 4/21 |
| Lue Jones | 4225 E. Queensdale St Compton 90221 | 310-604-1846 | |
| Tom E Martin | 1216 E Adams St LB 90805 | 562-2444230 Cell | 4-21-05 |
| Jackie Buchanan | 9475 S. Crenshaw #4 Ing CA 90305 | 310 910-3660 | 4/21 |
| Sharon Deaffins | 1322 W School St Cpt 90220 | (310) 762-1059 | 4/21 |
| Sara Street | 11540 E 215th Lkwd Ca 90715 | 562/4558901 | 4/21 |
| Myra Byrd | 4638 Hale Ave Long Beach Ca 90805 | 310) 7220 | 4/21/10 |

NAME:                          ADDRESS:                                    PHONE #          DATE:

Anthony Webb        9555 Kemp Ave Apt L 90220        310 763 2164    4/21/08

PRESTON DAV  1308 S. BUTLER ST COMPTON CA 90222  310 919-53  4-21-05

Kathirine Taylor  1909 c Alvarado st Ontario CA 9176  909 948-2979  4/21/0

Darin Prescott  263 E 122nd St. LA 90061  Cph- 828-777-46  4/23/0

Teresa Broadnex  308 1/2 E 120 St L A 90061 323-757-217  4-27

Terri Jasper  11608 Acacia ave apt 3 hawthorn CA 90250  310 431-647  4-27

Mamie Tweedie  7249 Pellet St Downey Ca 249.  562-80  4-28-05

Paul Hudson  4/28 7249 Rellet St Downey CA

Tanya Davis  133 E 116th St LA Ca 90061  (323) 779-1301  4-28-05

Lucia Super  263 E 122nd LA, CA 90061  (323) 779-4218  4-28

Monique Miner  8532 Flowers #A 90723  562) 793-8039  4-28-0

Lillian Pitts  13432 S. Vermont Apt 11 Gardena CA  (310) 527-439

Vick Micalas

Arshawn Turner  206 N. Acacia Compton  4-28-05  310 702 1943

Harriet Turner  8221 E 122 St LA CA 90061  323 764-9853  4-28-0

Erin Tan  1417 E 122nd St LA CA 90061  310394  4-28-05

MARCUS BATES  141 E 122nd ST CA 90061  4-28-05  (323) 517-4

Susan St  312 W 120th St #4 LA, Ca 90061  (323) 305-2100  4-28-05

Pete York  312 W 120th St #4 LA. Ca 90061  (323) 3052100  4-28-05

Jack  312 W 120 st Apt 4 LA. CA 90061  323) 30 C2  4-28-05

Veronica Burton  312 W 120 st Apt 4 LA. CA 90061  (323) 305-2100  4-28-05

Huntley Long  312. W. 120th Apt 4 Los Angeles CA 90061  (323 305-2100  4-28-0

MACHIC FAMILY  245 E 122nd  CA 90061  (323) 242-2235  4-28

Genevia Hernandez  1977 Magnolia Ave apt C 90306  (562) 218-91

NAME: _____ ADDRESS: _____ PHONE: _____ DATE: _____

| | | |
|---|---|---|
| Latonya Turner | 2107 W 103rd St. LA 90047 | (323) 418-1145  4/28/05 |
| William L Record | A87 E. 35th St LA CA 90011 | 213 842 4289  04-28-05 |
| Michelle Turner | 8635 Somerset Blvd Ca 90723 | (3-29) 4-28  323-861-1601 |
| Egen Lucas | 209 1/2 E Century blvd 90003 | (323) 447-9115 |
| Linda Franco | 219 E. 122nd St. LA. 90061 | (323) 754-1500 |
| Simona Williams | 122 E 120th Street CA 90061 #2 | (323) 777 4085 4/2 |
| Erica Perez | 935 W 131 St Compton | 310) 762-9580 |
| Renald Scott 4-28-05 | 779 E. 49TH St. Los Angeles | (323) 459-15-98  323-537-0 |
| Tamika Jones 4-28-05 | 4141 S Central Ave #1 C.A 90011 | 564-7062 |
| Nancy Martinez 4-28-05 | 614 E. 120th St L.A.CA 90059 | (323) 289-43  310-753-0 |
| Yolanda Dean | 743 E. 138 St Cpt. Ca. 90222 4-21 | 4-28-05 |
| Keon Inglo | 15023 S. Juris LA 90016 | (323) 493-12 |
| Jacqueline Jackson | 12627 Figueroa # 90061 | 310  281 |
| Ken Cotton | 12800 So San Pedro 90061 | 310  321-8770 |
| Joe Ali | 238 E. Elsegunda LA CA 90061 | 04-28-05  310-76834 |
| Renard Young | 312 w 120 # 4 | (323) 305-2100  4/28/0 |
| Derrick Melancon | 321 w 120 | (323) 779-3915  4/28/05 |
| Mark M. R. | 322 w 120 St | 323 757-2419  4/28 05 |
| Julissa Santana | 1321 S. Budlong Ave | (305) 036237 4/ |
| Linda Hatter | 114 E. 124TH St L.A.CA | (323) 754 0050  4/2 |
| Tamika Morrison | 114 E. 124th St LA Ca | (323) 820-1416 |
| Phillip Motion | 114 E. 124th St. L.A. CA 90061 | (343) 754-0058  4/28/05 |
| Charles Jones | 114 E. 124 TH ST LA CA 90061 | (323) 774-6707  4/ |

**Twelve Steps of Alcoholics Anonymous**

1. We admitted we were powerless over alcohol--- that our lives had become unmanageable.
2. Came to believe that a Power greater than ourselves could restore us to sanity.
3. Made a decision to turn our will and our lives over to the care of *God as we understood Him.*
4. Made a searching and fearless moral inventory of ourselves.
5. Admitted to God, to ourselves, and to another human being the exact nature of our wrongs.
6. Were entirely ready to have God remove all these defects of character.
7. Humbly asked Him to remove our shortcomings.
8. Made a list of all persons we had harmed, and became willing to make amends to them all.
9. Made direct amends to such people wherever possible, excepts when to do so would injure them or others.
10. Continued to take personal inventory and when we were wrong promptly admitted it.
11. Sought through prayer and meditation to improve our conscious contact with God *as we understood Him*, praying only for knowledge of His will for us and the power to carry that out.
12. Having had a spiritual awakening as the result of these steps, we tried to carry this message to alcoholics, and to practice these principles in all our affairs.[20]

**The Twelve Steps are reprinted with permission of alcoholics Anonymous World Services, Inc.** *Permission to reprint and adapt the Twelve Steps does not mean that A.A. is in any way affiliated with this program. A.A. is a program of recovery from alcoholism only - use of the Twelve Steps in connection with programs and activities which are patterned after A.A., but which address other problems, or in any other non-A.A. context, does not imply otherwise.*

---

[20] <u>Alcoholics Anonymous</u> Third Edition A.A. World Services P.O. Box 459 Grand Central Station New

# AN ADAPTION OF THE TWELVE STEPS

1.  We admitted we were powerless over Guilt & Shame, and that our lives had become unmanageable.

2.  Came to believe that a Power greater than ourselves could restore us to sanity.

3.  Made a decision to turn our will and our lives over the care of God, *as we understood God.*

4.  Made a searching and fearless moral inventory of ourselves.

5.  Admitted to God, to ourselves, and to another human being the exact nature of our wrongs.

6.  Were entirely ready to have God remove all these defects of character.

7.  Humbly asked God to remove our shortcomings.

8.  Made a list of all persons we had harmed, and became willing to make amends to them all.

9.  Made direct amends to such people whenever possible, except when to do so would injure them or others.

10. Continued to take personal inventory and when we were wrong promptly admitted it.

11. Sought through prayer and meditation to improve our conscious contact with God *as we understood god*, praying only for knowledge of God's will for us and the power to carry that out.

12. Having had a spiritual awakening as the result of these steps, we tried to carry this message to Offenders & Victims, and to practice these principles in all our affairs.

**The Twelve Steps are reprinted with permission of Alcoholics Anonymous World Services, Inc. Permission to reprint and adapt the Twelve Steps does not mean that A.A. is in any way affiliated with this program. A.A. is a program of recovery from alcoholism only--use of the Twelve Steps in connection with programs and activities which are patterned after A.A., but which address other problems, or in any other non-A.A. context, does not imply otherwise.**



# LETTERS OF

# SUPPORT

NAME and NUMBER    **EDWARDS**    **E-54444**    **13-A-2-L**    CDC-128-B (Rev 4/74)

Inmate K. Edwards, E-54444, 13-A-2-L, first came to my attention sometime towards the end of 1998, while he was enrolled in the vocational carpentry shop, located next door to the vocational landscaping program, which I teach. During the last five years I have had regular opportunities to meet with and talk to Edwards and watch him interact with other inmates, staff and guests attending Alcoholics Anonymous and VORG symposiums.

Edwards has openly shared his story with me in sufficient detail and candor for me to see that he has undergone a personality change sufficient to bring about recovery from alcoholism and drug addiction as a direct result of working the 12 steps of the A.A. program. He has had a profound alteration in his reaction to life and has become a giver instead of a taker, by being willing to share his story and help others overcome their addiction to drugs and alcohol.

During his incarceration Edwards has become a free man because he has incorporated the principles of recovery into his life. When he walks out of here he walks out as a winner because he has gained the tools and desire to help others. I strongly recommend Edwards for parole and believe he has in place the support group that will help him succeed on the streets.

Original:  Central File
    cc:  CCI
        Writer
        Inmate

J. Thang, Vocational Instr.

Date: 01/27/2004          **LAUDATORY REPORT**          GENERAL CHRONO

*Edwards,*

*Here is a copy for you. The original is in your file.*

Name: Edwards, Kennedy                E-54444          **(B)**          13-N-5-U          CDC-128B

I am writing this to convey my appreciation and recognize the efforts of Kennedy Edwards during the period spanning June 2006 through April 2007 at the Prison Industry Authority- Optical Laboratory at CSP-Solano. During this time inmate served under my supervision in the role of Optician.

In this position he is tasked with manufacturing and/or testing ophthalmic lenses to be compliant with ANSI requirements. At the beginning of 2006 PIA's Optical program had incurred major changes that had a direct affect on production at all of the Lens Labs but most specifically at the Solano operation. It was during this time that production demands required that our factory operate well over its normal operating output over an extended period of time. There was very little transition into this increase and adding additional trained technicians was not immediately possible. To accomdate our customers, who are mostly medi-cal beneficiaries, our factory had to extend our regular weekly schedule and work many weekends. This made it possible for our lab to increase our average output by 100%-140% while still maintaining a quality product. Without his skills, dedication, and hard work this would not have been able to be accomplished.

In closing, I believe Kennedy's actions during this time demonstrates a sincere attitude toward the continuing success of PIA, a proven work ethic, and the ability to perservere during times of sudden and difficult changes.

If you have a questions feel free to contact me at CSP Solano Optical Lab ext. 6650.


**ORIG:** Central File

   **cc:**   CCI
          Inmate
          Work File

E. Curtis
Industrial Supervisor
PIA Optical Lab ext. 6650


**Date:1-10-07**                    **LAUDATORY**                    **General Chrono**

Name:Edwards, Kennedy          CDC#:E-54444          (B)          13-A-2-L `     CDC 128B

PIA Optical Lens Lab has employed Inmate Edwards since 9-12-02.  Before his assignment to PIA, Inmate Edwards completed the Vocational Lens Lab Program where he was enrolled from 6-26-01 through 9-13-02. During my assignment as Acting Superintendent II for the Optical Lens Lab, I had the opportunity to observe Inmate Edwards in the shipping department.  He demonstrated above average knowledge and skills in his job assignments as well as quality of work produced.  He made himself available for additional projects beyond his regular duties, and has performed at the journeyman level.  He accepted directions and completed tasks correctly without direct supervision.  Inmate Edwards successfully competed and passed the American Board of Opticianry (ABO) and Certified Customer Service Specialist (CSS) examination, these certificates are nationally recognized.

I consider him to be dependable and a very hard worker.  With the skills and work ethics he  displayed he would be an asset to any optical enterprise.  Inmate Edwards has always been respectful to staff and inmates alike. Inmate Edwards remains disciplinary free while working in PIA-Optical.

If you have, any questions feel free to contact me at ext. 6644.

**Orig:** Central File
**cc:**  CCI
       Inmate
       Work File

J. Pace
Superintendent II (A)
CSP – Solano
PIA Optiacal Lab ext. 6644

Date:  November 30, 2007          **Laudatory**          General Chrono

NAME and NUMBER   **EDWARDS**   **E-54444**   **13-N-5-U**   CDC-128-B (Rev 4/74)

I am taking this opportunity to recommend that inmate K. Edwards, E-5444, be found suitable for parole. As a teacher I was pleased when CDC decided to add the "R" to its name and become CDCR. It was my hope that it would not be in name only, but would truly mean that the Department was willing to make the effort to help facilitate meaningful change in the life of inmates, so they could and would be successful on the streets.

It is my belief that inmate Edwards represents the type of inmate who should be allowed parole. He is a completely changed man from the person who came to prison over two decades ago. The reason he is a changed man is because of the long term, concerted effort he has made through his active participation in Alcoholics Anonymous and VORG.

Edwards has gone from a taker to a giver. He has had a personality change sufficient to overcome his addictions. He has been rehabilitated. During the ten years I have known Edwards I have consistently seen a man who takes responsibility for his actions and seeks to always do the right thing.

It's time he became a tax payer, instead of a tax taker. I would be honored to have him as a neighbor. This is a chance for the California Department of Corrections and Rehabilitation to walk it's talk by giving Edwards a parole date.

Edwards did not solicit this laudatory chrono. It was written because it is my heartfelt belief that people can and do change.

J. Thang, Vocational Instructor

Original: Central File
     cc: CCI
         Writer
         Inmate

Date: 2/26/2008

**LAUDATORY REPORT**   GENERAL CHRONO

Name: Kennedy Edwards          CDC#:E-5444          (B)          13-N-5-U          CDC 128A

I am a Supervisor in PIA for four ½ Years where Inmate Edwards is employed; He has had the opportunity to achieve various certifications while working in the lens lab. Such as his vocational eyewear manufacture certificate 6/26/01 through 9/13/02 and accomplish his (ABO) American Board of Opticianry and (CSS) Customer Service Specialist certification examination these certificates are nationally recognizes any where in the country. He has also demonstrated his knowledge in the field without direct supervision at an above average and/or journeyman level co complete tasks that he has been assign to.

Inmate Edwards is a dependable hard worker. He has show all the supervisions courtesy and respect plus inmates alike. He would be an asset to any lens lab if release on parole. He continues to stay disciplinary free while working in PIA Optical.

If you have, any questions feel free to contact me at ext. 6625.

**Orig:** Central File
  **cc:** CCI
      Inmate
      Work File

E. Love
Industrial Supervisor
CSP – Solano
PIA Optiacal Lab ext. 6625

**Date:** April 17, 2008          **Laudatory**          General Chrono

**OFFRAMP ANTIQUES**
**10418  National Blvd**
**Los Angeles, Ca.  90034**

**Telephone : 310-837-7267**
**Fax : 310- 841-2592**

Mr. Edwards:

I'm writing to you in response to the letter you sent recently.  Your sponsor, James speaks very highly of you. He said he has been in close contact with you for a number of years.  I realize the situation in prison is extremely difficult.  Your attitude is positive in the conditions in which you must live.  You are an exception to the rule. Many times people will take on the role of victim and never address the issues that got them locked up. I truly respect the effort that you  have, and continue to make to improve yourself.

The role of drugs and alcohol can lead you down many roads you wouldn't normally take if you were in the right state of mind.  The positive news is that you never, ever, have to use drugs and alcohol again. It's time to start living. Your long time participation in the program of Alcoholics Anonymous has already paid dividends.  You have attained your GED and learned a trade; but more importantly, you have become responsible and confident. These positive characteristics will be important upon your release.

In describing your past, I was impressed with your honesty and accountability. You have been able to turn a negative situation into a positive one.  Kennedy, I have been running an antique store for the past 8 years. I have a position available for you when you are re- leased if you need employment. We can put your carpentry skills to the test. I truly be- lieve in second chances for those who earn them. I have worked with others from the Alcoholics Anonymous program, and it has proven to be a positive experience.

I will close for now and will be waiting to hear from you.(from the streets)  If you need any information about employment or anything else, feel free to give me a call.

Frederick McCoy

*ES4444*

CSI Ms. Sacedo, Counselor
CSP-Solano
PO Box 4000
Vacaville, Ca 95696-4000


Frederick McCoy
10418 National Blvd.
Los Angeles, Ca 90034


Ms. Sacedo:

My name is Frederick McCoy. I have been corresponding with Kennedy Edwards extensively for some time. Through our communication, I have learned quite a bit about the circumstances of his crime, and about Kennedy himself. I understand the serious nature of his crime, and I realize it is impossible to predict what the future holds for him, but I do believe in second chances. Mr. Edwards has expressed considerable remorse, and his attitude seems to be very positive. I believe there is hope for Kennedy.

I have owned a small shop in Los Angeles for the past 8 years. I buy and sell antique furniture, collectibles, and vintage furnishings. I also do liquidation sales as well as appraisals. I have offered a position to Mr. Edwards. His duties would include repair, refinish, and restoration of furniture. Kennedy would also be required to do some cleaning and organizing. I can offer a starting pay of $12 per hour initially, which would increase in time. He would work 40 hours a week, sometimes a little more.

I realize that there are not guarantees that this venture will work, but I'm prepared to take a chance on Mr. Edwards.

Should you need further information, you can reach me at: OFFRAMP ANTIQUES
                                                              10418 National Blvd
                                                              Los Angeles, Ca 90034
                                                              (310) 837-7267



**WILLIAM M. HABERMEHL**
County Superintendent of Schools

Dear Participant,

My name is Lupe Barron with the Orange County Department of Education, Offender Employment Continuum Program (OEC). I am the Employability Consultant in the Los Angeles County area and I am stationed at the Huntington Park Parole Office.

I know you are in the process of an intensive three-week program based on *Clifton Taulberts "Eight Habits of the Heart"*. You will be learning the importance of building a positive community along with employment training. Historically, the process of building and being surrounded by such community over time develops individual purpose and personal accountability to others.

It is my job as Employability Consultant, and part of a support team, to assist your successful transition back into the community as productive citizens. Being gainfully employed is a major key to successful transition. I look forward to becoming a part of your "employment community." Our commitment to your success is strengthened by our six-month follow-up for support and assistance.

We thank you in advance for your interest in bettering our communities. We anxiously await your completion of the workshop and look forward to meeting you soon. **We are shaping the look of the future today.**

Sincerely,

Lupe Barron
Employability Consultant
Orange County Department of Education/OEC
(323) 587-5056





# OFFENDER EMPLOYMENT CONTINUUM

Dear Participant,

Welcome to the Offender Employment Continuum (OEC) Program. My name is Steve Thornhill, Program Manager with the Orange County Department of Education. We are working in collaboration with the California Department of Corrections and Rehabilitation (CDCR) to provide this employment readiness workshop.

You have begun your transition process by enrolling in this intensive three-week program based on Clifton Taulbert's *"Eight Habits of the Heart"*. You will be learning the importance of building a positive community along with employment training. Historically, the process of building and being surrounded by such community over time develops individual purpose and personal accountability to others. We hope you use the tools shared in the workshop to help strengthen your community.

It is my job as Program Manager, and part of a support team, to assist in your successful transition back into the community as a productive citizen. Being gainfully employed is a major key to successful transition. We will forward your information to your parole officer and to the Employment Development Department (EDD) or Parolee Employment Program (PEP) in your area.

We thank you in advance for your interest in improving our communities. We await your completion of the workshop and to hear of your continued success.
**We are shaping the look of the future today.**

Sincerely,

*Steve Thornhill*

Steve Thornhill

Program Manager
ACEP Region B/OEC

cc:    MaryLou Vachet Boisdoré, Program Administrator
       Ken Skolnik, PA II, Program Manager, CDCR



ACCESS

Offender Employment Continuum
4552 Lincoln Avenue
Suite #201
Cypress, CA. 90630
Phone: 714-827-2602
Fax:    714-827-7638

State of California                               Department of Corrections and Rehabilitation


BUILDING BETTER LIVES FOR A SAFER CALIFORNIA

# Memorandum

**Date:**   **January 21, 2008**

**To:**   Correctional Counselor – I / CSP-Solano
California Department of Corrections and Rehabilitation

**From:**   **Inmate Employability Program / California Prison Industry Authority**

**Subject:**   **EDWARDS (E-54444)**

I understand that Inmate Edwards, E-54444, is being considered for parole. As Coordinator of the Inmate Employability Program (IEP), I assure you that should Inmate Edwards be found suitable for release, he will be enrolled and eligible to receive assistance from our Job Referral Placement program, which is in line with the Governor's rehabilitative goals.

Currently, the California Prison Industry Authority (CALPIA) is engaging in numerous activities that encourage employers to interview qualified CALPIA parolees for employment. The CALPIA job referral process has been developed to identify and assist qualified CALPIA parolees with job referrals to employers. These resources provide inmates employed by CALPIA assistance to find and secure employment in any field in which the CALPIA parolee has experience or training.

For additional information regarding the job referral placement program, please call Heidi Maule at CALPIA Headquarters (916) 358-1729.

Arthur J. Cueva, IEP Coordinator
Inmate Employability Program
California State Prison – Solano

CC: PIA File
        Subject

**Inmate Employability Program / California Prison Industry Authority**
**2100 Peabody Road • Vacaville, California 95687**
**Phone: (707) 451-0182, Ext# 6616, FAX: (707) 454-3434**

Office of Restorative
Justice - PREP

**Archdiocese of Los Angeles**

3424
Wilshire
Boulevard

Los Angeles
California
90010-2202

Stamps#
[ ] w/postage [ ] No stamp incl.
[ ] Check (30 day hold)
Log #

**Kennedy Edwards**
E5444  13-N-5up
C.S.P. Solano
P.O. Box 4000
Vacaville, CA   95696-4000



March 5, 2008

Board of Parole Hearing
C.S.P. Solano
P.O. box 4000
Vacaville, CA 95696-4000

Re: <u>Kennedy Edwards</u>
<u>E54444</u>

Dear Board of Parole Hearing Members,

My letter confirms Kennedy Edwards for a position in the Office of Restorative Justice when he releases. The position is for clerk in the Partnership For Re-Entry Program(PREP), a mentoring program that supports parolees upon release and is for 30 hours a week at $10 an hour. The position would include filing, phone calls, computer work, and generally supporting me in my work to reintegrate parolees into society. PREP works in partnership with Ernest Roberts at PVJobs and also guarantees Mr. Edwards an interview with Mr. Roberts for job development.

And again, through the Partnership For Re-Entry Program, I support Mr. Edwards in housing and rent at the following location:
        1224 W. 40th Pl.   Los Angeles, CA 90037

Kennedy also has plans of staying with his mother Mary Edwards at the following location:
        249 E. 122nd St.    Los Angeles, CA 90061

Mr. Edwards is committed to re-engaging society. He has participated in several self-help programs such as AA and NA, which he attends weekly. He himself states, "I am very serious about my recovery programs." Mr. Edwards also has connections with a transitional placement program called The Bible Tabernacle: Our New Life Institute in Canyon Country through Mario Harper.

Mr. Edwards has been behind bars for 19 years on a 15 to life sentence. He wishes to return to his community where he will take care of his elderly mother and be a productive member of society. I hope to aid him in his endeavor. Along with the prophet Isaiah I say, "Comfort, O comfort my People, says the Lord. Speak tenderly to Jerusalem...he has served his term".

I remain,

*Sister Mary Sean Hodges*
Sister Mary Sean Hodges, OP
Coordinator, Partnership For Re-Entry Program, PREP

cc:    Mr. Kennedy Edwards



Los Angeles Urban League

**Work Source**
CALIFORNIA
Business and Career Center

**BOARD OFFICERS**

Board Chairman
Irving A. Miller

First Vice Chairman
Robert Jordan

Second Vice Chairman
Troy Jenkins

Treasurer
Carl Ballton

Secretary
Carol Jackson

President
**Blair H. Taylor**

**DIRECTORS**

Wayne Bradshaw
Reuben Cannon
Wesley Coleman
Clarence A. Daniels, Jr.
Susan Gray Davis
Jay Ferguson
Curtis L. Fralin
David D. Hiller
Cecil House
Diana Ingram
David T. Jones
Roberta A. Jones
Donald Kincey
Margot A. Kyd
Gail Lannoy
John Law
Tony Lee
Kaye C. Lindsey
Vincent A. Malcolm
George Mallory
Timothy J. McCallion
Kevin McFarlane
Graciela Meibar
Debbie Pattillo
Rick Ramirez
Maxine Ransom von Phu
John M. Renfro
Timothy W. Robinson
Ed Rodriguez
M. Michael Roone
Brenda Ross-Dula
Sandor E. Samuel
Stuart A. Shanus
Nancy Shelmo
Robert D. Tayl
George B. Thompson
Denita Willoughby

Mr. Kennedy Edwards E54444
13- N-5 UP
CSP Solano
P.O. Box 4000
Vacaville, CA 95696 4000

Dear Mr. Edwards:

We are in receipt of your request for assistance with both employment and vocational training from the Los Angeles Urban League Work Source Center. We here at the Urban League truly applaud your quest to gain employment and specialized training upon your release from prison.

In reference to your desire to gain employment and vocational training upon release, we would highly recommend you visiting one of our offices for an orientation. There you will gain valuable information, which will allow you to move forward with some clarity. I've enclosed a list of our centers as well as our collaborative partners, which you may find very resourceful during your search for both employment and vocational training.

Should you have any additional questions or concerns, please feel free to contact me here at the L.A. Urban League or one of our partners for additional assistance.

Sincerely,

Mr. Arthur Smiley
Customer Service Manager

12700 S Avalon Boulevard, Los Angeles, CA  900
323.600.1106  Fax: 323.600.0186  **www.laul.c**
Affiliated with The National Urban League,
Member, United Way,
Contributions are tax deduct

# "Love Lifted Me Recovery"
## *Christian 12-Step Recovery Ministries*
### Pastors/Chaplains Tom & Dottie Hooper
P.O. Box 10966    Marina Del Rey, CA   90295
(310) 821-8677

March 14, 2008

**Re: Recommendation for Board of Prison Hearing for Kennedy Edwards # E-54444**

Board of Prison Hearings
P.O. Box 4036
Sacramento, CA   95812-4036

To Whom It May Concern;

This letter is submitted under Penal Code Section 3043.5 - The Condit-Nolan Public Participation in Parole Act of 1984.  We are Chaplains Tom and Dottie Hooper, also ordained pastors and founders of "Love Lifted Me Recovery" ministries.  "Love Lifted Me Recovery" is a non-profit para-church ministry and Bible-based Twelve Step recovery program, which includes a prison ministry by correspondence.  If you would like more information about our ministry, we can be reached by phone at (310) 821-8677, or see our website, www.LoveLiftedMeRecovery.com.  We have been acquainted with Kennedy ("Kenny") Edwards (# E-54444, CSP Solano, 13-N  5 up) through correspondence since August, 2006.  He has been writing to us regularly, and has successfully worked and completed our 12-Step recovery program, and has received a Certificate of Completion for the program.  He has also been taking our Ephesians Bible study course by correspondence, and has finished it, and is starting on our Romans Bible study course.  Although we have never met him in person, we feel we know him through the letters he has written, and by his honest and sincere answers to the questions asked in our 12-Step lessons, including an extensive 4th Step inventory that he wrote.  He has shared with us that he is genuinely repentant of the crime for which he is incarcerated.  Repentance in the Christian sense means turning away from the sin and going in the opposite direction, which is obedience to God.  We believe that Kenny has sincerely changed his life by becoming a serious disciple of Jesus Christ, and is ready for parole and re-entry into society.  We will do everything in our power to be friends, mentors, sponsors and accountability partners with Kenny whenever he is paroled.  We look forward to entering a new phase of our relationship with him at that time.

If he is going to parole to Los Angeles County, and needs a place to live, we recommend The Bible Tabernacle (also known as the New Life Institute) in Canyon Country, Los Angeles County.  Tom has been affiliated with the Bible Tabernacle for over thirty years, first as a deacon on the Board of Deacons when Pastor Fred Hilst, the founder, was alive, and now as an "advisor" on the Advisory Board.  The Bible Tabernacle gives a home, Bible teaching, Twelve Step recovery program, and job training to men at the Canyon Country facility, and to women and children at the Venice, California facility.  There is no charge, as the Bible Tabernacle is fully supported by charitable donations.  The recommended stay is six months (they ask you to make a six-month commitment), but there is no limit as to how long a person may stay if they feel the need to stay longer.  We will visit Kenny in person if he is living at the Bible Tabernacle, and wherever he should be paroled to, we will certainly be available at all times by telephone for accountability, spiritual help, counseling and prayer.  We will be available for counseling and support by telephone 24/7, to Mr. Edwards, as we

Letter in Support of Parole Suitability for Kennedy Edwards # E-54444
Board of Prison Hearings
P.O. Box 4036
Sacramento, CA   95812-4036

Page 2

are to all those we pastor and shepherd in our recovery meetings.  At such time as Mr. Edwards is living near Venice, California, he is welcome to attend our weekly recovery meetings and our monthly outreach to Venice Beach, where we feed the homeless and hand out gospel tracts.  We have been doing this monthly Venice Beach outreach for the past three years, and Mr. Edwards is familiar with it through our letters, and welcome to join us in that ministry as soon as he is able.

Again, we will be personal accountability partners with Kennedy Edwards upon his release, and will do everything within our power to assist in his making a smooth transition back into society, so that he will become a productive citizen and never again pose an unreasonable risk of danger to society if released.  We will personally act as "safety nets" for Mr. Edwards, and promise to keep him accountable.

In His love and service,

*Tom & Dottie Hooper*

Pastors/Chaplains Tom & Dottie Hooper,
"Love Lifted Me Recovery"

cc:  California State Prison Solano
Attn: Lifer Desk
P.O. Box 4000
Vacaville, CA   95696-4000

MARY EDWARDS

January 24, 2008

Board of Prison Term

Dear Sir or Madam:

I am writing to petition to your hearts being a woman of 78 years old and not in the best of health. I first would like to make an apology to the victim family for the lose of a love one behind my son negligence for human life. I would also like to say me and my husband who is now resting in peace did not raise our son to be heartless, insensitive person. He is paying the price for his sins but I also know as his mother while he has been incarcerated all these years he has gain insight on his crime, he has mature in his thinking and believe would be helper and good citizen in our society. I have a home at 249 E. 122nd St. Los Angeles, CA 90061 where he can stay I would love and appreciate him being here. I am also going to help support in every way possible to keep him on the right path. I ask in prayer and humbleness that you consider a mother's petition to send her son home to her.

Sincerely,

Mary Edwards

249 E. 122ND STREET
LOS ANGELES CA 90061
323-779-6868

12618 Blakley Ave
Compton CA 90222
310-764-5332

# LaShell D. Morehead

January 24, 2008

Board of Prison Term

Dear Sir or Madam:

I am writing on behalf of my brother Kennedy Edwards. I would like to say that I know my brother is feeling great remorse for the part he played in this crime. In the phone conversation I have with my brother I can tell he has grown and mature since he has been away. He talks about his plans when he get release on how he can help other young men and women not follow his same path. I know most people do not feel that an ex-felon is the best person for a roll model but I believe if it was not for some of the conversation my 20 year son had with his uncle helped to keep him strong and away from drugs. I will be here to support my brother any way possible to keep him focus on the positive path he has set for himself. I hope you will here my family prayers and release him.

Sincerely,

LaShell Morehead

CONCLUSION ...............IX

Dear Chavez Family,

My name is Kennedy Edwards, a participant in the loss of Julieo's life. After years of soul searching, and Spiritual guidance, I found it to be necessary through faith to take this time to sincerely express my deepest and long waited apology.

I have learned in the principles of Alcoholics Anonymous to make a list of all persons we had harmed and became willing to make amends to them all.  There are no excuses for what happened to Julieo, I am so very saddened and sorry for the grief and the pain I have caused, because of my actions.
Throughout my incarceration the thoughts of Julieo being a man, a father who supported his three children and loved his family dearly, he did'nt deserve what happened to him.  But because of my irrational decision making I deny you, his family, from ever knowing what a son, brother, and father he could have been.

I realize now the impact and long term affect of my foolishness, and irresponsible behavior, makes me ashamed of the hurt and anguish this family has to bare, because of what I had done, it is also true for my family as well as society, and for this I am deeply sorry and remorseful indebted to you.  Please accept my deepest apology.

I pray that God has and will remove your hurt and sorrow, that your hearts have been healed from the tragedy of the past.  This is being said because my life has sincerely changed over the years through therapy programs and especially Alcoholics Anonymous as well Narcotics Anonymous, both have given me so much insight on how precious life is and God knows my heart, the words placed on this paper is filled with honesty, as well with remorse that I ask that you find it in your neart to please forgive me.

Thank you for taking the time in reading this difficult but much needed letter to you in an attempt to making amends to the family of Julieo Chavez.

Sincerely,

Kennedy Edwards

# A Letter of permission

## To the Chavez's Family

My name is Kennedy Edwards
I am a participant in the loss
of your love one Julies Chavez's life.
This is a very difficult letter for
me to write and perhaps even
much more profound for you
to hear what I have to say.
First, I am in no way ever wanting
to hurt you by bring up the pains
of the past it's not my intention
so excuse me if it does.
But I would be humbly non-assistance
to answer to any unresolved
feelings of Julies whether it's hurt,
anger, and or saddness. That has
been weighing on your mind
for a very longtime
Granted I am ashame for what happen,
to have even partaken in the death
of your Father, son, and brother it is
truly something I regret everyday
I found through faith what God word
says to confess your sins to another and
pray for one another, so that you
maybe healed James 5:16. I pray
what this could be a possible in your
heart to grant permission to address
in a meeting any questions or grief.

Kennedy Edwards

CALIFORNIA STATE PRISON-SOLANO

KENNEDY EDWARDS
E54444  13-N-54p
CSP-Solano  P.O.Box 4000
VACAVille, CA 95696-4000



PRIORITY
MAIL
UNITED STATES POSTAL SERVICE ™
LABEL 107B, OCT 1997    www.usps.gov

U.S. EASTERN DISTRICT COURT
450 Golden GATE AVE.
SAN FRANCISCO, CA 94102-3483

r/s   Chavez    6/14/88